# 22-2688-cr(L), 22-3219-cr(CON)

# United States Court of Appeals

*for the*

# Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

DWIGHT REID, AKA Dick Wolf, CHRISTOPHER ERSKINE, AKA Beagle, WALTER LUSTER, AKA Shells, DESHAWN THOMAS, AKA Don, BRANDON NIEVES, AKA Untouchable Dot, AHMED WALKER, AKA Ammo, BRANDON SOTO, AKA Stacks, DEZON WASHINGTON, AKA Blakk, ROBERT WOODS, AKA Blakk Rob, STEPHEN HUGH, AKA Chino, JORDAN INGRAM, AKA Flow, SHANAY OUTLAW, AKA Easy, ISAIAH SANTOS, AKA Zay, ROBERTA SLIGH, AKA Trouble, JAMAL TRENT, AKA Trap Smoke, DONAVAN GILLARD, AKA Donnie Love,

*Defendants,*

*(For Continuation of Caption See Inside Cover)*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

## APPENDIX

NICHOLAS PINTO
NICHOLAS J. PINTO, ESQ.
*Attorneys for Defendant-Appellant*
*Naya Austin, AKA Baby*
745 Fifth Avenue, Suite 500
New York, New York 10151
(212) 619-5500

JARRETT CRISLER, JR., AKA Jayecee, NAYA AUSTIN, AKA Baby,
CASWELL SENIOR, AKA Casanova, BRINAE THORNTON, AKA Luxury,

*Defendants-Appellants.*

i

**TABLE OF CONTENTS**

|  | Page |
|---|---|
| District Court Docket Entries ................................... | A-1 |
| Superseding Indictment, Filed on November 8, 2021 ................................................ | A-21 |
| Change of Plea Transcript, dated April 6, 2022 ......... | A-61 |
| Executed Plea, dated March 4, 2022.......................... | A-109 |
| Sentencing Transcript, dated December 12, 2022 ..... | A-119 |
| Judgment, dated December 12, 2022, Appealed from ....................................................... | A-151 |
| Notice of Appeal, Filed on December 27, 2022 ........ | A-160 |

A-1

APPEAL,ECF

**U.S. District Court**
**Southern District of New York (White Plains)**
**CRIMINAL DOCKET FOR CASE #: 7:20–cr–00626–PMH–5**

Case title: USA v. Reid et al.

Date Filed: 11/23/2020

Date Terminated: 12/13/2022

Assigned to: Judge Philip M. Halpern

**Defendant (5)**

| | | |
|---|---|---|
| **Naya Austin**<br>*TERMINATED: 12/13/2022*<br>*also known as*<br>Baby<br>*TERMINATED: 12/13/2022* | represented by | **Francis Lee O'Reilly**<br>Law Office of Francis L. OReilly<br>1735 Post Road, Suite 2C<br>Fairfield, CT 06824<br>203–319–0707<br>Email: attflor@aol.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA Appointment* |
| | | **Stephen G. McCarthy , Jr.**<br>Sligo Tribeca Associates<br>101 Avenue of the Americas<br>Suite 942<br>New York, NY 10013<br>212–925–5901<br>Email: sgmccarthy@sligotribeca.com<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Retained* |

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1962–7480.F RACKETEERING<br>(1) | Dismissed |
| 18:1962–7480.F RACKETEERING<br>(1s) | Dismissed |
| 18:1962–7480.F RACKETEERING<br>(1ss) | IMPRISONMENT: 234 months. SUPERVISED RELEASE: 5 years. |
| 18:1959–1600.F ASSAULT, OTHER<br>(5) | Dismissed |
| 18:1959–1500.F AGGRAVATED OR FELONIOUS ASSAULT<br>(5s) | Dismissed |
| 18:924C.F VIOLENT CRIME/DRUGS/MACHINE GUN<br>(6) | Dismissed |
| 18:924C.F VIOLENT CRIME/DRUGS/MACHINE GUN<br>(6s) | Dismissed |
| 18:1959–7471.F RACKETEERING ACTIVITY, MURDER/KIDNAPPING<br>(8ss) | Dismissed |
| 18:924C.F VIOLENT CRIME/DRUGS/MACHINE GUN | Dismissed |

A-2

(9ss)

| | |
|---|---|
| 21:841A=CD.F CONTROLLED SUBSTANCE – SELL, DISTRIBUTE, OR DISPENSE (10–11) | Dismissed |
| 21:841A=CD.F CONTROLLED SUBSTANCE – SELL, DISTRIBUTE, OR DISPENSE (10s–11s) | Dismissed |
| 21:846=CD.F CONSPIRACY TO DISTRIBUTE CONTROLLED SUBSTANCE (13) | Dismissed |
| 21:846=CD.F CONSPIRACY TO DISTRIBUTE CONTROLLED SUBSTANCE (13s) | Dismissed |
| 21:841A=CD.F CONTROLLED SUBSTANCE – SELL, DISTRIBUTE, OR DISPENSE (13ss–14ss) | Dismissed |
| 18:924C.F VIOLENT CRIME/DRUGS/MACHINE GUN (14) | Dismissed |
| 18:924C.F VIOLENT CRIME/DRUGS/MACHINE GUN (14s) | Dismissed |
| 18:1028A.F FRAUD WITH IDENTIFICATION DOCUMENTS (16) | Dismissed |
| FRAUD WITH IDENTIFICATION DOCUMENTS (16s) | Dismissed |
| 21:846=CD.F CONSPIRACY TO DISTRIBUTE CONTROLLED SUBSTANCE (16ss) | IMPRISONMENT: 234 months. SUPERVISED RELEASE: 5 years. |
| 18:924C.F VIOLENT CRIME/DRUGS/MACHINE GUN (17ss) | Dismissed |
| 18:1028A.F FRAUD WITH IDENTIFICATION DOCUMENTS (19ss) | IMPRISONMENT: 234 months. SUPERVISED RELEASE: 5 years. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|

A-3

None

---

**Coordinating Discovery Attorney**

**Julie De Almeida**                    represented by **Julie Ann De Almeida**
Law Office of Julie Beil
567 Warren St.
Brooklyn, NY 11217
(415)–305–1211
Email: Julie@jdealmeidalaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Waived or Self (Pro Se)*

---

**Interested Party**

**New York City Department of**          represented by **Shauna Weinberg**
**Probation**                            New York City Department of Probation
Office of the General Counsel
33 Beaver Street
Floor 21
New York, NY 10004
212–510–3934
Email: sweinber@probation.nyc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Plaintiff**

**USA**                                 represented by **David Russell Felton**
DOJ–USAO
One St. Andrew's Plaza
New York, NY 10007
212–637–2299
Email: David.Felton@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Jacob Edwin Warren**
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
212–637–2264
Email: jacob.warren@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Shiva H Logarajah**
DOJ–USAO
1 Saint Andrews Plaza
New York, NY 10001
212–637–2272
Email: shiva.logarajah@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Courtney Heavey**
DOJ–USAO

A-4

300 Quarropas Street
White Plains, NY 10601
914–993–1927
Email: courtney.heavey@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/23/2020 | 1 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 12/02/2020) |
| 11/23/2020 | 2 | SEALED INDICTMENT as to Sealed Defendant 1 (1) count(s) 1, 13, 14, Sealed Defendant 2 (2) count(s) 1, 11, 13, 14, Sealed Defendant 3 (3) count(s) 1, 13, 14, Sealed Defendant 4 (4) count(s) 1, 13, 14, Sealed Defendant 5 (5) count(s) 1, 5, 6, 10–11, 13, 14, 16, Sealed Defendant 6 (6) count(s) 1, 13, 14, Sealed Defendant 7 (7) count(s) 1, 13, 14, Sealed Defendant 8 (8) count(s) 1, 13, 14, Sealed Defendant 9 (9) count(s) 1, 2, 12, 13, 14, Sealed Defendant 10 (10) count(s) 1, 5, 6, 13, 14, Sealed Defendant 11 (11) count(s) 1, 9, 13, 14, Sealed Defendant 12 (12) count(s) 1, 3, 4, 13, 14, Sealed Defendant 13 (13) count(s) 1, 5, 6, 11, 13, 14, Sealed Defendant 14 (14) count(s) 1, 16, Sealed Defendant 15 (15) count(s) 1, 13, 15, Sealed Defendant 16 (16) count(s) 1, 13, 14, Sealed Defendant 17 (17) count(s) 1, 7, 8, 13, 14, Sealed Defendant 18 (18) count(s) 13. (lnl) (Entered: 12/02/2020) |
| 12/01/2020 | 3 | Order to Unseal Case as to Sealed Defendant 1, Sealed Defendant 2, Sealed Defendant 3, Sealed Defendant 4, Sealed Defendant 5, Sealed Defendant 6, Sealed Defendant 7, Sealed Defendant 8, Sealed Defendant 9, Sealed Defendant 10, Sealed Defendant 11, Sealed Defendant 12, Sealed Defendant 13, Sealed Defendant 14, Sealed Defendant 15, Sealed Defendant 16, Sealed Defendant 17, Sealed Defendant 18. (Signed by Magistrate Judge Andrew E. Krause on 12/1/2020)(lnl) (Entered: 12/02/2020) |
| 12/01/2020 | | INDICTMENT UNSEALED as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent. (lnl) (Entered: 12/02/2020) |
| 12/01/2020 | | Case Designated ECF as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent. (lnl) (Entered: 12/02/2020) |
| 12/01/2020 | | Minute Entry for proceedings held before Magistrate Judge Andrew E. Krause: Initial Appearance as to Naya Austin held on 12/1/2020. Defendant Naya Austin present with attorney Frank OReilly. AUSA: Jacob Warren. Court Reporter: AT&T Recording. (lnl) (Entered: 12/02/2020) |
| 12/01/2020 | | Minute Entry for proceedings held before Magistrate Judge Andrew E. Krause: Arraignment as to Naya Austin (5) Count 1,5,6,10–11,13,14,16 held on 12/1/2020. Defendant Naya Austin present with attorney Frank O'Reilly. AUSA: Jacob Warren. Court Reporter: AT&T Recording. The defendant consented to proceed remotely, was advised of her rights and the charges against her, was arraigned on the Indictment, waived public reading, and entered a not guilty plea. Financial affidavit approved. Frank O'Reilly appointed to represent the defendant. The matter is assigned to Judge Halpern. The speedy trial time has been excluded until the first pretrial conference before the district judge, not to exceed December 15, 2020. Any further exclusion of time must be made to the District Judge. Defendant detained without prejudice. **Plea entered by Naya Austin (5) Count 1,5,6,10–11,13,14,16 Not Guilty.** (lnl) (Entered: 12/02/2020) |
| 12/01/2020 | 20 | CONSENT TO PROCEED BY VIDEO OR TELE CONFERENCE as to Naya Austin. (Signed by Magistrate Judge Andrew E. Krause on 12/1/2020) (lnl) (Entered: 12/02/2020) |
| 12/01/2020 | 21 | CJA 23 Financial Affidavit by Naya Austin. APPROVED. (Signed by Magistrate Judge Andrew E. Krause) (lnl) (Entered: 12/02/2020) |

A-5

| 12/01/2020 | 28 | ORDER as to Christopher Erskine, Naya Austin, Shanay Outlaw, Isaiah Santos, Brinae Thornton: This Order is entered, pursuant to Federal Rule of Criminal Procedure 5(f), to confirm the Government's disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, and to summarize the possible consequences of violating those obligations. SO ORDERED. (Signed by Magistrate Judge Andrew E. Krause on 12/1/2020) (See ORDER as set forth) (lnl) (Entered: 12/02/2020) |
|---|---|---|
| 12/03/2020 | 51 | LETTER by USA as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent addressed to Magistrate Judge Andrew E. Krause from Shiva H. Logarajah/Jacob Warren/David R. Felton dated December 1, 2020 re: Pretrial Detention Document filed by USA. (Attachments: # 1 Exhibit A)(Logarajah, Shiva) (Entered: 12/03/2020) |
| 12/04/2020 | 54 | LETTER MOTION addressed to Judge Philip M. Halpern from Shiva H. Logarajah/Jacob Warren/David R. Felton dated December 4, 2020 re: Initial Conference and Exclusion of Time Under the Speedy Trial Act . Document filed by USA as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent. (Attachments: # 1 Text of Proposed Order Speedy Trial Act Exclusion)(Logarajah, Shiva) (Entered: 12/04/2020) |
| 12/15/2020 | 66 | ORDER as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr.: Upon the application of the Government, by and through AUSAs Shiva H. Logarajah, Jacob Warren, and David R. Felton, and with the consent of all defendants in this matter, by and through their counsel, it is hereby ORDERED that time until the initial pre–trial conference in this matter on 2/3/21 is hereby excluded under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), in the interests of justice, so that the Government may begin the production of discovery in this matter. Time excluded from 12/15/2020 until 2/3/2021. (Signed by Judge Philip M. Halpern on 12/15/2020) (ap) (Entered: 12/15/2020) |
| 12/17/2020 | 67 | ORDER APPOINTING JULIE DE ALMEIDA AS COORDINATING DISCOVERY ATTORNEY as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent. It is hereby ORDERED that Julie de Almeida is appointed as Coordinating Discovery Attorney for court–appointed defense counsel.The Coordinating Discovery Attorney shall oversee any discovery issues that are common to all of the defendants. Her responsibilities will include..... (Signed by Judge Philip M. Halpern on 12/17/2020)(jbo) (Entered: 12/17/2020) |
| 12/30/2020 | 70 | LETTER MOTION addressed to Judge Philip M. Halpern from USA dated December 30, 2020 re: request for entry of protective order . Document filed by USA as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent. (Attachments: # 1 Exhibit Protective Order)(Felton, David) (Entered: 12/30/2020) |
| 01/04/2021 | 72 | MEMO ENDORSEMENT as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr on re: 70 LETTER MOTION filed by USA addressed to Judge Philip M. Halpern from USA dated December 30, 2020 re: request for entry of protective order. ENDORSEMENT: Application granted. The Clerk is instructed to terminated ECF No. 70. SO ORDERED. (Signed by Judge Philip M. Halpern on 1/4/2021)(bw) (Entered: 01/04/2021) |

A-6

| 01/04/2021 | 73 | PROTECTIVE ORDER as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr...regarding procedures to be followed that shall govern the handling of confidential material. (Signed by Judge Philip M. Halpern on 1/4/2021)(bw) (Entered: 01/04/2021) |
|---|---|---|
| 01/06/2021 | 75 | LETTER MOTION addressed to Judge Philip M. Halpern from Francis L. O'Reilly dated January 6, 2021 re: CJA Approval for Associate Counsel . Document filed by Naya Austin. (O'Reilly, Francis) (Entered: 01/06/2021) |
| 01/06/2021 | 76 | ORDER as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves: An initial conference in this matter is scheduled for February 1, 2021, at 10:30 a.m. Because of the current public health emergency, the Court will conduct the conference by telephone conference call, provided that defendant(s) waive their right to be physically present and consent to appear by telephone after consultation with counsel. A waiver form is annexed hereto. Members of the press and public may call the same number below but will not be permitted to speak during the conference. Accordingly, it is hereby ORDERED: 1. Defense counsel shall advise the Court in writing as to whether their clients waive their right to be physically present and consent to appear by telephone. The waiver form is to be signed by both the defendant and defense counsel, must be received by chambers in advance of the conference. If it is not received prior to the conference, the Court may cancel and adjourn the conference to a new date. 2. At the time of the scheduled hearing, all counsel and defendants shall attend by calling the following number and entering the access code when requested: PLEASE BE ON TIME FOR THE CONFERENCE! Dial−In Number: (888) 398−2342 Access Code: 3456831 (Pretrial Conference set for 2/1/2021 at 10:30 AM before Judge Philip M. Halpern) (Signed by Judge Philip M. Halpern on 1/6/2021) (lnl) (Entered: 01/06/2021) |
| 01/07/2021 | 80 | MEMO ENDORSEMENT as to Naya Austin (5) granting 75 LETTER MOTION addressed to Judge Philip M. Halpern from Francis L. O'Reilly dated January 6, 2021 re: CJA Approval for Associate Counsel. ENDORSEMENT: Application granted. SO ORDERED. (Signed by Judge Philip M. Halpern on 1/7/2021) (lnl) (Entered: 01/07/2021) |
| 01/07/2021 | 83 | ORDER as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr: It is hereby ORDERED: Defense counsel shall advise the Court in writing as to whether their clients waive their right to be physically present and consent to appear by telephone. The waiver form must be signed by both defense counsel and the defendant, and may be signed by defense counsel on behalf of their client, and must be received by the Court no later than January 25, 2021. If it is not received prior to the conference, the Court may cancel, and adjourn the conference to a new date. SO ORDERED. (Signed by Judge Philip M. Halpern on 1/7/2021) (lnl) (Entered: 01/08/2021) |
| 01/13/2021 | 89 | LETTER MOTION addressed to Judge Philip M. Halpern from Francis L. O'Reilly dated January 13, 2021 re: Waiver of In Person Hearing . Document filed by Naya Austin. (Attachments: # 1 Supplement Waiver of In Person Hearing Form)(O'Reilly, Francis) (Entered: 01/13/2021) |
| 01/29/2021 | 112 | FIRST LETTER by Dwight Reid as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr addressed to Judge Philip M. Halpern from Michael Kennedy Burke dated 1−29−21 re: Associate Counsel Document filed by Dwight Reid. (Burke, Michael) (Entered: 01/29/2021) |
| 02/01/2021 | | Minute Entry for proceedings held before Judge Philip M. Halpern: Pretrial Conference as to Naya Austin held on 2/1/2021. Defendant's Attorney: Frank O'Reilly. AUSA: Shiva Logarajah / David FeltonCourt Reporter: Andrew Walker.. Initial conference held by teleconference. The rule 5(f) warning was given orally by the MJ. Next conference is adjourned to 5/3/21/2021 at 10:30 am for 1) Government to |

A-7

| | | |
|---|---|---|
| | | produce outstanding discovery. 2) Defense counsel to review discovery. 3) The parties to discuss a resolution. The Court excludes time until 5/3/21 in the interest of justice. The defendant is remanded. (Pretrial Conference set for 5/3/2021 at 10:30 AM before Judge Philip M. Halpern) (ap) (Entered: 02/01/2021) |
| 02/08/2021 | 122 | SEALED DOCUMENT placed in vault. (ap) (Entered: 02/11/2021) |
| 02/08/2021 | 123 | (S3) SEALED SUPERSEDING INDICTMENT FILED as to Dwight Reid (1) count(s) 1s, 13s, 14s, Christopher Erskine (2) count(s) 1s,11s,13s, 14s, Walter Luster (3) count(s) 1s,13s,14s, Deshawn Thomas (4) count(s) 1s,13s,14s, Naya Austin (5) count(s) 1s, 5s,6s,10s−11s,13s,14s,16s, Brandon Nieves (6) count(s) 1s,13s,14s, Ahmed Walker (7) count(s) 1s,13s,14s, Caswell Senior (8) count(s) 1s,13s,14s, Brandon Soto (9) count(s) 1s,2s,12s,13s,14s, Dezon Washington (10) count(s) 1s,5s,6s,13s,14s, Robert Woods (11) count(s) 1s,9s,13s,14s, Stephen Hugh (12) count(s) 1s,3s,4s,13s,14s, Jordan Ingram (13) count(s) 1s,5s,6s,11s,13s,14s, Shanay Outlaw (14) count(s) 1s,16s, Isaiah Santos (15) count(s) 1s,13s,15s, Roberta Sligh (16) count(s) 1s,13s,14s, Brinae Thornton (17) count(s) 1s,7s,8s,13s,14s, Jamal Trent (18) count(s) 13s,14s, Jarrett Crisler, Jr (19) count(s) 1s,13s,14s, 18s,19s,20s−21s, Donavan Gillard (20) count(s) 1,13,14,17,20. (ap) (Entered: 02/12/2021) |
| 02/09/2021 | 118 | NOTICE OF ATTORNEY APPEARANCE: Stephen G. McCarthy, Jr appearing for Naya Austin. Appearance Type: Retained. (McCarthy, Stephen) (Entered: 02/09/2021) |
| 02/10/2021 | 119 | LETTER MOTION addressed to Magistrate Judge Andrew E. Krause from USA dated February 10, 2021 re: unseal superseding indictment . Document filed by USA as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr. (Felton, David) (Entered: 02/10/2021) |
| 02/10/2021 | 124 | Order to Unseal Case as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard. (Signed by Magistrate Judge Andrew E. Krause on 2/10/2021) (ap) (Entered: 02/12/2021) |
| 02/10/2021 | | INDICTMENT UNSEALED as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard. (ap) (Entered: 02/12/2021) |
| 03/01/2021 | 141 | ORDER as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard: The application is granted as follows: 1.Defense counsel, is authorized to procure with CJA funds, a laptop computer and any subsequent external hard drives and headphones that may be required to provide the defendant with access to the discovery (collectively, the "Electronic Device") for purposes of the discovery review. Counsel shall provide the electronic devise to Ms. de Almeida or her staff shall review the Electronic Device and confirm that the wireless and printing capabilities are disabled in a manner acceptable to the facility in which the given defendant is lodged. Ms. de Almeida or her staff shall load on to the Electronic Device such software as the defendants will need to review and make notes on the discovery. Ms. de Almeida or her staff shall set a password protected administrative account on the Electronic Device that is separate from the defendant's password protected user account to prevent any user from making changes to the Electronic Device. (Signed by Judge Philip M. Halpern on 3/1/2021) (See ORDER set forth) (ap) (Entered: 03/01/2021) |
| 03/03/2021 | 150 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 03/10/2021) |
| 03/04/2021 | 149 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 03/10/2021) |

A-8

| | | |
|---|---|---|
| 03/25/2021 | 165 | SEALED DOCUMENT placed in vault. (ap) (Entered: 04/01/2021) |
| 04/02/2021 | 167 | LETTER RESPONSE in Opposition by USA as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard addressed to Magistrate Judge Judith C. McCarthy from Shiva H. Logarajah dated March 19, 2021 re: 158 LETTER MOTION addressed to Magistrate Judge Judith C. McCarthy from Bruce Koffsky dated March 19, 2021 re: Bail Hearing .. (Attachments: # 1 Exhibit A)(Logarajah, Shiva) (Entered: 04/02/2021) |
| 04/26/2021 | 173 | LETTER MOTION addressed to Judge Philip M. Halpern from USA dated April 26, 2021 re: adjourn status conference and exclude Speedy Trial time . Document filed by USA as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard. (Felton, David) (Entered: 04/26/2021) |
| 04/26/2021 | 174 | MEMO ENDORSEMENT as to Dwight Reid (1), Christopher Erskine (2), Walter Luster (3), Deshawn Thomas (4), Naya Austin (5), Brandon Nieves (6), Ahmed Walker (7), Caswell Senior (8), Brandon Soto (9), Dezon Washington (10), Robert Woods (11), Stephen Hugh (12), Jordan Ingram (13), Shanay Outlaw (14), Isaiah Santos (15), Roberta Sligh (16), Brinae Thornton (17), Jamal Trent (18), Jarrett Crisler Jr. (19), Donavan Gillard (20) granting 173 LETTER MOTION addressed to Judge Philip M. Halpern from USA dated April 26, 2021 re: adjourn status conference and exclude Speedy Trial time. ENDORSEMENT: Application granted. The status conference currently scheduled for May 3, 2021 is adjourned to August 2, 2021, with appearances as follows: Defendants Erskine, Luster, Thomas, Austin, Nieves, and Sligh at 10:30 a.m.; Defendants Walker, Senior, Soto, Washington, Woods, and Hugh at 11:30 a.m.; Defendants Ingram, Outlaw, Santos, Thornton, and Trent at 12:30 p.m. The Government is directed to file a proposed Speedy Trial Act exclusion order for the Court's consideration. (Signed by Judge Philip M. Halpern on 4/26/2021) (ap) (Entered: 04/27/2021) |
| 04/26/2021 | | Set/Reset Hearings as to Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Roberta Sligh: Pretrial Conference set for 8/2/2021 at 10:30 AM before Judge Philip M. Halpern. (ap) (Entered: 04/27/2021) |
| 04/27/2021 | 175 | LETTER MOTION addressed to Judge Philip M. Halpern from USA dated April 27, 2021 re: proposed exclusion of Speedy Trial time and enclosed proposed order . Document filed by USA as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard. (Attachments: # 1 Text of Proposed Order Proposed Order)(Felton, David) (Entered: 04/27/2021) |
| 04/27/2021 | 176 | ORDER as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard: Upon the application of the Government, by and through AUSAs Shiva H. Logarajah, Jacob Warren, David R. Felton, and Adam Hobson, and with the consent of all Defendants, by and through their counsel, it is hereby ORDERED that time until the next pretrial conference in this matter on August 2, 2021 is hereby excluded under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), in the interests of justice, so that the parties may continue producing and reviewing discovery, contemplating any motions, and discussing possible pre–trial dispositions. Time excluded from 4/27/2021 until 8/2/2021. (Signed by Judge Philip M. Halpern on 4/27/2021) (ap) Modified on 4/28/2021 (ap). (Entered: 04/27/2021) |
| 05/06/2021 | 177 | SEALED DOCUMENT placed in vault. (ap) (Entered: 05/12/2021) |
| 07/26/2021 | 199 | LETTER MOTION addressed to Judge Philip M. Halpern from Shiva H. Logarajah/David R. Felton/Courtney Heavey dated July 26, 2021 re: Adjournment of |

| | | |
|---|---|---|
| | | Status Conference . Document filed by USA as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard. (Attachments: # 1 Text of Proposed Order)(Logarajah, Shiva) (Entered: 07/26/2021) |
| 07/27/2021 | 202 | MEMO ENDORSEMENT re: 199 LETTER MOTION addressed to Judge Philip M. Halpern from Shiva H. Logarajah/David R. Felton/Courtney Heavey dated July 26, 2021 re: Adjournment of Status Conference...ENDORSEMENT...Application granted. The status conference currently scheduled for August 2, 2021 is adjourned to November 17, 2021, with appearances as follows: Defendants Erskine, Luster, Thomas, Austin, Nieves, and Sligh at 10:30 a.m.; Defendants Walker, Senior, Soto, Washington, Woods, and Hugh at 11:30 a.m.; Defendants Ingram, Outlaw, Santos, Thornton, and Trent at 12:30 p.m. A Speedy Trial Act order will be docketed separately. The Clerk of the Court is respectfully directed to terminate the motion sequence at Doc. 199. (Signed by Judge Philip M. Halpern on 4/27/21) (jw) (Entered: 07/27/2021) |
| 07/27/2021 | | Set/Reset Deadlines/Hearings as to Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Roberta Sligh: Pretrial Conference set for 11/17/2021 at 10:30 AM before Judge Philip M. Halpern (jw) (Entered: 07/27/2021) |
| 07/27/2021 | 203 | ORDER as to Dwight Reid et al, It is hereby ORDERED that the time between July 27, 2021 and November 17, 2021, be excluded from the computation of the time period within which trial of the charges against the defendants must commence, pursuant to the Speedy Trial Act of 1974, 18 U.S.C. § 3161(h)(7)(A). The Court finds that this exclusion of time serves the ends of justice and outweighs the interest of the public and the defendants in a speedy trial. Time excluded from 7/27/21 until 11/17/21. (Signed by Judge Philip M. Halpern on 7/27/21)(jw) (Entered: 07/27/2021) |
| 08/02/2021 | 204 | NOTICE OF ATTORNEY APPEARANCE Courtney Heavey appearing for USA. (Heavey, Courtney) (Entered: 08/02/2021) |
| 08/11/2021 | 206 | LETTER MOTION addressed to Judge Philip M. Halpern from Daniel A. Hochheiser dated 08 11 2021 re: Permission to file interim vouchers *by CJA counsel*. Document filed by Brandon Nieves as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard. (Hochheiser, Daniel) (Entered: 08/11/2021) |
| 08/13/2021 | 207 | MEMO ENDORSEMENT as to Brandon Nieves (6) granting 206 LETTER MOTION addressed to Judge Philip M. Halpern from Daniel A. Hochheiser dated 08 11 2021 re: Permission to file interim vouchers. ENDORSEMENT: Application granted. SO ORDERED. (Signed by Judge Philip M. Halpern on 8/13/2021) (lnl) (Entered: 08/13/2021) |
| 08/19/2021 | 210 | SEALED DOCUMENT placed in vault. (ap) (Entered: 08/20/2021) |
| 08/30/2021 | 216 | LETTER by USA as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard addressed to Judge Philip M. Halpern from Shiva H. Logarajah/David R. Felton/Courtney Heavey dated August 30, 2021 re: Isaiah Santos's Request to Change Counsel Document filed by USA. (Logarajah, Shiva) (Entered: 08/30/2021) |
| 09/14/2021 | 225 | LETTER MOTION addressed to Judge Philip M. Halpern from STEPHEN G. MCCARTHY, JR., ESQ dated 09/13/21 re: Respectfully Notifying the Court that the scheduling of a change of plea hearing is no longer necessary, at this time. . Document filed by Naya Austin. (McCarthy, Stephen) (Entered: 09/14/2021) |
| 10/05/2021 | 229 | SEALED DOCUMENT placed in vault. (ap) (Entered: 10/06/2021) |

A-10

| | | |
|---|---|---|
| 10/12/2021 | 230 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 10/12/2021) |
| 10/12/2021 | 231 | LETTER by USA as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard addressed to Judge Philip M. Halpern from Shiva H. Logarajah/David R. Felton/Courtney L. Heavey dated October 12, 2021 re: Defendant Erskine's Request for Discovery Conference Document filed by USA. (Logarajah, Shiva) (Entered: 10/12/2021) |
| 10/13/2021 | 232 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 10/13/2021) |
| 10/13/2021 | 234 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 10/13/2021) |
| 10/15/2021 | 236 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 10/15/2021) |
| 11/04/2021 | 240 | ORDER as to Christopher Erskine, Naya Austin, Ahmed Walker, Brandon Soto, Dezon Washington, Robert Woods, Isaiah Santos, Brinae Thornton, Jamal Trent. A Status conference in this matter is scheduled on November 17, 2021 as follows: [Please see attached Order]. Members of the press and public may call the same number below but will not be permitted to speak during the conference. Accordingly, it is hereby ORDERED: 1. Defense counsel shall complete a waiver for their clients right to be physically present and consent to appear by telephone. This waiver shall be submitted no later than 11/12/21. 2. At the time of the scheduled hearing, all counsel and defendants shall attend by calling the following number and entering the access code when requested: Teleconference Dial–In Number: (888) 398–2342. Access Code: 3456831. SO ORDERED. (Signed by Judge Philip M. Halpern on 11/4/21)(jbo) (Entered: 11/04/2021) |
| 11/04/2021 | | Set/Reset Hearings as to Christopher Erskine, Naya Austin, Brandon Soto: Status Conference set for 11/17/2021 at 09:00 AM before Judge Philip M. Halpern. (jbo) (Entered: 11/04/2021) |
| 11/08/2021 | 244 | LETTER by USA as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard addressed to Judge Philip M. Halpern from Shiva H. Logarajah/David R. Felton/Courtney L. Heavey dated November 8, 2021 re: Superseding Indictment & Conferences Next Week Document filed by USA. (Logarajah, Shiva) (Entered: 11/08/2021) |
| 11/08/2021 | 245 | (S6) SUPERSEDING INDICTMENT FILED as to Dwight Reid (1) count(s) 1ss, 16ss, 17ss, Christopher Erskine (2) count(s) 1ss, 14ss, 16ss, 17ss, Deshawn Thomas (4) count(s) 1ss, 16ss, 17ss, 24ss, 25ss, Naya Austin (5) count(s) 1ss, 8ss, 9ss, 13ss–14ss, 16ss, 17ss, 19ss, Brandon Nieves (6) count(s) 1ss, 16ss, 17ss, Ahmed Walker (7) count(s) 1ss, 6ss, 7ss, 16ss, 17ss, Caswell Senior (8) count(s) 1ss, 16ss, 17ss, 20ss, 21ss, 24ss, 25ss, Brandon Soto (9) count(s) 1ss, 2ss, 3ss, 4ss, 5ss, 15ss, 16ss, 17ss, Dezon Washington (10) count(s) 1ss, 8ss, 9ss, 16ss, 17ss, Robert Woods (11) count(s) 1ss, 12ss, 16ss, 17ss, Isaiah Santos (15) count(s) 1ss, 16ss, 18ss, Brinae Thornton (17) count(s) 1ss, 10ss, 11ss, 16ss, 17ss, Jamal Trent (18) count(s) 16ss, 17ss, Jarrett Crisler, Jr (19) count(s) 1ss, 16ss, 17ss, 20ss, 21ss, 22ss, 23ss. (ap) Modified on 4/21/2022 (ap). (Entered: 11/08/2021) |
| 11/11/2021 | 247 | NOTICE of Consent to Proceed by Video or Tele Conference as to Naya Austin (McCarthy, Stephen) (Entered: 11/11/2021) |
| 11/12/2021 | 253 | WAIVER of Personal Appearance at Arraignment and Entry of Plea of Not Guilty by Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard. (Burke, Michael) (Entered: 11/12/2021) |
| 11/15/2021 | 256 | RESCHEDULING ORDER as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, |

A-11

| | | |
|---|---|---|
| | | Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr., Donavan Gillard. The conference currently scheduled for 1:00pm on November 17, 2021 has been rescheduled for 3:00pm. At that time, the following defendants are scheduled to appear by telephone: 3:00pm: USA v. Ahmed Walker – Status conference; USA v. Dezon Washington – Status conference; USA v. Robert Woods – Status conference; USA v. Isaiah Santos – Status conference. Members of the press and public may call the same number below but will not be permitted to speak during the conference. Accordingly, it is hereby ORDERED: 1. Defense counsel shall advise the Court in writing by 11/16/21 as to whether their clients waive their right to be physically present and consent to appear by telephone. 2. At the time of the scheduled hearing, all counsel and defendants shall attend by calling the following number and entering the access code when requested: Dial–In Number: (888) 398–2342 Access Code: 3456831 SO ORDERED: ( Status Conference set for 11/17/2021 at 03:00 PM before Judge Philip M. Halpern. ) (Signed by Judge Philip M. Halpern on 11/15/2021)(bw) (Entered: 11/15/2021) |
| 11/17/2021 | 270 | CONSENT TO PROCEED BY VIDEO OR TELE CONFERENCE as to Naya Austin. This proceeding was conducted by reliable video or telephone conferencing technology. (Signed by Judge Philip M. Halpern on 11/17/2021)(bw) (Entered: 11/17/2021) |
| 11/17/2021 | 273 | ORDER as to Naya Austin, Brandon Soto. Defendants Brandon Soto and Naya Austin, their counsel, as well as counsel for the Government, appeared via telephone for a status conference and arraignment at 9:00 a.m. today. Defendants Soto and Austin were arraigned on the S6 Superseding Indictment filed on November 8, 2021. Defendants shall file their pretrial motions and opening brief by February 15, 2022; the Government shall file its brief in opposition by April 1, 2022; and Defendants shall file their reply by April 22, 2022. No adjournments of this motion schedule shall be granted absent good cause shown. This motion schedule shall be held in abeyance as to Defendant Soto pending a further order of this Court. A status conference for Defendant Soto only will be held on February 14, 2022 at 11:00 a.m. For any pretrial motion that addresses an issue common to these multiple Defendants (as well as the other individual defendants for whom conferences took place yesterday and are taking place this afternoon), Defendants' counsel is directed to meet and confer and to file a joint motion. The parties are directed to adhere to the following page limits for motions relating to common issues: Defendants' Joint Opening Brief: 25 pages; Government's Opposition: 25 pages; Defendants' Joint Reply: 10 pages. For any pretrial motion that address an issue that is unique to a particular Defendant, that Defendant may file an individual motion, and the parties are directed to adhere to the following page limits relating to individual motions: Defendant's Opening Brief: 5–10 pages; Government's Opposition: 5–10 pages; Defendant's Reply: 5 pages. The Government requested, with the consent of the defendants, that the time period from November 17, 2021 through and including April 22, 2022, be excluded pursuant to the Speedy Trial Act of 1974, 18 U.S.C. § 3161(h)(7)(A). For the reasons set forth on the record, that application was granted. (Signed by Judge Philip M. Halpern on 11/17/2021)(bw) (Entered: 11/17/2021) |
| 11/17/2021 | | Minute Entry for proceedings held before Judge Philip M. Halpern: Status Conference as to (S6 20–Cr–626–5) Naya Austin held on 11/17/2021. Defendant's Attorney: Stephen McCarthy Jr. AUSA: Shiva Logarajah / David Felton. Court Reporter: Angela O'Donnell. Court Deputy: Frank Cangelosi. Status Conference held by teleconference. The Defendant was arraigned on the Superseding Indictment, waives public reading, and enters a not guilty plea. The Court will issue an Order with the agreed upon motion schedule. Time is excluded from today until 4/22/22 in the interest of justice. Defendant is remanded. (bw) (Entered: 11/17/2021) |
| 11/17/2021 | | Minute Entry for proceedings held before Judge Philip M. Halpern: Arraignment (on S6 20–Cr–626) as to Naya Austin (5) Count 1ss,8ss,9ss,13ss–14ss,16ss,17ss,19ss held on 11/17/2021. Plea entered by Naya Austin (5) Count 1ss,8ss,9ss,13ss–14ss,16ss,17ss,19ss –– Not Guilty. (bw) (Entered: 11/17/2021) |
| 11/17/2021 | 281 | LETTER MOTION addressed to Judge Philip M. Halpern from Shiva H. Logarajah dated November 17, 2021 re: Defendant Jarrett Crisler, Jr. Arraignment . Document filed by USA as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay |

| | | |
|---|---|---|
| | | Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard. (Logarajah, Shiva) (Entered: 11/17/2021) |
| 12/21/2021 | 308 | SENTENCING SUBMISSION by Stephen Hugh as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard. (Attachments: # 1 Exhibit DOJ Equal Act Testimony before the US Senate Judiciary Committee, # 2 Exhibit Letter of Support, part 1, # 3 Exhibit Letters of Support, Part 2, # 4 Exhibit Stephen Hugh Letter to Judge)(Braverman, Samuel) (Entered: 12/21/2021) |
| 01/27/2022 | 336 | SEALED DOCUMENT placed in vault. (ap) (Entered: 01/27/2022) |
| 02/02/2022 | 341 | LETTER MOTION addressed to Judge Philip M. Halpern from Shiva H Logarajah dated February 2, 2022 re: Exclusion of Time . Document filed by USA as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard. (Attachments: # 1 Text of Proposed Order)(Logarajah, Shiva) (Entered: 02/02/2022) |
| 02/03/2022 | 342 | MEMO ENDORSEMENT granting 341 LETTER MOTION filed by USA as to as to Dwight Reid (1), Christopher Erskine (2), Walter Luster (3), Deshawn Thomas (4), Naya Austin (5), Brandon Nieves (6), Ahmed Walker (7), Caswell Senior (8), Brandon Soto (9), Dezon Washington (10), Robert Woods (11), Stephen Hugh (12), Jordan Ingram (13), Shanay Outlaw (14), Isaiah Santos (15), Roberta Sligh (16), Brinae Thornton (17), Jamal Trent (18), Jarrett Crisler Jr. (19), Donavan Gillard (20), addressed to Judge Philip M. Halpern from AUSA Shiva H. Logarajah dated February 2, 2022 re: Exclusion of Time. ENDORSEMENT: Application granted. An order excluding time under Speedy Trial Act through June 6, 2022 will be docketed separately. The Clerk of the Court is respectfully directed to terminate the motion sequence at Doc. 341. SO ORDERED. (Signed by Judge Philip M. Halpern on 2/3/2022) (bw) (Entered: 02/03/2022) |
| 02/03/2022 | 343 | ORDER as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard. The Court has received a request by DAMIAN WILLIAMS, United States Attorney for the Southern District of New York, by Assistant United States Attorney Shiva H. Logarajah, David R. Felton, and Courtney Heavey, that the time period from today through and including June 6, 2022, the new date set by the Court for the filing of reply briefs, be excluded from the computation of the time period within which trial of the charges against the defendants must commence, pursuant to the Speedy Trial Act of 1974, 18 U.S.C. § 3161(h)(7)(A). With the consent of the defendants, the Government seeks the exclusion of the foregoing period in the interest of justice because it will permit the parties to review discovery and file motions. Full consideration having been given to the matter set forth therein, it is hereby: ORDERED that the time between today and June 6, 2022, be excluded from the computation of the time period within which trial of the charges against the defendants must commence, pursuant to the Speedy Trial Act of 1974, 18 U.S.C. § 3161(h)(7)(A). The Court finds that this exclusion of time serves the ends of justice and outweighs the interest of the public and the defendants in a speedy trial. (Signed by Judge Philip M. Halpern on 2/3/2022)(bw) (Entered: 02/03/2022) |
| 02/22/2022 | 353 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard. Notice is hereby given that an official transcript of a Arraignment proceeding held on 12/01/2020 has been filed by the court reporter/transcriber in the above−captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Ginsberg, Darby) (Entered: |

| | | |
|---|---|---|
| | | 02/22/2022) |
| 02/22/2022 | 354 | TRANSCRIPT of Proceedings as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard re: Arraignment held on 12/01/2020 before Magistrate Judge Andrew E. Krause. Court Reporter/Transcriber: Darby Ginsberg, (914) 390–4102, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/15/2022. Redacted Transcript Deadline set for 3/25/2022. Release of Transcript Restriction set for 5/23/2022. (Ginsberg, Darby) (Entered: 02/22/2022) |
| 03/10/2022 | 369 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 03/10/2022) |
| 03/11/2022 | 371 | ORDER as to Naya Austin: The Court has scheduled a Change of Plea Hearing in this matter on April 6, 2022 at 3:30 p.m. in courtroom 520 at the White Plains Courthouse. Per the SDNY COVID–19 Courthouse Entry Program, anyone who appears at any SDNY courthouse must complete a questionnaire. The questionnaire is located on the Court's Website. Completing the questionnaire online and ahead of time will save time and effort upon entry. Only those individuals who meet the entry requirements established by the questionnaire will be permitted entry. Please contact Chambers if you do not meet the requirements. (Change of Plea Hearing set for 4/6/2022 at 03:30 PM in Courtroom 520, 300 Quarropas Street, White Plains, NY 10601 before Judge Philip M. Halpern) (Signed by Judge Philip M. Halpern on 3/11/2022) (ap) (Entered: 03/11/2022) |
| 04/06/2022 | | Minute Entry for proceedings held before Judge Philip M. Halpern:Change of Plea Hearing as to Naya Austin held on 4/6/2022. The Defendant present with attorney Stephen G. McCarthy Jr. AUSA: David Felton. Defendant withdrew her previously entered plea of not guilty and entered a plea of guilty to Counts 1, 16, and 19 of the S6 Indictment. The Court directed a Pre–Sentence Investigation from the Probation Department and scheduled sentencing in this matter for 11/2/2022 at 11:00 a.m. in Courtroom 520. Defendants sentencing submission is due no later than 10/19/2022. Government response by 10/26/2022. Defendant is remanded. (Sentencing set for 11/2/2022 at 11:00 AM in Courtroom 520, 300 Quarropas Street, White Plains, NY 10601 before Judge Philip M. Halpern) (Court Reporter Tabitha Dente) (ap) (Entered: 04/06/2022) |
| 04/06/2022 | | Minute Entry for proceedings held before Judge Philip M. Halpern: **Plea entered by Naya Austin (5) Guilty as to Count 1ss,16ss,19ss.** (ap) (Entered: 04/06/2022) |
| 04/07/2022 | 400 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 04/07/2022) |
| 04/13/2022 | 406 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 04/13/2022) |
| 04/22/2022 | 411 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Naya Austin. Notice is hereby given that an official transcript of a Plea proceeding held on 4/6/2022 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Dente, Tabitha) (Entered: 04/22/2022) |
| 04/22/2022 | 412 | TRANSCRIPT of Proceedings as to Naya Austin re: Plea held on 4–6–2022 before Judge Philip M. Halpern. Court Reporter/Transcriber: Tabitha Dente, (914) 390–4027, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/13/2022. Redacted Transcript Deadline set for 5/23/2022. Release of Transcript Restriction set for 7/21/2022. (Dente, Tabitha) (Entered: 04/22/2022) |
| 05/10/2022 | 422 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 05/10/2022) |
| 05/16/2022 | 424 | MEMORANDUM in Opposition by USA as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, |

| | | |
|---|---|---|
| | | Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard re 385 MOTION to Suppress ., 387 MOTION to Suppress ., 386 MOTION to Suppress *Evidence*., 395 MOTION to Preclude *re: wiretap on the phone used by Christopher Erksine*., 389 LETTER MOTION addressed to Judge Philip M. Halpern from Cesar de Castro dated March 23, 2022 re: Joining in Motions of Co−Defendants .. (Attachments: # 1 Exhibit Surveillance Log, # 2 Exhibit 12−21−2020 Unsealing Order, # 3 Exhibit FBI Report re Limited Unsealing, # 4 Exhibit 12−29−2020 Resealing Order)(Felton, David) (Entered: 05/16/2022) |
| 06/02/2022 | 433 | LETTER by USA as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard addressed to Judge Philip M. Halpern from Shiva H. Logarajah/David R. Felton/Courtney L. Heavey dated June 2, 2022 re: Status Update & Court's May 27 Order Document filed by USA. (Logarajah, Shiva) (Entered: 06/02/2022) |
| 08/18/2022 | 463 | SEALED DOCUMENT placed in vault. (ap) (Entered: 08/18/2022) |
| 10/13/2022 | 491 | RESCHEDULING ORDER as to Naya Austin. Sentencing in this matter is rescheduled to November 2, 2022 at 4:00 pm in Courtroom 520 at the White Plains Courthouse. Per the SDNY COVID−19 Courthouse Entry Program, anyone who appears at any SDNY courthouse must complete a questionnaire. Only those individuals who meet the entry requirements established by the questionnaire will be permitted entry. Please contact Chambers if you do not meet the requirements. (Sentencing set for 11/2/2022 at 04:00 PM in Courtroom 520, 300 Quarropas Street, White Plains, NY 10601 before Judge Philip M. Halpern) (Signed by Judge Philip M. Halpern on 10/13/2022) (ap) (Entered: 10/13/2022) |
| 10/19/2022 | 494 | SENTENCING SUBMISSION by Naya Austin. (McCarthy, Stephen) (Entered: 10/19/2022) |
| 10/24/2022 | 497 | LETTER MOTION addressed to Judge Philip M. Halpern from Stephen G. McCarthy, Jr., Esq. dated 10/24/22 . Document filed by Naya Austin. (Attachments: # 1 Appendix 14 Character Letters in Support of Naya Austin)(McCarthy, Stephen) (Entered: 10/24/2022) |
| 10/27/2022 | 499 | SENTENCING SUBMISSION by USA as to Naya Austin. (Logarajah, Shiva) (Entered: 10/27/2022) |
| 11/01/2022 | 502 | Sentencing Letter by Naya Austin as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard addressed to HONORABLE PHILIP M. HALPERN from STEPHEN G. MCCARTHY, JR, ESQ dated NOVEMBER 1, 2022 re: ADJOURNMENT REQUEST. (McCarthy, Stephen) (Entered: 11/01/2022) |
| 11/02/2022 | 503 | MEMO ENDORSEMENT as to Naya Austin on 502 Letter − Sentencing ENDORSEMENT: Application granted. The sentencing in this matter is adjourned to 12/12/2022 at 3:30 p.m. SO ORDERED. (Sentencing set for 12/12/2022 at 03:30 PM before Judge Philip M. Halpern) (Signed by Judge Philip M. Halpern on 11/2/2022) (lnl) (Entered: 11/02/2022) |
| 11/10/2022 | 511 | SEALED DOCUMENT placed in vault. (ap) (Entered: 11/14/2022) |
| 11/18/2022 | 513 | SEALED DOCUMENT placed in vault. (ap) (Entered: 11/21/2022) |
| 11/28/2022 | 519 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 11/28/2022) |
| 12/07/2022 | 524 | ORDER as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard. The Court has scheduled oral argument on the pending pretrial motions (Doc. |

A-15

| | | |
|---|---|---|
| | | 386; Doc. 389; Doc. 395) for February 7, 2023 at 3:30 p.m. to be held in Courtroom 520. ( Oral Argument set for 2/7/2023 at 03:30 PM in Courtroom 520, 300 Quarropas Street, White Plains, NY 10601 before Judge Philip M. Halpern. )(Signed by Judge Philip M. Halpern on 12/7/2022)(bw) (Entered: 12/07/2022) |
| 12/12/2022 | 526 | SEALED DOCUMENT placed in vault. (ap) (Entered: 12/13/2022) |
| 12/12/2022 | | Minute Entry for proceedings held before Judge Philip M. Halpern: Sentencing held on 12/12/2022 for Naya Austin (5) Count 1ss,16ss,19ss. The Defendant present with attorney Stephen McCarthy Jr. AUSA: Shiva Logarajah. The Court imposed a sentence of 210 months on counts 1 and 16 to run concurrently, and 24 months on count 19 to run consecutively to counts 1 and 16 for a total term of imprisonment of 234 months, followed by 5 years supervised release on count 16; 3 years on count 1; and 1 year on count 19, such terms of supervised release to be served concurrently. The Defendant is to pay a special assessment of $100.00 on Count 1, $100.00 on Count 16, and $100.00 on count 19 for a total of $300.00, which is due immediately. Defendant shall pay restitution in the amount of $50,000.00 joint and several with her co−defendants. Defendant shall forfeit a sum of money equal to $71,000.00 in U.S currency pursuant to the Consent Preliminary Order of Forfeiture/ Money Judgment. Defendant was advised of his right to appeal within 14 days from the entry of judgment. Additional conditions, see Judgment. (Court Reporter Tabitha Dente) (ap) (Entered: 12/13/2022) |
| 12/13/2022 | | DISMISSAL OF COUNTS on Government Motion as to Naya Austin (5) Count 1,1s,5,5s,6,6s,8ss,9ss,10−11,10s−11s,13,13s,13ss−14ss,14,14s,16,16s,17ss. (ap) (Entered: 12/13/2022) |
| 12/13/2022 | 527 | JUDGMENT IN A CRIMINAL CASE as to Naya Austin (5). THE DEFENDANT: pleaded guilty to counts 1,16, and 19 of the S6 Superseding Indictment. Underlying Indictment 20cr626, S3 20cr626 and open Counts in S6 20cr626 are dismissed on the motion of the United States. IMPRISONMENT: 234 months. 210 months on counts 1 and 16 to run concurrently, and 24 months on count 19 to run consecutively to the term of imprisonment imposed on counts 1 and 16. The defendant is remanded to the custody of the United States Marshal. SUPERVISED RELEASE: 5 years on count 16; 3 years on count 1; and 1 year on count 19, all such terms of supervised release to run concurrently. See ADDITIONAL SUPERVISED RELEASE TERMS. ASSESSMENT: $300.00 due immediately. RESTITUTION: $50,000.00. Name of Payee: Sealed. The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g). Joint and Several: DWIGHT REID 20cr626−1. The defendant shall forfeit the defendant's interest in the following property to the United States: A sum of money equal to $71,000.00 in U.S currency pursuant to the Consent Preliminary Order of Forfeiture/ Money Judgment. See ADDITIONAL DEFENDANTS AND CO−DEFENDANTS HELD JOINT AND SEVERAL. (Signed by Judge Philip M. Halpern on 12/13/2022) (ap) (Entered: 12/13/2022) |
| 12/13/2022 | 528 | CONSENT PRELIMINARY ORDER OF FORFEITURE/MONEY JUDGMENT as to Naya Austin. (Signed by Judge Philip M. Halpern on 12/12/2022) (ap) (Entered: 12/13/2022) |
| 12/13/2022 | 529 | ORDER OF RESTITUTION as to Naya Austin. (Signed by Judge Philip M. Halpern on 12/12/2022) (ap) (Entered: 12/13/2022) |
| 12/16/2022 | 533 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 12/19/2022) |
| 12/24/2022 | 534 | **FILING ERROR – ELECTRONIC FILING OF NON−ECF DOCUMENT –** APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Naya Austin. Appeal Case Number 53 20 CR 626 (PHM). (McCarthy, Stephen) Modified on 12/27/2022 (nd). (Entered: 12/24/2022) |
| 12/27/2022 | | **\*\*\*NOTE TO ATTORNEY TO RE−FILE DOCUMENT – NON−ECF DOCUMENT ERROR. Note to Attorney Stephen G. McCarthy as to Naya Austin: to MANUALLY RE−FILE with original ink signature Document No. 534 APPEAL OF MAGISTRATE JUDGE DECISION to District Court. This document is not filed via ECF. (nd)** (Entered: 12/27/2022) |

A-16

| 12/27/2022 | 536 | NOTICE OF APPEAL by Naya Austin from 527 Judgment. (nd) (Main Document 536 replaced on 12/27/2022) (nd). (Entered: 12/27/2022) |
|---|---|---|
| 12/27/2022 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Naya Austin to US Court of Appeals re: 536 Notice of Appeal. (nd) (Entered: 12/27/2022) |
| 12/27/2022 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Naya Austin re: 536 Notice of Appeal were transmitted to the U.S. Court of Appeals. (nd) (Entered: 12/27/2022) |
| 01/10/2023 | 539 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard. Notice is hereby given that an official transcript of a Sentence proceeding held on 10/4/2022 has been filed by the court reporter/transcriber in the above−captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Arends−Dieck, Christina) (Entered: 01/10/2023) |
| 01/10/2023 | 540 | TRANSCRIPT of Proceedings as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard re: Sentence held on 10/4/2022 before Judge Philip M. Halpern. Court Reporter/Transcriber: Christina Arends−Dieck, (914) 390−4103, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/31/2023. Redacted Transcript Deadline set for 2/10/2023. Release of Transcript Restriction set for 4/10/2023. (Arends−Dieck, Christina) (Entered: 01/10/2023) |
| 01/11/2023 | 541 | OPINION AND ORDER as to Dwight Reid et al. For the foregoing reasons, the motions addressed herein are DENIED, except the branch of the motion seeking production of Rule 404(b) evidence 60 days before trial, which is granted as unopposed. The oral argument scheduled for February 7, 2023 at 3:30 p.m. is, in light of the Court's determinations herein, converted into a pretrial conference. The Clerk of Court is respectfully directed to terminate the pending motions: Docs. 385, 386, 389, 395 (Signed by Judge Philip M. Halpern on 1/11/2023)(jw) (Entered: 01/11/2023) |
| 01/12/2023 | 543 | LETTER MOTION addressed to Judge Philip M. Halpern from Shiva H. Logarajah/David R. Felton/Courtney Heavey dated January 12, 2023 re: Exclusion of Time Under The Speedy Trial Act . Document filed by USA as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard. (Attachments: # 1 Text of Proposed Order Regarding Speedy Trial Exclusion)(Logarajah, Shiva) (Entered: 01/12/2023) |
| 01/13/2023 | 547 | ORDER 543 LETTER MOTION addressed to Judge Philip M. Halpern from Shiva H. Logarajah/David R. Felton/Courtney Heavey dated January 12, 2023 re: Exclusion of Time Under The Speedy Trial Act. It is hereby ORDERED that time until February 7, 2023 is hereby excluded under the Speedy Trial Act, 18 U.S.C. 3161(h)(7)(A), in the interests of justice, so that the parties may continue to review discovery, prepare for a multi−week trial, contemplate and file any additional motions, and discuss possible pretrial dispositions. (Signed by Judge Philip M. Halpern on 1/13/23) (jw) (Entered: 01/13/2023) |
| 01/13/2023 | 548 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 01/13/2023) |
| 01/20/2023 | 557 | FIRST LETTER MOTION addressed to Judge Philip M. Halpern from Michael Kennedy Burke dated 1−20−23 re: Dismissal Speedy Trial ., JOINT MOTION for Speedy Trial .( Return Date set for 1/25/2023 at 10:00 AM.) Document filed by Dwight Reid as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn |

| | | |
|---|---|---|
| | | Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard. (Burke, Michael) (Entered: 01/20/2023) |
| 01/20/2023 | 558 | SEALED DOCUMENT placed in vault. (ap) (Entered: 01/23/2023) |
| 01/25/2023 | 566 | RESPONSE in Opposition by USA as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard re: 557 FIRST LETTER MOTION addressed to Judge Philip M. Halpern from Michael Kennedy Burke dated 1−20−23 re: Dismissal Speedy Trial .JOINT MOTION for Speedy Trial ., 544 LETTER MOTION addressed to Judge Philip M. Halpern from Lorraine Gauli−Rufo dated 01/12/2023 re: Motion to Dismiss .. (Logarajah, Shiva) (Entered: 01/25/2023) |
| 02/06/2023 | 572 | RESCHEDULING ORDER as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard. The Pretrial Conference scheduled for February 7, 2023 at 3:30 pm. is adjourned to February 10, 2023 at 9:30 am and will be converted to a Telephone Conference. It is further ORDERED that time until February 10, 2023 is hereby excluded under the Speedy Trial Act, 18 U.S.C. 3161(h)(7)(A), in the interests of justice, so that the parties may continue to review discovery, prepare for trial, contemplate and file any additional motions, and discuss possible pre−trial dispositions. 1 Defense counsel shall complete the waivers for their clients right to be physically present and consent to appear by telephone. The waivers shall be submitted no later than 5:00 pm on February 9, 2023. 2 At the time of the scheduled hearing, all counsel and defendants shall attend by calling the following number and entering the access code when requested:Dial−In Number: (888) 398−2342, Access Code: 3456831. Time excluded from 2/6/2023 until 2/10/2023. (Telephone Conference set for 2/10/2023 at 09:30 AM before Judge Philip M. Halpern) (Signed by Judge Philip M. Halpern on 2/6/2023) (ap) (Entered: 02/06/2023) |
| 02/10/2023 | | Terminate Deadlines and Hearings as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard: 2/10/2023 Telephone Conf. & 2/21/2023 Pretrial Conf. cancelled. (lnl) (Entered: 02/10/2023) |
| 02/10/2023 | | Set/Reset Deadlines/Hearings as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard: **Pretrial Conference set for 2/21/2023 at 09:30 AM before Judge Philip M. Halpern.** (lnl) (Entered: 02/10/2023) |
| 02/14/2023 | 579 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Naya Austin. Notice is hereby given that an official transcript of a Sentence proceeding held on 12/12/2022 has been filed by the court reporter/transcriber in the above−captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Dente, Tabitha) (Entered: 02/14/2023) |
| 02/16/2023 | 582 | LETTER by Naya Austin addressed to United States of America, Southern District of New York from Naya Austin dated 2/13/2023 re: Appointment of appeal attorney, change of address. (lnl) (Entered: 02/16/2023) |
| 02/17/2023 | 583 | MEMO ENDORSEMENT as to Naya Austin on 582 LETTER by Naya Austin addressed to United States of America, Southern District of New York from Naya Austin dated 2/13/2023 re: Appointment of appeal attorney, change of address. ENDORSEMENT: Application denied. Once an appeal to the Circuit is filed,this Court no longer has jurisdiction of the matter. Defendant is, accordingly, referred to |

| | | |
|---|---|---|
| | | the Second Circuit to make her request for the appointment of appeallate counsel. The Clerk of Court is respectfully requested to mail a copy of this Order to Defendant at the address noted on her correspondence: Naya Austin, #19704–509, FCI Aliceville, Federal Correctional Institution, PO Box 4000, Aliceville, AL 35422; as well as a copy to the address she requested in her correspondence; Naya Austin, 5771 Castle Brook Dr., Douglasville, GA 30134. SO ORDERED. (Signed by Judge Philip M. Halpern on 2/17/2023) (Copies of this ENDORSEMENT were mailed by the Clerk's Office on 2/17/2023 to Naya Austin, Reg. No. 19704–509, FCI Aliceville, Federal Correctional Institution, PO Box 4000, Aliceville, AL 35422, and to Naya Austin, 5771 Castle Brook Dr., Douglasville, GA 30134.) (lnl) (Entered: 02/17/2023) |
| 02/21/2023 | 587 | PRETRIAL SCHEDULING ORDER as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard. The parties are hereby notified that jury selection and trial in this action are scheduled to begin on October 10, 2023 at 09:30 a.m. Accordingly, the deadlines for pretrial submissions are as follows: 1. Rule 404(b) evidence (if any) shall be disclosed by no later than August 11, 2023. The government shall fully comply with the notice requirements set forth in Rule 404(b)(3), and supplement that disclosure with citation to caselaw authority for the proposed use. 2. Motions in limine, including any government motion to admit or motion to oppose the use of Rule 404(b) evidence, shall be filed by August 18, 2023. Opposition shall be filed by August 25, 2023. No replies will be permitted. 3. Proposed voir dire, requests to charge with exact citation to authority, and a proposed verdict sheet shall be filed by August 25, 2023. The parties are directed to meet and confer and agree to the extent possible on the proposed charge. If the defendant disagrees on the charge, it should set forth its proposed charge immediately below the government's proposed charge (with citation to authority) so that the Court has one proposed charge. Counsel are also directed to meet and confer concerning proposed voir dire questions and prepare one document setting forth the questions agreed to by the parties and additional questions, if any, that the parties cannot agree to. Counsel for the parties shall also confer and provide to the Court a joint, concise written statement describing the case in an impartial, easily understood manner, for the Court to read to the jury panel prior to voir dire. 4. 3500 material and Giglio material, if any, shall be produced by September 8, 2023, with courtesy copies produced to the Court contemporaneously. 5. Marked government case–in–chief exhibits shall be produced by September 8, 2023, with courtesy copies produced to the Court contemporaneously. The government's exhibits shall be marked by numbers and defendant's exhibits by letters. Any objections to the government's case–in–chief exhibits shall be served and filed by September 15, 2023. 6. To the extent electronic media is to be used, counsel shall confer with the Courtroom Deputy and A/V Department to ensure the technology is working properly in advance of trial. 7. Counsel shall provide to the Court, not exchange, witness lists no later than September 8, 2023. The witness lists shall provide a brief description and the purpose of each witness to be offered. Counsel has a continuing obligation to supplement upon learning of any additional witnesses. 8. Counsel shall confer to agree on any stipulations of fact to be read into the record. The Court strongly encourages those stipulations to be reduced to writing, signed by counsel and the defendant, and submitted to the Court no later than three business days prior to trial. 9. Should the defendant choose to enter a plea of guilty, a Notice of Intent shall be filed at least two business days prior to the final pretrial conference and a copy of the plea agreement, if any, must be immediately provided to the Court by email. 10. Counsel should not expect the Court to hold bench conferences during trial to consider legal issues or evidentiary rulings that could have been raised before trial without a showing that counsel could not, by the exercise of due diligence, have anticipated them prior to trial. 11. The final pretrial conference is scheduled for September 26, 2023 at 11:00 a.m., Courtroom 520. 12. Jury selection and trial are scheduled to begin October 10, 2023 at 09:30 a.m. 13. Time is excluded under the Speedy Trial Act in the interest of justice though October 10, 2023. SO ORDERED. ( Final Pretrial Conference set for 9/26/2023 at 11:00 AM in Courtroom 520, 300 Quarropas Street, White Plains, NY 10601 before Judge Philip M. Halpern. Jury Selection set for 10/10/2023 at 09:30AM before Judge Philip M. Halpern. Jury Trial set for 10/10/2023 at 09:30 AM before Judge Philip M. Halpern. )(Signed by Judge Philip M. Halpern on 2/21/2023)(bw) (Entered: 02/21/2023) |

A-19

| 02/21/2023 | 588 | LETTER MOTION addressed to Judge Philip M. Halpern from Shiva H. Logarajah/David R. Felton/Courtney L. Heavey dated February 21, 2023 re: Rescheduling of Trial . Document filed by USA as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard. (Logarajah, Shiva) (Entered: 02/21/2023) |
|---|---|---|
| 02/22/2023 | 589 | MEMO ENDORSED granting 588 LETTER MOTION Rescheduling of Trial as to Dwight Reid (1), Christopher Erskine (2)... ENDORSEMENT: Application granted. Due to the Court's trial calendar, the first available date to commence trial in this matter, accommodating the parties' request, is October 30, 2023. Accordingly, trial is adjourned from October 10, 2023 to October 30, 2023. The Court will separately docket an Amended Pretrial Scheduling Order. It is further ORDERED that time until October 30, 2023 is hereby excluded under the Speedy Trial Act, 18 U.S.C. 3161(h)(7)(A), in the interests of justice, so that the parties may continue to discuss pretrial resolution, file motions in limine and pretrial submissions, and for the effective preparation of subsequent matters herein. SO ORDERED. (Signed by Judge Philip M. Halpern on 2/22/23) (jbo) (Entered: 02/22/2023) |
| 02/27/2023 | | Terminate Deadlines and Hearings as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard. (ap) (Entered: 02/27/2023) |
| 02/28/2023 | | Received returned mail as to Naya Austin re: 583 Memo Endorsement. Mail was addressed to Naya Austin and was returned for the following reason(s): RETURN TO SENDER/INSUFFICIENT ADDRESS/UNABLE TO FORWARD. ***RESENT to: Naya Austin, Reg. No. 19704–059, FCI Aliceville, FEDERAL CORRECTIONAL INSTITUTION, P.O.BOX 4000, ALICEVILLE, AL 35442.*** (ap) (Entered: 02/28/2023) |
| 02/28/2023 | 598 | SEALED DOCUMENT placed in vault. (ap) (Entered: 03/01/2023) |
| 03/15/2023 | 609 | SEALED DOCUMENT placed in vault. (ap) (Entered: 03/15/2023) |
| 05/10/2023 | 627 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 05/10/2023) |
| 05/10/2023 | 628 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 05/10/2023) |
| 05/22/2023 | 637 | TRANSCRIPT of Proceedings as to Naya Austin re: Sentence held on 12/12/2022 before Judge Philip M. Halpern. Court Reporter/Transcriber: Tabitha Dente, (914) 390–4027, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/12/2023. Redacted Transcript Deadline set for 6/22/2023. Release of Transcript Restriction set for 8/21/2023. (Dente, Tabitha) (Entered: 05/22/2023) |
| 06/08/2023 | 651 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard. Notice is hereby given that an official transcript of a Sentence proceeding held on 09/01/2022 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Ginsberg, Darby) (Entered: 06/08/2023) |
| 06/08/2023 | 652 | TRANSCRIPT of Proceedings as to Dwight Reid, Christopher Erskine, Walter Luster, Deshawn Thomas, Naya Austin, Brandon Nieves, Ahmed Walker, Caswell Senior, Brandon Soto, Dezon Washington, Robert Woods, Stephen Hugh, Jordan Ingram, Shanay Outlaw, Isaiah Santos, Roberta Sligh, Brinae Thornton, Jamal Trent, Jarrett Crisler, Jr, Donavan Gillard re: Sentence held on 09/01/2022 before Judge Philip M. Halpern. Court Reporter/Transcriber: Darby Ginsberg, (914) 390–4102, Transcript |

A-20

| | | |
|---|---|---|
| | | may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/29/2023. Redacted Transcript Deadline set for 7/10/2023. Release of Transcript Restriction set for 9/6/2023. (Ginsberg, Darby) (Entered: 06/08/2023) |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------X

UNITED STATES OF AMERICA

             -v.-

DWIGHT REID,
   a/k/a "Dick Wolf,"
CHRISTOPHER ERSKINE,
   a/k/a "Beagle,"
DESHAWN THOMAS,
   a/k/a "Don,"
NAYA AUSTIN,
   a/k/a "Baby,"
BRANDON NIEVES,
   a/k/a "Untouchable Dot,"
AHMED WALKER,
   a/k/a "Ammo,"
CASWELL SENIOR,
   a/k/a "Casanova,"
JARRETT CRISLER, Jr.,
   a/k/a "Jayecee,"
BRANDON SOTO,
   a/k/a "Stacks,"
DEZON WASHINGTON,
   a/k/a "Blakk,"
ROBERT WOODS,
   a/k/a "Blakk Rob,"
ISAIAH SANTOS,
   a/k/a "Zay,"
BRINAE THORNTON,
   a/k/a "Luxury," and
JAMAL TRENT,
   a/k/a "Trap Smoke,"

             Defendants.

-----------------------------------X

**SUPERSEDING INDICTMENT**

S6 20 Cr. 626 (PMH)

A-22

**COUNT ONE**
**(Racketeering Conspiracy)**
**(REID, ERSKINE, THOMAS, AUSTIN, NIEVES, WALKER, SENIOR, CRISLER, Jr., SOTO, WASHINGTON, WOODS, SANTOS, and THORNTON)**

The Grand Jury charges:

The Enterprise

1.   At all times relevant to this Indictment, DWIGHT REID, a/k/a "Dick Wolf," CHRISTOPHER ERSKINE, a/k/a "Beagle," DESHAWN THOMAS, a/k/a "Don," NAYA AUSTIN, a/k/a "Baby," BRANDON NIEVES, a/k/a "Untouchable Dot," AHMED WALKER, a/k/a "Ammo," CASWELL SENIOR, a/k/a "Casanova," JARRETT CRISLER, Jr., a/k/a "Jayecee," BRANDON SOTO, a/k/a "Stacks," DEZON WASHINGTON, a/k/a "Blakk," ROBERT WOODS, a/k/a "Blakk Rob," ISAIAH SANTOS, a/k/a "Zay," and BRINAE THORNTON, a/k/a "Luxury," the defendants, and others known and unknown, were members and associates of the Untouchable Gorilla Stone Nation ("Gorilla Stone" or the "Enterprise"), a criminal organization whose members and associates engaged in, among other activities, acts involving murder, robbery, fraud, and the distribution of controlled substances.  Gorilla Stone operated in and around Manhattan, the Bronx, Queens, Brooklyn, Upstate New York, and Florida.

2.   Gorilla Stone, including its leadership, its membership, and its associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, although not a legal entity.  The

2

Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise. At all times relevant to this Indictment, the Enterprise was engaged in, and its activities affected, interstate and foreign commerce. DWIGHT REID, a/k/a "Dick Wolf," CHRISTOPHER ERSKINE, a/k/a "Beagle," DESHAWN THOMAS, a/k/a "Don," NAYA AUSTIN, a/k/a "Baby," BRANDON NIEVES, a/k/a "Untouchable Dot," AHMED WALKER, a/k/a "Ammo," CASWELL SENIOR, a/k/a "Casanova," JARRETT CRISLER, Jr., a/k/a "Jayecee," BRANDON SOTO, a/k/a "Stacks," DEZON WASHINGTON, a/k/a "Blakk," ROBERT WOODS, a/k/a "Blakk Rob," ISAIAH SANTOS, a/k/a "Zay," and BRINAE THORNTON, a/k/a "Luxury," the defendants, participated in the Enterprise and participated in unlawful and other activity in furtherance of the conduct of the Enterprise's affairs.

3. Members and associates of Gorilla Stone engaged in a series of violent disputes with rivals of Gorilla Stone, including those within Gorilla Stone who they deemed disloyal to the Enterprise. During these disputes, members and associates of Gorilla Stone committed murder, shootings, robberies, and assaults against their rivals and against fellow members of Gorilla Stone.

4. Members and associates of Gorilla Stone sold crack cocaine, cocaine, heroin, and marijuana in and around Manhattan, Brooklyn, the Bronx, Westchester County, Upstate New York, and Florida.

3

A-24

5.     Members and associates of Gorilla Stone committed and agreed, attempted, and threatened to commit acts of violence to protect and expand their narcotics business, to protect fellow members and associates of the Enterprise, to otherwise promote the standing and reputation of Gorilla Stone amongst rival gangs, and to promote the standing and reputation of members of Gorilla Stone. These acts of violence included acts involving murder, robbery, and assault, intended to protect the Enterprise's narcotics business, and to retaliate against members of rival gangs who had encroached on the Enterprise's narcotics business.

Purposes of the Enterprise

6.     The purposes of the Enterprise included the following:

a.     Preserving and protecting the power, territory, and profits of the Enterprise through acts involving murder, other acts of violence, and threats of violence.

b.     Promoting and enhancing the Enterprise and the activities of its members and associates.

c.     Keeping victims and potential victims in fear of the Enterprise and its members and associates through acts and threats of violence.

d.     Providing assistance to members and associates who committed crimes for and on behalf of the gang.

e.     Enriching the members and associates of the Enterprise through, among other things, robbery, wire fraud, and

4

the distribution and sale of narcotics, including crack cocaine, cocaine, heroin, and marijuana.

,         f.   Protecting the Enterprise and its members and associates from detection and prosecution by law enforcement authorities through acts of intimidation and violence against potential witnesses to crimes committed by members of the Enterprise.

<u>Means and Methods of the Enterprise</u>

7.   Among the means and methods employed by the members and associates in conducting and participating in the conduct of the affairs of the Enterprise were the following:

a.   Members and associates of the Enterprise committed, conspired, attempted, and threatened to commit acts of violence, including acts involving murder, to protect and expand the Enterprise's criminal operations, and against rival gang members.

b.   Members and associates of the Enterprise used threats of violence and physical violence against other members and associates of the Enterprise to enforce and maintain discipline within the Enterprise.

c.   Members and associates of the Enterprise committed, conspired, attempted, and threatened to commit acts of violence, including acts involving murder and robbery against rival gang members and other individuals.

A-26

d.    Members and associates of the Enterprise promoted and celebrated, in music and on social media, the criminal conduct of the Enterprise, namely narcotics distribution, acts involving violence, and the use of firearms.

e.    Members and associates of the Enterprise obtained, possessed, and used firearms.

f.    Members and associates of the Enterprise distributed controlled substances, including crack cocaine, cocaine, heroin, and marijuana.

g.    Members and associates of the Enterprise committed, and conspired to commit, wire fraud by fraudulently obtaining benefits from relief programs meant to assist small businesses in response to the COVID-19 pandemic, fraudulently obtaining unemployment benefits, and conspiring to fraudulently use funds related to a section 501(c)(3) charitable organization operated by members and associates of the Enterprise.

## The Racketeering Conspiracy

8.    From at least in or about 2004 to the present, in the Southern District of New York and elsewhere, DWIGHT REID, a/k/a "Dick Wolf," CHRISTOPHER ERSKINE, a/k/a "Beagle," DESHAWN THOMAS, a/k/a "Don," NAYA AUSTIN, a/k/a "Baby," BRANDON NIEVES, a/k/a "Untouchable Dot," AHMED WALKER, a/k/a "Ammo," CASWELL SENIOR, a/k/a "Casanova," JARRETT CRISLER, Jr., a/k/a "Jayecee," BRANDON SOTO, a/k/a "Stacks," DEZON WASHINGTON, a/k/a "Blakk," ROBERT

6

A-27

WOODS, a/k/a "Blakk Rob," ISAIAH SANTOS, a/k/a "Zay," and BRINAE THORNTON, a/k/a "Luxury," the defendants, and others known and unknown, being persons employed by and associated with the Enterprise described in paragraphs 1 through 7 of this Indictment, namely, Gorilla Stone, which enterprise engaged in, and the activities of which affected, interstate and foreign commerce, knowingly combined, conspired, confederated, and agreed together and with each other to violate the racketeering laws of the United States, to wit, Section 1962(c) of Title 18, United States Code, that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of Gorilla Stone through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of:

a.   multiple acts involving murder, chargeable under the following provisions of state law:  New York Penal Law Sections 125.25 (murder), 110.00 (attempt), 105.15 (conspiracy), and 20.00 (aiding and abetting), and Florida Statutes Sections 777.04 (attempt and conspiracy), 777.011 (aiding and abetting), and 782.04 (murder);

b.   multiple acts involving robbery, chargeable under the following provisions of state law: New York Penal Law, Sections 160.00, 160.05, 160.10, 160.15 (robbery), 105.10 (conspiracy), 110.00 (attempt), and 20.00 (aiding and abetting);

7

c.   multiple acts indictable under Title 18, United States Code, Section 1951 (relating to interference with commerce, robbery, or extortion);

d.   multiple acts indictable under Title 18, United States Code, Section 1343 (wire fraud);

e.   multiple acts indictable under Title 18, United States Code, Section 1028 (fraud and related activity in connection with identification documents, authentication features, and information); and

f.   multiple offenses involving the distribution of controlled substances, including, cocaine base, in a form commonly known as "crack cocaine," cocaine, heroin, and marijuana, in violation of laws of the United States, namely Title 21, United States Code, Sections 812, 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), 841(b)(1)(C), 841(b)(1)(D), and 846, and Title 18, United States Code, Section 2.

9.   It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise.

### Notice of Special Sentencing Factors

10.  From at least in or about 2004, up to and including the present, in the Southern District of New York and elsewhere, DWIGHT REID, a/k/a "Dick Wolf," CHRISTOPHER ERSKINE, a/k/a "Beagle,"

8

DESHAWN THOMAS, a/k/a "Don," NAYA AUSTIN, a/k/a "Baby," BRANDON NIEVES, a/k/a "Untouchable Dot," AHMED WALKER, a/k/a "Ammo," CASWELL SENIOR, a/k/a "Casanova," JARRETT CRISLER, Jr., a/k/a "Jayecee," BRANDON SOTO, a/k/a "Stacks," DEZON WASHINGTON, a/k/a "Blakk," ROBERT WOODS, a/k/a "Blakk Rob," ISAIAH SANTOS, a/k/a "Zay," and BRINAE THORNTON, a/k/a "Luxury," the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

11. It was a part and an object of the conspiracy that DWIGHT REID, a/k/a "Dick Wolf," CHRISTOPHER ERSKINE, a/k/a "Beagle," DESHAWN THOMAS, a/k/a "Don," NAYA AUSTIN, a/k/a "Baby," BRANDON NIEVES, a/k/a "Untouchable Dot," AHMED WALKER, a/k/a "Ammo," CASWELL SENIOR, a/k/a "Casanova," JARRETT CRISLER, Jr., a/k/a "Jayecee," BRANDON SOTO, a/k/a "Stacks," DEZON WASHINGTON, a/k/a "Blakk," ROBERT WOODS, a/k/a "Blakk Rob," ISAIAH SANTOS, a/k/a "Zay," and BRINAE THORNTON, a/k/a "Luxury," the defendants, and others known and unknown, would and did distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

12. The controlled substances that DWIGHT REID, a/k/a "Dick Wolf," CHRISTOPHER ERSKINE, a/k/a "Beagle," DESHAWN THOMAS, a/k/a "Don," NAYA AUSTIN, a/k/a "Baby," BRANDON NIEVES, a/k/a "Untouchable Dot," AHMED WALKER, a/k/a "Ammo," CASWELL SENIOR,

9

a/k/a "Casanova," JARRETT CRISLER, Jr., a/k/a "Jayecee," BRANDON SOTO, a/k/a "Stacks," DEZON WASHINGTON, a/k/a "Blakk," ROBERT WOODS, a/k/a "Blakk Rob," ISAIAH SANTOS, a/k/a "Zay," and BRINAE THORNTON, a/k/a "Luxury," the defendants, conspired to distribute and possess with intent to distribute were: (i) 280 grams and more of mixtures and substances containing a detectable amount of cocaine base in a form commonly known as "crack cocaine," in violation of Title 21, United States Code, Section 841(b)(1)(A); (ii) five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A); (iii) one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A); and (iv) 100 kilograms and more of mixtures and substances containing a detectable amount of marijuana, in violation of Title 21, United States Code, Section 841(b)(1)(B), all in violation of Title 21, United States Code, Section 846.

13. On or about September 21, 2020, in the Southern District of New York, BRANDON SOTO, a/k/a "Stacks," the defendant, knowingly murdered and aided and abetted the murder of a victim who was a minor ("Minor Victim-1") in the vicinity of Main Street and South Clinton Street in Poughkeepsie, New York, in violation of New York Penal Law, Sections 125.25, 125.27, and 20.00, in that, with intent

10

to cause the death of another person, SOTO caused the death of Minor Victim-1, and aided and abetted the same.

(Title 18, United States Code, Sections 1962(d) and 1963.)

### COUNT TWO
### (Murder in Aid of Racketeering)

The Grand Jury further charges:

14.  At all times relevant to this Indictment, Gorilla Stone, as described in paragraphs 1 through 7 of this Indictment, which are repeated and incorporated by reference as though fully set forth herein, including its leadership, members, and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals that was engaged in, and the activities of which affected, interstate and foreign commerce. The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

15.  At all times relevant to this Indictment, Gorilla Stone, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1959(b)(1), namely acts involving murder and robbery, in violation of New York Penal Law, acts indictable under Title 18, United States Code, Section 1951, acts indictable under Title 18, United States Code, Section 1343, acts indictable under

11

Title 18, United States Code, Section 1028, and offenses involving the distribution of controlled substances, in violation of Title 21, United States Code, Sections 812, 841, and 846.

16.  On or about September 21, 2020, in the Southern District of New York, BRANDON SOTO, a/k/a "Stacks," the defendant, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from Gorilla Stone, and for the purpose of gaining entrance to and maintaining and increasing position in Gorilla Stone, an enterprise engaged in racketeering activity, as described above, knowingly and intentionally murdered and aided and abetted the murder of Minor Victim-1 in the vicinity of Main Street and South Clinton Street in Poughkeepsie, New York, in violation of New York Penal Law, Sections 125.25, 125.27, and 20.00, in that, with intent to cause the death of another person, SOTO caused the death of Minor Victim-1, and aided and abetted the same.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

### COUNT THREE
### (Use of a Firearm Resulting in Death)

The Grand Jury further charges:

17.  On or about September 21, 2020, in the Southern District of New York, BRANDON SOTO, a/k/a "Stacks," the defendant, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the murder in

aid of racketeering charged in Count Two of this Indictment, willfully and knowingly did use and carry a firearm, and, in furtherance of such crime of violence, did possess a firearm, and , in the course of that crime, did cause the death of a person through the use of the firearm, which killing is murder as defined in Title 18, United States Code, Section 1111(a), and did aid and abet the same, to wit, SOTO directed another member of Gorilla Stone to shoot a rival gang member, and aided and abetted the shooting of the rival gang member, which resulted in the killing of Minor Victim-1 in the vicinity of Main Street and South Clinton Street in Poughkeepsie, New York.

(Title 18, United States Code, Sections 924(j)(1), and 2.)

### COUNT FOUR
### (Travel Act Murder)
### (SOTO)

The Grand Jury further charges:

18.  On or about September 21, 2020, in the Southern District of New York and elsewhere, BRANDON SOTO, a/k/a "Stacks," the defendant, knowingly used a facility in interstate and foreign commerce, with intent to commit a crime of violence, namely, assault and murder, to further an unlawful activity, namely, the Gorilla Stone business enterprise involving the distribution of controlled substances in violation of Title 21, United States Code, Sections 841 and 846, and with the intent to promote, manage, establish, and carry on, and facilitate the promotion, management,

13

establishment, and carrying on of the unlawful activity, and thereafter did perform a crime of violence to further the unlawful activity, and did aid and abet the same, and death resulted, to wit, SOTO drove a co-conspirator to Poughkeepsie, New York, where SOTO aided and abetted the assault and murder of Minor Victim-1.

(Title 18, United States Code, Sections 1952 and 2.)

## COUNT FIVE
### (Arson)
### (SOTO)

The Grand Jury further charges:

19. On or about September 25, 2020, in the Southern District of New York and elsewhere, BRANDON SOTO, a/k/a "Stacks," the defendant, knowingly and maliciously did damage and destroy, and attempt to damage and destroy, by means of fire and explosive materials, a BMW vehicle used in interstate and foreign commerce and in activity affecting interstate and foreign commerce, and did aid and abet the same, to wit, SOTO set a BMW vehicle, which was used in the murder of Minor Victim-1, on fire in New York, New York and did aid and abet the same.

(Title 18, United States Code, Sections 844(i) and 2.)

## COUNT SIX
### (Attempted Murder and Attempted Assault with a Dangerous Weapon in Aid of Racketeering)
### (WALKER)

The Grand Jury further charges:

14

A-35

20.   At all times relevant to this Indictment, Gorilla Stone, as described in paragraphs 1 through 7 of this Indictment, which are repeated and incorporated by reference as though fully set forth herein, including its leadership, members, and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals that was engaged in, and the activities of which affected, interstate and foreign commerce.   The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

21.   At all times relevant to this Indictment, Gorilla Stone, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1959(b)(1), namely acts involving murder and robbery, in violation of New York Penal Law, acts indictable under Title 18, United States Code, Section 1951, acts indictable under Title 18, United States Code, Section 1343, acts indictable under Title 18, United States Code, Section 1028, and offenses involving the distribution of controlled substances, in violation of Title 21, United States Code, Sections 812, 841, and 846.

22.   On or about July 20, 2020, in the Southern District of New York, AHMED WALKER, a/k/a "Ammo," the defendant, as consideration for the receipt of, and as consideration for a

15

promise and agreement to pay, a thing of pecuniary value from Gorilla Stone, and for the purpose of gaining entrance to and maintaining and increasing position in Gorilla. Stone, an enterprise engaged in racketeering activity, as described above, knowingly attempted to murder an individual and attempted to assault that individual with a dangerous weapon, and aided and abetted the same, to wit, WALKER ordered and aided and abetted the shooting of a rival gang member in New Rochelle, New York, in violation of New York Penal Law Sections 125.25, 120.10, 120.05, 110.00, and 20.00.

(Title 18, United States Code, Sections 1959(a)(5), (a)(6), and 2.)

## COUNT SEVEN
**(Use of a Firearm in Furtherance of the July 20, 2020 Attempted Murder and Attempted Assault with a Dangerous Weapon)**
**(WALKER)**

The Grand Jury further charges:

23. On or about July 20, 2020, in the Southern District of New York, AHMED WALKER, a/k/a "Ammo," the defendant, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the attempted murder and attempted assault with a dangerous weapon in aid of racketeering charged in Count Six of this Indictment, knowingly did use and carry a firearm, and in furtherance of such crime did possess a firearm, and did aid and abet the use, carrying, and possession of a firearm, which was brandished and discharged.

16

A-37

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), (iii), and 2.)

## COUNT EIGHT
**(Assault with a Dangerous Weapon in Aid of Racketeering)**
**(AUSTIN and WASHINGTON)**

The Grand Jury further charges:

24. At all times relevant to this Indictment, Gorilla Stone, as described in paragraphs 1 through 7 of this Indictment, which are repeated and incorporated by reference as though fully set forth herein, including its leadership, members, and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals that was engaged in, and the activities of which affected, interstate and foreign commerce. The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

25. At all times relevant to this Indictment, Gorilla Stone, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1959(b)(1), namely acts involving murder and robbery, in violation of New York Penal Law, acts indictable under Title 18, United States Code, Section 1951, acts indictable under Title 18, United States Code, Section 1343, acts indictable under Title 18, United States Code, Section 1028, and offenses involving

17

the distribution of controlled substances, in violation of Title 21, United States Code, Sections 812, 841, and 846.

26. On or about June 12, 2020, in the Southern District of New York, NAYA AUSTIN, a/k/a "Baby," and DEZON WASHINGTON, a/k/a "Blakk," the defendants, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from Gorilla Stone, and for the purpose of gaining entrance to and maintaining and increasing position in Gorilla Stone, an enterprise engaged in racketeering activity, as described above, knowingly assaulted an individual with a dangerous weapon, and aided and abetted the same, to wit, AUSTIN and WASHINGTON committed a gunpoint robbery of a drug dealer in Peekskill, New York, in violation of New York Penal Law Sections 160.00, 160.05, 160.10, 160.15, 120.05(2), and 20.00.

(Title 18, United States Code, Sections 1959(a)(3) and 2.)

## COUNT NINE
### (Use of a Firearm in Furtherance of the June 12, 2020 Assault with a Dangerous Weapon) (AUSTIN and WASHINGTON)

The Grand Jury further charges:

27. On or about June 12, 2020, in the Southern District of New York, NAYA AUSTIN, a/k/a "Baby," and DEZON WASHINGTON, a/k/a "Blakk," the defendants, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the assault with a dangerous weapon in aid of

18

A-39

racketeering charged in Count Eight of this Indictment, knowingly did use and carry a firearm, and in furtherance of such crime did possess a firearm, and did aid and abet the use, carrying, and possession of a firearm, which was brandished.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), and 2.)

## COUNT TEN
**(Attempted Murder and Attempted Assault with a Dangerous Weapon in Aid of Racketeering)**
**(THORNTON)**

The Grand Jury further charges:

28.   At all times relevant to this Indictment, Gorilla Stone, as described in paragraphs 1 through 7 of this Indictment, which are repeated and incorporated by reference as though fully set forth herein, including its leadership, members, and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals that was engaged in, and the activities of which affected, interstate and foreign commerce.  The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

29.   At all times relevant to this Indictment, Gorilla Stone, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1959(b)(1), namely acts involving murder and

19

robbery, in violation of New York Penal Law, acts indictable under Title 18, United States Code, Section 1951, acts indictable under Title 18, United States Code, Section 1343, acts indictable under Title 18, United States Code, Section 1028, and offenses involving the distribution of controlled substances, in violation of Title 21, United States Code, Sections 812, 841, and 846.

30.   On or about August 8, 2018, in the Southern District of New York, BRINAE THORNTON, a/k/a "Luxury," the defendant, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from Gorilla Stone, and for the purpose of gaining entrance to and maintaining and increasing position in Gorilla Stone, an enterprise engaged in racketeering activity, as described above, knowingly attempted to murder an individual and attempted to assault that individual with a dangerous weapon, and aided and abetted the same, to wit, THORNTON and other members of Gorilla Stone shot at a rival gang member in Brooklyn, New York, in violation of New York Penal Law Sections 125.25, 120.10, 120.05, 110.00, and 20.00.

(Title 18, United States Code, Sections 1959(a)(5), (a)(6), and 2.)

**COUNT ELEVEN**
**(Use of a Firearm in Furtherance of the August 8, 2018 Attempted Murder and Attempted Assault with a Dangerous Weapon)**
**(THORNTON)**

The Grand Jury further charges:

20

A-41

31.  On or about August 8, 2018, in the Southern District of New York, BRINAE THORNTON, a/k/a "Luxury," the defendant, during and in relation to a crime of violence for which she may be prosecuted in a court of the United States, namely, the attempted murder and attempted assault with a dangerous weapon in aid of racketeering charged in Count Ten of this Indictment, knowingly did use and carry a firearm, and in furtherance of such crime did possess a firearm, and did aid and abet the use, carrying, and possession of a firearm, which was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), (iii), and 2.)

## COUNT TWELVE
### (Maiming and Assault with a Dangerous Weapon in Aid of Racketeering)
### (WOODS)

The Grand Jury further charges:

32.  At all times relevant to this Indictment, Gorilla Stone, as described in paragraphs 1 through 7 of this Indictment, which are repeated and incorporated by reference as though fully set forth herein, including its leadership, members, and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals that was engaged in, and the activities of which affected, interstate and foreign commerce.  The Enterprise constituted an ongoing organization whose members functioned as a

21

continuing unit for a common purpose of achieving the objectives of the Enterprise.

33.   At all times relevant to this Indictment, Gorilla Stone, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1959(b)(1), namely acts involving murder and robbery, in violation of New York Penal Law, acts indictable under Title 18, United States Code, Section 1951, acts indictable under Title 18, United States Code, Section 1343, acts indictable under Title 18, United States Code, Section 1028, and offenses involving the distribution of controlled substances, in violation of Title 21, United States Code, Sections 812, 841, and 846.

34.   On or about January 12, 2018, in the Southern District of New York, ROBERT WOODS, a/k/a "Blakk Rob," the defendant, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from Gorilla Stone, and for the purpose of gaining entrance to and maintaining and increasing position in Gorilla Stone, an enterprise engaged in racketeering activity, as described above, knowingly maimed and assaulted an individual with a dangerous weapon, and aided and abetted the same, to wit, WOODS slashed an individual in the face in Manhattan, in violation of New York Penal Law Sections 120.10, 120.05, and 20.00.

(Title 18, United States Code, Sections 1959(a)(2), (a)(3) and 2.)

## COUNT THIRTEEN
### (Possession With Intent to Distribute Crack Cocaine)
### (AUSTIN)

The Grand Jury further charges:

35.   On or about August 19, 2020, in the Southern District of New York, NAYA AUSTIN, a/k/a "Baby," the defendant, intentionally and knowingly did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

36.   The controlled substance involved in the offense was 28 grams and more of mixtures and substances containing a detectable amount of cocaine base, in a form commonly known as crack cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B); Title 18, United States Code, Section 2.)

## COUNT FOURTEEN
### (Possession With Intent to Distribute Crack Cocaine)
### (ERSKINE and AUSTIN)

The Grand Jury further charges:

37.   On or about August 10, 2020, in the Southern District of New York, CHRISTOPHER ERSKINE, a/k/a "Beagle," and NAYA AUSTIN, a/k/a "Baby," the defendants, intentionally and knowingly did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

23

A-44

38.   The controlled substance involved in the offense was 28 grams and more of mixtures and substances containing a detectable amount of cocaine base, in a form commonly known as crack cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B); Title 18, United States Code, Section 2.)

## COUNT FIFTEEN
### (Possession With Intent to Distribute Crack Cocaine)
### (SOTO)

The Grand Jury further charges:

39.   On or about July 30, 2020, in the Southern District of New York, BRANDON SOTO, a/k/a "Stacks," the defendant, intentionally and knowingly did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

40.   The controlled substance involved in the offense was 28 grams and more of mixtures and substances containing a detectable amount of cocaine base, in a form commonly known as crack cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B); Title 18, United States Code, Section 2.)

## COUNT SIXTEEN
### (Narcotics Conspiracy)
### (REID, ERSKINE, THOMAS, AUSTIN, NIEVES, WALKER, SENIOR, CRISLER, Jr., SOTO, WASHINGTON, WOODS, SANTOS, THORNTON, and TRENT)

The Grand Jury further charges:

24

41.   From at least in or about 2004, up to and including the present, in the Southern District of New York and elsewhere, DWIGHT REID, a/k/a "Dick Wolf," CHRISTOPHER ERSKINE, a/k/a "Beagle," DESHAWN THOMAS, a/k/a "Don," NAYA AUSTIN, a/k/a "Baby," BRANDON NIEVES, a/k/a "Untouchable Dot," AHMED WALKER, a/k/a "Ammo," CASWELL SENIOR, a/k/a "Casanova," JARRETT CRISLER, Jr., a/k/a "Jayecee," BRANDON SOTO, a/k/a "Stacks," DEZON WASHINGTON, a/k/a "Blakk," ROBERT WOODS, a/k/a "Blakk Rob," ISAIAH SANTOS, a/k/a "Zay," BRINAE THORNTON, a/k/a "Luxury," and JAMAL TRENT, a/k/a "Trap Smoke," the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

42.   It was a part and an object of the conspiracy that DWIGHT REID, a/k/a "Dick Wolf," CHRISTOPHER ERSKINE, a/k/a "Beagle," DESHAWN THOMAS, a/k/a "Don," NAYA AUSTIN, a/k/a "Baby," BRANDON NIEVES, a/k/a "Untouchable Dot," AHMED WALKER, a/k/a "Ammo," CASWELL SENIOR, a/k/a "Casanova," JARRETT CRISLER, Jr., a/k/a "Jayecee," BRANDON SOTO, a/k/a "Stacks," DEZON WASHINGTON, a/k/a "Blakk," ROBERT WOODS, a/k/a "Blakk Rob," ISAIAH SANTOS, a/k/a "Zay," BRINAE THORNTON, a/k/a "Luxury," and JAMAL TRENT, a/k/a "Trap Smoke," the defendants, and others known and unknown, would and did distribute and possess with intent to distribute controlled

A-46

substances, in violation of Title 21, United States Code, Section 841(a)(1).

43.   The controlled substances that DWIGHT REID, a/k/a "Dick Wolf," CHRISTOPHER ERSKINE, a/k/a "Beagle," DESHAWN THOMAS, a/k/a "Don," NAYA AUSTIN, a/k/a "Baby," BRANDON NIEVES, a/k/a "Untouchable Dot," AHMED WALKER, a/k/a "Ammo," CASWELL SENIOR, a/k/a "Casanova," JARRETT CRISLER, Jr., a/k/a "Jayecee," BRANDON SOTO, a/k/a "Stacks," DEZON WASHINGTON, a/k/a "Blakk," ROBERT WOODS, a/k/a "Blakk Rob," ISAIAH SANTOS, a/k/a "Zay," BRINAE THORNTON, a/k/a "Luxury," and JAMAL TRENT, a/k/a "Trap Smoke," conspired to distribute and possess with intent to distribute were: (i) 280 grams and more of mixtures and substances containing a detectable amount of cocaine base in a form commonly known as "crack cocaine," in violation of Title 21, United States Code, Section 841(b)(1)(A); (ii) five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A); (iii) one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A); and (iv) 100 kilograms and more of mixtures and substances involving a detectable amount of marijuana, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Section 846.)

26

A-47

COUNT SEVENTEEN
(Possession of a Firearm In Furtherance of
a Drug Trafficking Crime)
(REID, ERSKINE, THOMAS, AUSTIN, NIEVES, WALKER, SENIOR, CRISLER,
Jr., SOTO, WASHINGTON, WOODS, THORNTON, and TRENT)

The Grand Jury further charges:

44. Between in or about 2004 and November 2020, in the Southern District of New York and elsewhere, DWIGHT REID, a/k/a "Dick Wolf," CHRISTOPHER ERSKINE, a/k/a "Beagle," DESHAWN THOMAS, a/k/a "Don," NAYA AUSTIN, a/k/a "Baby," BRANDON NIEVES, a/k/a "Untouchable Dot," AHMED WALKER, a/k/a "Ammo," CASWELL SENIOR, a/k/a "Casanova," JARRETT CRISLER, Jr., a/k/a "Jayecee," BRANDON SOTO, a/k/a "Stacks," DEZON WASHINGTON, a/k/a "Blakk," ROBERT WOODS, a/k/a "Blakk Rob," BRINAE THORNTON, a/k/a "Luxury," and JAMAL TRENT, a/k/a "Trap Smoke," the defendants, during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, namely, the narcotics trafficking conspiracy charged in Count Sixteen of this Indictment, knowingly did use and carry a firearm, and in furtherance of such drug trafficking crime, did possess a firearm, and did aid and abet the use, carrying, and possession of a firearm.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.)

COUNT EIGHTEEN
(Brandishing a Firearm In Furtherance
of a Drug Trafficking Crime)
(SANTOS)

27

A-48

The Grand Jury further charges:

45.   On or about February 2, 2020, in the Southern District of New York and elsewhere, ISAIAH SANTOS, a/k/a "Zay," the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the narcotics trafficking conspiracy charged in Count Seventeen of this Indictment, knowingly did use and carry a firearm, and in furtherance of such crime did possess a firearm, and did aid and abet the use, carrying, and possession of a firearm, which was brandished.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), and 2.)

## COUNT NINETEEN
### (Aggravated Identity Theft)
### (AUSTIN)

The Grand Jury further charges:

46.   In or about August 2020, in the Southern District of New York and elsewhere, NAYA AUSTIN, a/k/a "Baby," the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, AUSTIN unlawfully used the names and social security numbers of other persons to file fraudulent applications for COVID-19-related unemployment

28

A-49

benefits, in violation of Title 18, United States Code, Sections 1343 and 1349.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

## COUNT TWENTY
### (Attempted Murder and Assault with a Dangerous Weapon in Aid of Racketeering)
### (SENIOR and CRISLER, Jr.)

The Grand Jury further charges:

47.   At all times relevant to this Indictment, Gorilla Stone, as described in paragraphs 1 through 7 of this Indictment, which are repeated and incorporated by reference as though fully set forth herein, including its leadership, members, and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals that was engaged in, and the activities of which affected, interstate and foreign commerce.  The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

48.   At all times relevant to this Indictment, Gorilla Stone, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1959(b)(1), namely acts involving murder and robbery, in violation of New York Penal Law, acts indictable under Title 18, United States Code, Section 1951, acts indictable under

29

Title 18, United States Code, Section 1343, acts indictable under Title 18, United States Code, Section 1028, and offenses involving the distribution of controlled substances, in violation of Title 21, United States Code, Sections 812, 841, and 846.

49.   On or about October 24, 2020, in the Southern District of Florida, Southern District of New York, and elsewhere, CASWELL SENIOR, a/k/a "Casanova," and JARRETT CRISLER, Jr., a/k/a "Jayecee," the defendants, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from Gorilla Stone, and for the purpose of gaining entrance to and maintaining and increasing position in Gorilla Stone, an enterprise engaged in racketeering activity, as described above, knowingly attempted to murder an individual and assaulted that individual with a dangerous weapon, and aided and abetted the same, to wit, CRISLER, Jr. and SENIOR shot at a rival gang member in Miami, Florida, and aided and abetted the same, in violation of Florida Statutes, Sections 777.04, 777.011, 782.04(1)(a)(1), and 784.045(1)(a).

(Title 18, United States Code, Sections 1959(a)(3), (a)(5), and 2.)

**COUNT TWENTY-ONE**
**(Use of a Firearm in Furtherance of the October 24, 2020**
**Attempted Murder and Assault with a Dangerous Weapon)**
**(SENIOR and CRISLER, Jr.)**

The Grand Jury further charges:

30

50.  On or about October 24, 2020, in the Southern District of Florida, Southern District of New York, and elsewhere, CASWELL SENIOR, a/k/a "Casanova," and JARRETT CRISLER, Jr., a/k/a "Jayecee," the defendants, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the attempted murder and assault with a dangerous weapon in aid of racketeering charged in Count Twenty of this Indictment, knowingly did use and carry a firearm, and in furtherance of such crime did possess a firearm, and did aid and abet the use, carrying, and possession of a firearm, which was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), (iii), and 2.)

### COUNT TWENTY-TWO
### (Firearms Trafficking Conspiracy)
### (CRISLER, Jr.)

The Grand Jury further charges:

51.  From at least in or about January 2020 up to and including at least in or about November 2020, in the Southern District of New York and elsewhere, JARRETT CRISLER, Jr., a/k/a "Jayecee," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, trafficking in firearms in violation of Title 18, United States Code, Section 922(a)(1)(A).

31

52.   It was a part and object of the conspiracy that JARRETT CRISLER, a/k/a "Jayecee," the defendant, and others known and unknown, not being licensed importers, licensed manufacturers, and licensed dealers of firearms within the meaning of Chapter 44, Title 18, United States Code, would and did willfully and knowingly engage in the business of dealing in firearms, and in the course of such business would and did ship, transport, and receive firearms in interstate and foreign commerce, in violation of Title 18, United States Code, Section 922(a)(1)(A).

Overt Acts

53.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about July 27, 2020, JARRET CRISLER, Jr., a/k/a "Jayecee," the defendant, agreed to sell firearms to an individual in the Bronx, New York.

b.   On or about November 7, 2020, JARRET CRISLER, Jr., a/k/a "Jayecee," the defendant, traveled to Manhattan, New York to sell firearms.

(Title 18, United States Code, Section 371.)

**COUNT TWENTY-THREE**
**(Firearms Trafficking)**
**(CRISLER, Jr.)**

The Grand Jury further charges:

32

54.   On or about November 7, 2020, in the Southern District of New York and elsewhere, JARRET CRISLER, Jr., a/k/a "Jayecee," the defendant, not being a licensed importer, licensed manufacturer, and licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully and knowingly engage in the business of dealing in firearms, and in the course of such business did ship, transport, and receive firearms in interstate and foreign commerce, to wit, CRISLER, Jr. traveled to Manhattan, New York to sell firearms.

(Title 18, United States Code, Section 922(a)(1).)

### COUNT TWENTY-FOUR
### (Assault with a Dangerous Weapon in Aid of Racketeering)
### (THOMAS and SENIOR)

The Grand Jury further charges:

55.   At all times relevant to this Indictment, Gorilla Stone, as described in paragraphs 1 through 7 of this Indictment, which are repeated and incorporated by reference as though fully set forth herein, including its leadership, members, and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals that was engaged in, and the activities of which affected, interstate and foreign commerce.  The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

33

56.   At all times relevant to this Indictment, Gorilla Stone, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1959(b)(1), namely acts involving murder and robbery, in violation of New York Penal Law, acts indictable under Title 18, United States Code, Section 1951, acts indictable under Title 18, United States Code, Section 1343, acts indictable under Title 18, United States Code, Section 1028, and offenses involving the distribution of controlled substances, in violation of Title 21, United States Code, Sections 812, 841, and 846.

57.   On or about July 5, 2020, in the Southern District of Florida, Southern District of New York, and elsewhere, DESHAWN THOMAS, a/k/a "Don," and CASWELL SENIOR, a/k/a "Casanova," the defendants, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from Gorilla Stone, and for the purpose of gaining entrance to and maintaining and increasing position in Gorilla Stone, an enterprise engaged in racketeering activity, as described above, knowingly assaulted an individual with a dangerous weapon, and aided and abetted the same, to wit, THOMAS and SENIOR shot at rival gang members in Miami, Florida, in violation of Florida Statutes, Sections 777.04, 777.011, 784.021(1)(a), and 784.045(1)(a).

(Title 18, United States Code, Sections 1959(a)(3) and 2.)

34

A-55

### COUNT TWENTY-FIVE
#### (Use of a Firearm in Furtherance of the July 5, 2020 Assault with a Dangerous Weapon)
#### (THOMAS and SENIOR)

The Grand Jury further charges:

58.   On or about July 5, 2020, in the Southern District of Florida, Southern District of New York, and elsewhere, DESHAWN THOMAS, a/k/a "Don," and CASWELL SENIOR, a/k/a "Casanova," the defendants, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the assault with a dangerous weapon in aid of racketeering charged in Count Twenty-Four of this Indictment, knowingly did use and carry a firearm, and in furtherance of such crime did possess a firearm, and did aid and abet the use, carrying, and possession of a firearm, which was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), (iii), and 2.)

### FORFEITURE ALLEGATION AS TO COUNT ONE

59.   As a result of committing the offense alleged in Count One of this Indictment, DWIGHT REID, a/k/a "Dick Wolf," CHRISTOPHER ERSKINE, a/k/a "Beagle," DESHAWN THOMAS, a/k/a "Don," NAYA AUSTIN, a/k/a "Baby," BRANDON NIEVES, a/k/a "Untouchable Dot," AHMED WALKER, a/k/a "Ammo," CASWELL SENIOR, a/k/a "Casanova," JARRETT CRISLER, Jr., a/k/a "Jayecee," BRANDON SOTO, a/k/a "Stacks," DEZON WASHINGTON, a/k/a "Blakk," ROBERT WOODS, a/k/a "Blakk Rob," ISAIAH SANTOS, a/k/a "Zay," and BRINAE THORNTON, a/k/a "Luxury," the

35

defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963, any and all interests the defendants acquired or maintained in violation of Title 18, United States Code, Section 1962; any and all interests in, securities of, claims against, and property or contractual rights of any kind affording a source of influence over, the enterprise named and described herein which the defendant established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and any and all property constituting and derived from proceeds obtained, directly and indirectly, from the racketeering activity alleged in Count One of this Indictment, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense that the defendants personally obtained.

## FORFEITURE ALLEGATIONS AS TO COUNTS 13-16

60.   As a result of committing the offense charged in Count Thirteen of this Indictment, NAYA AUSTIN, a/k/a "Baby," the defendant, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of said offense and any and all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, said offense, including but not

limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense that the defendant personally obtained.

61.  As a result of committing the offense charged in Count Fourteen of this Indictment, CHRISTOPHER ERSKINE, a/k/a "Beagle," and NAYA AUSTIN, a/k/a "Baby," the defendants, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of said offense and any and all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense that the defendants personally obtained.

62.  As a result of committing the offense charged in Count Fifteen of this Indictment, BRANDON SOTO, a/k/a "Stacks," the defendant, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of said offense and any and all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, said offense, including but not limited to a sum of money in United States currency representing

37

the amount of proceeds traceable to the commission of said offense that the defendant personally obtained.

63. As a result of committing the offense charged in Count Sixteen of this Indictment, DWIGHT REID, a/k/a "Dick Wolf," CHRISTOPHER ERSKINE, a/k/a "Beagle," DESHAWN THOMAS, a/k/a "Don," NAYA AUSTIN, a/k/a "Baby," BRANDON NIEVES, a/k/a "Untouchable Dot," AHMED WALKER, a/k/a "Ammo," CASWELL SENIOR, a/k/a "Casanova," JARRETT CRISLER, Jr., a/k/a "Jayecee," BRANDON SOTO, a/k/a "Stacks," DEZON WASHINGTON, a/k/a "Blakk," ROBERT WOODS, a/k/a "Blakk Rob," ISAIAH SANTOS, a/k/a "Zay," BRINAE THORNTON, a/k/a "Luxury," and JAMAL TRENT, a/k/a "Trap Smoke," the defendants, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of said offense and any and all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense that the defendants personally obtained.

## Substitute Assets Provision

64. If any of the property described above as subject to forfeiture, as a result of any act or omission of the above-named defendants:

38

       a.   cannot be located upon the exercise of due diligence;

       b.   has been transferred or sold to, or deposited with, a third person;

       c.   has been placed beyond the jurisdiction of the Court;

       d.   has been substantially diminished in value; or

       e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), Title 21 United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c) to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

       (Title 18, United States Code, Sections 981 and 1963;
          Title 21, United States Code, Section 853; and
          Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
DAMIAN WILLIAMS
United States Attorney

39

A-60

Form No. USA-33s-274 (Ed. 9-25-58)

**UNITED STATES DISTRICT COURT**
**,SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

**- v. -**

**DWIGHT REID, a/k/a "Dick Wolf,"** *et al.*,

**Defendants.**

**SUPERSEDING**
**INDICTMENT**

S6 20 Cr. 626 (PMH)

(18 U.S.C. §§ 371, 844, 922, 924, 1028A,
1952, 1959, 1962, 1963, and 2; 21 U.S.C.
§§ 841 and 846.)

DAMIAN WILLIAMS
United States Attorney.

Foreperson

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x
UNITED STATES OF AMERICA,

                                        7:20-CR-00626-5 (PMH)
    -vs-
                                        GUILTY PLEA

NAYA AUSTIN,

                        Defendant.
----------------------------------------x

                                United States Courthouse
                                White Plains, New York

                                Wednesday, April 6, 202
                                3:30 p.m.

B e f o r e:

                                HONORABLE PHILIP M. HALPERN,
                                District Judge


A P P E A R A N C E S:


DAMIAN WILLIAMS
    United States Attorney for the
    Southern District of New York
DAVID FELTON,
    Assistant United States Attorney


STEPHEN G. McCARTHY, JR., ESQ.
    Attorney for Defendant

A-62

Guilty Plea                          USA v. Austin                          2

THE DEPUTY CLERK:  All rise.  United States of America v. Naya Austin.

Would the Government please note your appearance for the record.

MR. FELTON:  Good afternoon, your Honor.  David Felton for the Government.

THE COURT:  Good afternoon, Mr. Felton.

THE DEPUTY CLERK:  Defense Counsel, please note your appearance.

MR. McCARTHY:  Thank you, sir.  For the Defendant, Naya Austin, my name is Stephen McCarthy.  Good afternoon, sir.

THE COURT:  Good afternoon.  Nice to meet you, Mr. McCarthy.

Counsel, be seated.

Good afternoon, Ms. Austin.  You may be seated as well.

THE DEFENDANT:  Good afternoon, your Honor.

THE COURT:  All right, Mr. McCarthy, does your client have an application this afternoon?

MR. McCARTHY:  She does, your Honor.  Pursuant to a signed plea agreement that I believe you have before you, after meeting with her at the jail a number of times and consulting with her family who is present here this afternoon, I'm authorized to withdraw her previously-entered plea of not guilty and respectfully, if it pleases the Court, enter a plea of

Guilty Plea                    USA v. Austin                    3

guilty to the plea agreement dated March 4th, 2022, which we have reviewed at the jail a number of times.

THE COURT:  All right.

Ms. Austin, you've heard Mr. McCarthy inform me that you wish to plead guilty pursuant to the terms of the plea agreement to Counts One, Sixteen, and Nineteen of S6, the superseding indictment, filed on November 8th, 2021.  Is that correct?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  All right, pull the microphone just close to you so you see it and, Mr. McCarthy, you actually need to have a microphone in front of you.  The reporter has earphones on and so she only hears what goes through the microphone even though she's sitting here with us, so just keep it in front of you as we go forward.

All right, before I can accept your guilty plea, Ms. Austin, I need to ask you certain questions.  It's very important to me that you answer these questions honestly and completely.  I'm going to do this so that I can make sure you understand your rights.  I also want to make sure you're pleading guilty voluntarily and of your own free will and you are pleading guilty because you are, in fact, guilty and not for some other reason and that you fully understand the consequences of your guilty plea.

If at any point you don't understand my questions or

Guilty Plea                    USA v. Austin                    4

you want to speak to your attorneys, please say so, because to me, it's very important you understand every question before you answer it.  Will you please do that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.

Mr. Cangelosi, I'm going to ask you to place Ms. Austin under oath at this time.

THE DEPUTY CLERK:  Please stand and raise your right hand.

You do solemnly swear that the testimony you're about to give to this Court shall be the truth, the whole truth, and nothing but the truth so help you God.

THE DEFENDANT:  Yes.

THE DEPUTY CLERK:  Please be seated.

THE COURT:  All right, Ms. Austin, you're now under oath, which means that if you answer any of my questions falsely, you could be later prosecuted for perjury or making a false statement.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Tell me your full name, please.

THE DEFENDANT:  Naya Austin.

THE COURT:  How old are you, Ms. Austin?

THE DEFENDANT:  Twenty-seven years old.

THE COURT:  How far did you go in school?

THE DEFENDANT:  High school and a little vocational.

TABITHA R. DENTE, RPR, RMR, CRR
(914)-390-4027

Guilty Plea                          USA v. Austin                          5

THE COURT:  Where did you go to high school?

THE DEFENDANT:  Peekskill High School.

THE COURT:  And where did you go to the vocational education piece?

THE DEFENDANT:  Westchester County Community College.

THE COURT:  Okay.  Are you currently or have you recently been under the care of a doctor or psychiatrist for any reason?

THE DEFENDANT:  Yes.

THE COURT:  Okay, doctor or psychiatrist?

THE DEFENDANT:  Psychiatrist.

THE COURT:  All right, tell me about it.

THE DEFENDANT:  I've been recently taking Remeron for anxiety and depression and PTSD.

THE COURT:  Okay.  And so you're working with a psychiatrist in the jail.

THE DEFENDANT:  Yes.

THE COURT:  Okay, how long have you been doing that?

THE DEFENDANT:  Since the beginning of my incarceration.

THE COURT:  Okay.  Have you ever been treated or hospitalized for any mental illness or mental health problem?

THE DEFENDANT:  For depression when I was younger.

THE COURT:  Okay.  And where were you treated for depression?

A-66

Guilty Plea                    USA v. Austin                         6

THE DEFENDANT:  I think it was Behavioral Center?  In Valhalla?

THE COURT:  Okay, and other than that, have you been treated for any other mental health problem?

THE DEFENDANT:  No.

THE COURT:  Okay.  Have you been treated or hospitalized for any drug or alcohol abuse or addiction?

THE DEFENDANT:  Yes.

THE COURT:  When?

THE DEFENDANT:  Outpatient services in Phelps I believe?

THE COURT:  When was that?

THE DEFENDANT:  2016?  Seventeen?

THE COURT:  And did you complete the program?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Have you taken any drugs, medicine, or pills in the last 24 hours?

THE DEFENDANT:  No.

THE COURT:  Have you consumed any alcohol in the last 24 hours?

THE DEFENDANT:  No.

THE COURT:  Is your mind clear today?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand what's happening here today?

Guilty Plea                     USA v. Austin                        7

THE DEFENDANT:  Yes.

THE COURT:  Have you had enough time and opportunity to discuss your case with your attorney, Mr. McCarthy?

THE DEFENDANT:  Yes.

THE COURT:  Have you discussed with him the charges against you, including any possible defenses that you may have?

THE DEFENDANT:  Yes.

THE COURT:  Have you discussed with him the consequences of entering a plea of guilty?

THE DEFENDANT:  Yes.

THE COURT:  Are you satisfied with Mr. McCarthy's representation of you?

THE DEFENDANT:  Yes.

THE COURT:  Counsel, do either of you have any doubt as to Ms. Austin's competence to plead guilty at this time?

Mr. Felton.

MR. FELTON:  No, your Honor.

THE COURT:  Mr. McCarthy.

MR. McCARTHY:  Absolutely not, your Honor.

THE COURT:  Based on the Defendant's responses to my questions and my observations of her demeanor, I find she's fully competent to enter an informed guilty plea at this time.

Ms. Austin, I'm now going to explain to you certain rights that you have under the Constitution and the laws of the United States.  These are the rights you're going to be giving

TABITHA R. DENTE, RPR, RMR, CRR
(914)-390-4027

Guilty Plea                    USA v. Austin                         8

up if you enter a plea of guilty.  Again, please tell me if there's anything at all you don't understand and either I or your attorney will explain the matter more fully.

You have a right to plead not guilty to the charges in this superseding indictment or persist in your previously-entered plea of not guilty.  Do you understand that right?

THE DEFENDANT:  Yes.

THE COURT:  If you plead not guilty, you have the right to a speedy and public trial by an impartial jury on the charges contained in the superseding indictment.  Do you understand that right?

THE DEFENDANT:  Yes.

THE COURT:  At that trial, you'd be presumed to be innocent and the Government would be required to prove you guilty by competent evidence beyond a reasonable doubt before you could be found guilty.  That means you would not have to prove that you were innocent.

Do you understand that right?

THE DEFENDANT:  Yes.

THE COURT:  If there were a jury trial, you could not be convicted unless a jury of twelve people unanimously agreed that you were guilty beyond a reasonable doubt.  Do you understand that right?

THE DEFENDANT:  Yes.

A-69

Guilty Plea                     USA v. Austin                    9

THE COURT:  At that trial and at every other stage of the case, you'd have the right to be represented by an attorney, and if you could not afford an attorney, the Court would appoint an attorney to represent you.  Do you understand that right?

THE DEFENDANT:  Yes.

THE COURT:  During a trial, the witnesses for the Government would have to come to court and testify in your presence, and your lawyer could confront and cross-examine those witnesses and object to evidence offered by the Government.

Do you understand those rights?

THE DEFENDANT:  Yes.

THE COURT:  At a trial, your lawyer could also offer evidence on your behalf and you would have the right to use subpoenas to compel witnesses to testify and to obtain evidence to be offered in your defense.  Do you understand all of that?

THE DEFENDANT:  Yes.

THE COURT:  At a trial, you'd have the right to testify if you chose to do so, but you'd also have the right not to testify.  If you chose not to testify, that could not be used against you in any way.  No inference or suggestion of guilt could be drawn from the fact that you did not testify.

Do you understand those rights?

THE DEFENDANT:  Yes.

THE COURT:  If you were convicted at a trial, you'd have the right to appeal that verdict to a higher court.  Do you

Guilty Plea                    USA v. Austin                    10

understand that right?

THE DEFENDANT:  Yes.

THE COURT:  And do you also understand that even now, you have the right to change your mind, persist in your not-guilty plea, and go to trial?

THE DEFENDANT:  Yes.

THE COURT:  But if you do plead guilty and if I accept your guilty plea, you'll be giving up your right to a trial and all the other rights that go with it that I've just described other than your right to an attorney.

If you plead guilty, there will be no trial and I will enter a judgment of guilty and sentence you on the basis of your guilty plea after considering a pre-sentence report prepared by the Probation Department and after considering any submissions I get from you, your attorney, and the Government.

Do you understand all of that?

THE DEFENDANT:  Yes.

THE COURT:  Finally, if you do plead guilty, you'll also be giving up your right not to incriminate yourself, and I'm going to ask you some questions this afternoon in order to satisfy myself that you are, in fact, guilty as charged.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Ms. Austin, do you understand that you're charged with, first, conspiracy to conduct and participate in

Guilty Plea                    USA v. Austin                    11

the conduct of the affairs of a criminal enterprise through a pattern of racketeering from at least in or about 2004 up to and including the present time, in violation of Title 18 U.S.C. § 1962(d)?

THE DEFENDANT:  Yes.

THE COURT:  Do you also understand that you've been charged with conspiracy to distribute and possess with intent to distribute 5 kilograms and more of cocaine, 280 grams and more of cocaine base, 1 kilogram and more of heroin, and 100 kilograms and more of marijuana, in violation of Title 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B), and § 846?

Do you understand you've been charged with that?

(Counsel consults with Defendant)

THE DEFENDANT:  Yes, your Honor.

THE COURT:  All right.  And you've been also been charged with aggravated identity theft, in violation of Title 18 U.S.C. § 1028(a)?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.

Indeed, and I think, Mr. Felton, for purposes of our discussion here, I'll do Counts One and Sixteen first, and then we'll deal with Count Nineteen.

So Count One involves the racketeering enterprise, Ms. Austin, and it states that at all relevant times, you and others known and unknown were members and associates of the Untouchable

A-72

Guilty Plea                          USA v. Austin                          12

Gorilla Stone Nation, a criminal organization.  Gorilla Stone, including its leadership and its membership and associates, constituted an enterprise, that is, a group of individuals associated in fact, even though not a legal entity, and you functioned -- the Gorilla Stone gang functioned as a continuing unit for common purposes in achieving the objectives of the enterprise, which included violence, sale of drugs, attempted murder, all for the purposes of promoting the standing and reputation of the Gorilla Stone gang.  The purposes of the enterprise included preserving and protecting power, territory, profits, and promoting and enhancing the gang and its associates.

The racketeering conspiracy states that from at least in or about 2004 to the present, in the Southern District of New York and elsewhere, you and others who are associated with and part of the Gorilla Stone gang engaged in activities which affected interstate and foreign commerce, knowingly combined and conspired and confederated and agreed with each other to violate the racketeering laws, and to conduct and participate directly and indirectly in the affairs of Gorilla Stone through a pattern of racketeering.  The entire conspiracy, and I realize you're pleading guilty to certain limited aspects of this, included multiple acts of murder, robbery, interference with commerce, fraud-related activities, distribution of controlled substances, and it was part and parcel of the conspiracy that each of you,

Guilty Plea                    USA v. Austin                    13

including you, engaged in at least two acts of racketeering activity, including the conspiracy to distribute controlled substances.  I understand there is an assault that took place on June 12th, 2020, that we'll talk about and wire fraud.

With respect to Count Sixteen, it's a conspiracy amongst members of the Gorilla Stone gang, including yourself, to violate the narcotics law and to distribute and possess with intent to distribute controlled substances, including the ones I mentioned previously.

Mr. Felton, if you wouldn't mind, what are the essential elements of Counts One and Sixteen as indicated in the Superseding Indictment?

MR. FELTON:  Yes, your Honor.

In order to prove the Defendant guilty of Count One of the Indictment, the Government would have to prove each of the following elements beyond a reasonable doubt:

First, that there was an agreement among two or more persons to participate in an enterprise that would affect interstate commerce through a pattern of racketeering activity;

Second, that the Defendant knowingly and willfully became a member of that agreement;

And third, that the Defendant or another member of the conspiracy agreed to commit two or more racketeering acts.

In order to establish venue, the Government would have to prove by a preponderance of the evidence that venue is proper

Guilty Plea                    USA v. Austin                        14

in the Southern District of New York.  Here, there's evidence that the Gorilla Stone enterprise operated in and around the Southern District of New York and its members sold drugs, committed fraud and acts of violence in Westchester County and New York Counties, which are in the Southern District of New York.

With respect to Count Sixteen, your Honor, the Government would have to prove each of the following elements beyond a reasonable doubt:

First, two or more persons agreed to violate the federal drug laws by entering into the unlawful agreement charged in Count Sixteen of the superseding indictment;

Second, the Defendant unlawfully, knowingly, willfully, and voluntarily entered into and became a member of the conspiracy;

And third, the objective of the conspiracy was to distribute 280 grams and more of mixtures and substances containing a detectable amount of cocaine base, in violation of Title 21 U.S.C. § 841(b)(1)(A).

The Government would also need to prove by a preponderance of the evidence that venue is appropriate in the Southern District of New York.  Here, the Defendant and her co-conspirators supplied and distributed crack cocaine in or around Peekskill, which is in the Southern District of New York.

THE COURT:  All right, Ms. Austin -- we'll come to

Guilty Plea                    USA v. Austin                    15

Count Nineteen in a moment, Mr. Felton.

Ms. Austin, do you understand that if you do not plead guilty to Counts One and Sixteen in the Superseding Indictment that the Government would have to prove each and every element of those charges just described by Assistant United States Attorney Felton beyond a reasonable doubt and at a trial?

THE DEFENDANT:  Yes.

THE COURT:  I'm now going to tell you about the maximum possible penalties for these two offenses.

As to Count One, the maximum possible penalty is a term of imprisonment of life imprisonment, followed by a term of supervised release of 5 years, plus a maximum fine of the greatest of $250,000 or twice the gross pecuniary gain derived from that offense or twice the gross pecuniary loss suffered by others than yourself resulting from the offense, plus a mandatory special assessment of $100.

As to Count Sixteen, the maximum possible penalty is a term of imprisonment of life, followed by a term of supervised release of life, plus a maximum fine of the greatest of $10 million or twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to persons other than yourself resulting from the offense, plus a mandatory special assessment of $100.

Do you understand that these are the maximum penalties for these two offenses in Count One and Count Sixteen?

Guilty Plea                    USA v. Austin                    16

THE DEFENDANT:  Yes.

THE COURT:  Count Nineteen of S6, of the Superseding Indictment, is aggravated identity theft.

In or about August 20, 2020, in the Southern District of New York, you knowingly did transfer, possess, and use without lawful authority a means of identification of another person during and in relation to a felony violation enumerated in Title 18 U.S.C. § 1028(a)(C), to wit, you unlawfully used the names and social security numbers of other persons to file fraudulent applications for COVID-19-related unemployment benefits.

Mr. Felton, what are the essential elements of Count Nineteen, please?

MR. FELTON:  In order to prove the Defendant guilty of Count Nineteen, the Government would have to prove each of the following elements beyond a reasonable doubt:

First, the Defendant knowingly transferred or used a means of identification of another person without legal authority;

Second, the Defendant knew the means of identification belonged to a real person;

And third, the Defendant did so in relation to one of the crimes enumerated in Title 18 U.S.C. § 1028(a)(C).  Wire fraud and conspiracy to commit wire fraud is a crime enumerated under 18 U.S.C. § 1028(a)(C).

Guilty Plea                    USA v. Austin                    17

And with respect to venue, your Honor, the Government would need to prove by a preponderance of the evidence that venue is properly in this District.  Here, there is evidence that the Defendant and at least one co-conspirator committed this crime in Westchester County and in New York County, which are within the Southern District of New York.

THE COURT:  Thank you, Mr. Felton.

Ms. Austin, do you further understand that if you did not plead guilty to Count Nineteen, that the Government would have to prove each and every element of that charge just described by Assistant United States Attorney Felton beyond a reasonable doubt and at a trial?

THE DEFENDANT:  Yes.

THE COURT:  I'm now going to tell you the maximum possible penalty for this offense.

As to Count Nineteen, the maximum possible penalty is a term of imprisonment of 2 years imprisonment, consecutive to every other term of imprisonment imposed by me in this case, followed by a term of supervised release of 3 years, plus a maximum fine of the greatest of $250,000 or twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to persons other than yourself resulting from the offense, plus a mandatory special assessment of $100.

Do you understand that this is the maximum possible penalty for Count Nineteen?

TABITHA R. DENTE, RPR, RMR, CRR
(914)-390-4027

A-78

Guilty Plea                    USA v. Austin                    18

THE DEFENDANT:  Yes.

THE COURT:  Do you further understand that two of the crimes to which you're pleading guilty not only have a maximum penalty, but they also carry a mandatory minimum penalty?

THE DEFENDANT:  Yes.

THE COURT:  Specifically, Count Sixteen of the Superseding Indictment carries a mandatory minimum term of imprisonment of 10 years and Count Nineteen carries a mandatory minimum term of imprisonment of 2 years, which must run consecutively to any other term of imprisonment that I may impose.  That means even if I wanted to, I would not be allowed to sentence you to less than the mandatory minimum of 12 years imprisonment.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  As part of your sentence, I can also order you to pay restitution to any person or entity injured as a direct result of your criminal conduct.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Felton, I see there's a basis for restitution in the plea agreement?

MR. FELTON:  Yes, your Honor.

THE COURT:  And the amount is $50,000.

MR. FELTON:  Yes, your Honor.  Those are the losses to the victim here.  All of the losses are of the victim the New

TABITHA R. DENTE, RPR, RMR, CRR
(914)-390-4027

Guilty Plea                    USA v. Austin                    19

York State Department of Labor.

THE COURT:  Okay, thank you for that.

Ms. Austin, I mentioned supervised release a moment ago.  Supervised release, it means if I sentence you to prison to be followed by a term of supervised release, you'll be subject to supervision by the Probation Department after you are released.  If you violated any of the terms and conditions of supervised release, your term of supervised release could be revoked and you could be returned to prison without a jury trial to serve additional time even beyond your original sentence.  If that happened, you would not be given credit for the time served in prison on your original sentence or for any time served on supervised release.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  You should also understand that parole has been abolished in the federal system, so if you are sentenced to prison, you will not be released early on parole.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  You're pleading guilty, Ms. Austin, to three different counts in the Superseding Indictment.  Do you understand that I will impose a sentence, a separate sentence, on each count?

THE DEFENDANT:  Yes.

A-80

Guilty Plea                    USA v. Austin                    20

THE COURT:  Do you further understand that I may order you to serve the sentences either concurrently, meaning you would serve both or all of the sentences at the same time, or consecutively, meaning that you would have to serve the sentences one after the other?

THE DEFENDANT:  Yes.

THE COURT:  Do you also understand that if I impose consecutive sentences, your sentence could be a maximum total of lifetime imprisonment, with a mandatory minimum of 12 years of imprisonment, two of which must run consecutively to any other term of imprisonment that I might impose?

THE DEFENDANT:  Yes.

THE COURT:  Are you a citizen of the United States, Ms. Austin?

THE DEFENDANT:  Yes.

THE COURT:  Do you further understand that if I accept your guilty plea and I adjudge you guilty, that adjudication may deprive you of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury, the right to possess any kind of firearm, and the right to hold certain professional licenses?

THE DEFENDANT:  Yes.

THE COURT:  Have you talked to your attorney about how the federal sentencing guidelines apply to your case?

THE DEFENDANT:  Yes.

TABITHA R. DENTE, RPR, RMR, CRR
(914)-390-4027

Guilty Plea                    USA v. Austin                    21

THE COURT:  In determining a sentence, I'm required to consider the guidelines, which are a set of rules and recommendations for determining an appropriate sentence; I have to calculate the applicable sentencing guideline range, consider that range, and determine whether there should be an upward or downward departure from that range.

In addition, I'm required to consider the sentencing factors set forth in § 3553(a) of Title 18 of the United States Code and to impose a sentence on you that I believe best satisfies the purposes of the criminal law, even if that sentence is higher or lower than what the guidelines recommend.

Do you understand all of that?

THE DEFENDANT:  Yes.

THE COURT:  Do you also understand I'll not be able to determine how the guidelines apply to your case until after a pre-sentence report has been prepared by the Probation Office and both you and the Government have had a chance to review, comment on, and object to anything in that report?

THE DEFENDANT:  Yes.

THE COURT:  Do you also understand that if your attorney or anyone else has told you what your sentence may be or predicted it for you, that prediction could be wrong?

THE DEFENDANT:  Yes.

THE COURT:  I'm telling you this because you need to understand that no one, not your attorney, not the Government's

A-82

Guilty Plea                    USA v. Austin                    22

attorney, can decide or determine what your sentence right now will be.  It's my job to decide what your sentence will be and I'm not going to do that right now.  Instead, I'm going to wait until I get the pre-sentence report and it's completed and I've ruled on any challenges, calculated for myself your guidelines range, determined whether there are any grounds to depart from that range, and considered the § 3553(a) factors, so at this point, no one can predict what your sentence will be in this case.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Do you also understand that even if your sentence is different from what your attorney told you it might be or anyone else told you it might be or if it's different from what you expect it to be or what you expect from the plea agreement, once you've pled guilty, I will not let you withdraw your guilty plea.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Ms. Austin, has anyone threatened you or coerced you in any way or tried to force you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Has anyone other than the Prosecutor offered you anything or promised you anything in order to get you to plead guilty?

Guilty Plea                    USA v. Austin                    23

THE DEFENDANT:  No.

THE COURT:  Has anyone promised you anything in order to get you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  I've been given a letter dated March 4, 2021, from the Government's attorney to your attorney, which is a plea agreement.

Mr. Cangelosi, please mark the original of this agreement Court Exhibit 1 to this proceeding.

I want to verify, Ms. Austin, on page 10, below the typed words "agreed and consented to" and above the typed words "Naya Austin," there's a signature.  Is that your signature?

THE DEFENDANT:  Yes.

THE COURT:  Did you ask Mr. McCarthy to also sign on your behalf?

THE DEFENDANT:  Yes.

THE COURT:  Did you read the agreement before you signed it, Ms. Austin?

THE DEFENDANT:  Yes.

THE COURT:  Did you discuss it with Mr. McCarthy before you signed it?

THE DEFENDANT:  Yes.

THE COURT:  Did you discuss every aspect of it with him?

THE DEFENDANT:  Yes.

A-84

Guilty Plea                    USA v. Austin                    24

THE COURT:  Did you understand the agreement at the time you signed it?

THE DEFENDANT:  Yes.

THE COURT:  Is this plea agreement the entire agreement between you and the Government?

THE DEFENDANT:  Yes.

THE COURT:  Is there any agreement, promise, or understanding between you and the Government that's been left out of the plea agreement?

THE DEFENDANT:  No.

THE COURT:  Do anyone threat or coerce or force you to enter a plea of not guilty?

THE DEFENDANT:  No.

THE COURT:  Other than what is contained in the plea agreement, has anyone promised you anything or offered you any inducement to plead guilty or to enter into this plea agreement?

THE DEFENDANT:  No.

THE COURT:  Has anyone made a promise to you as to what your sentence will be?

THE DEFENDANT:  No.

THE COURT:  It appears in the plea agreement that you and the Government have stipulated to, meaning you agreed to, the appropriate calculation of your sentencing range under the guidelines.  Is that your understanding?

THE DEFENDANT:  Yes.

TABITHA R. DENTE, RPR, RMR, CRR
(914)-390-4027

Guilty Plea                    USA v. Austin                    25

THE COURT:  According to the stipulation, the agreed-upon sentencing range is 234 to 286 months, with a mandatory minimum of 144 months of imprisonment, 10 years on Count Sixteen and 24 months for Count Nineteen, which must be served consecutively to any other sentence imposed.

Do you understand that the guidelines stipulation in the plea agreement is binding on you, it's binding on the Government, but it's not binding on me?

THE DEFENDANT:  Yes.

THE COURT:  Do you also understand that regardless of what you and the Government have agreed to, I'm going to make my own determination as to what your guidelines range is.

THE DEFENDANT:  Yes.

THE COURT:  Do you also understand that under certain circumstances, both you and the Government have a right to appeal any sentence that I might impose, subject, of course, to the terms of the plea agreement?

THE DEFENDANT:  Yes.

THE COURT:  There appears to be what the lawyers call an appeal waiver on page 7 and 8 of the agreement.

Do you understand that under the plea agreement, you're giving up your right to appeal or otherwise challenge your sentence so long as I sentence you within or below the stipulated guidelines range of 234 to 286 months of imprisonment, with a mandatory minimum term of 144 months of

TABITHA R. DENTE, RPR, RMR, CRR
(914)-390-4027

Guilty Plea                    USA v. Austin                    26

imprisonment, 24 of which must be served consecutively to any other sentence imposed?

THE DEFENDANT:  Yes.

THE COURT:  I think there's a civil forfeiture here, Mr. Felton, am I right, in the amount of 71,000?

MR. FELTON:  Yes, your Honor.  Those are the proceeds traceable to the offenses charged in Counts One and Sixteen of the Indictment.

THE COURT:  Ms. Austin, did you discuss forfeiture with your attorney?

THE DEFENDANT:  Yes.

THE COURT:  Do you admit the forfeiture allegations with respect to Count One and Count Sixteen of the Superseding Indictment and agree to forfeit to the United States, pursuant to Title 18 U.S.C. § 1963 and Title 21 U.S.C. § 853, a sum of money equal to $71,000 in United States currency, representing proceeds traceable to the commission of the charges in Counts One and Count Sixteen of the Superseding Indictment?

(Counsel consults with Defendant)

THE DEFENDANT:  Yes, your Honor.

THE COURT:  You understand what forfeiture means, Ms. Austin?

THE DEFENDANT:  Yes.

THE COURT:  It means you're giving something up. Under this section of the agreement, you're consenting to give

Guilty Plea                    USA v. Austin                    27

up a money judgment against you in the amount of $71,000.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Do you also understand that at the appropriate time, you'll be signing and agreeing to a consent preliminary order of forfeiture and money judgment whereby a judgment will be entered against you in the amount of $71,000?

THE DEFENDANT:  Yes.

THE COURT:  Have you understood everything that's happened so far here today?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Now that you've been advised of the charges against you, the possible penalties that you face and the rights you're giving up, is it still your intention to plead guilty to Count One, Count Sixteen, and Count Nineteen of the Superseding Indictment?

THE DEFENDANT:  Yes.

THE COURT:  With respect to Count One of the Superseding Indictment, Ms. Austin, how do you plead, guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  Are you, in fact, guilty of that charge?

THE DEFENDANT:  Yes.

THE COURT:  Are you pleading guilty voluntarily and of your own free will?

A-88

Guilty Plea                    USA v. Austin                    28

THE DEFENDANT:  Yes.

THE COURT:  With respect to Count Sixteen of the Superseding Indictment, Ms. Austin, how do you plead, guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  Are you, in fact, guilty of that charge?

THE DEFENDANT:  Yes.

THE COURT:  Are you pleading guilty voluntarily and of your own free will?

THE DEFENDANT:  Yes.

THE COURT:  With respect to Count Nineteen of the Superseding Indictment, Ms. Austin, how do you plead, guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  Are you, in fact, guilty of that charge?

THE DEFENDANT:  Yes.

THE COURT:  Are you pleading guilty voluntarily and of your own free will?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Felton, would you please summarize what the Government would expect to prove if this case went to trial.

MR. FELTON:  Yes, your Honor, and I'll summarize the evidence for all three counts.

THE COURT:  I think it's the right way to do it.

A-89

Case 7:20-cr-00626-PMH   Document 412   Filed 04/22/22   Page 29 of 48

Guilty Plea                    USA v. Austin                    29

MR. FELTON:  If this case were to proceed to trial, the Government would expect to present the following evidence, among other things:

Law enforcement testimony that it recovered approximately 220 grams of crack cocaine and two firearms from the Defendant's residence that she shared with a co-conspirator; law enforcement testimony that it physically surveilled the Defendant and her co-conspirators engaging in crack cocaine transactions with a confidential informant; recordings of confidential-informant drug buys showing that law enforcement operations bought approximately 200 grams of crack cocaine from the Defendant and her conspirators; cell phone extractions, including of the Defendant's phone, which would show that the Defendant was a member of the Untouchable Gorilla Stone Nation gang that was involved in narcotics trafficking, that the Defendant and other members of the gang agreed to and actually did file fraudulent unemployment applications using the personal identifying information of others, including real people known to the Defendant, and the organized nature of the gang's crack cocaine distributing operations and the Defendant's personal involvement in that operation; Title III wire interceptions, including over the Defendant's phone, which would show that members of Gorilla Stone collected funds from the Pandemic Unemployment Assistance Program run by the New York State Department of Labor and put it in a communal fund or what they

Guilty Plea                    USA v. Austin                    30

called a kitty; that the Defendant discussed a June 12th, 2020, gunpoint robbery of a rival drug dealer that she participated in; that Gorilla Stone and the Defendant operated an extensive crack cocaine distribution network throughout Westchester County and New York City; records from the New York State Department of Labor, these would show that money was actually paid out on the fraudulent Pandemic Unemployment Assistance Program application filed by other members of Gorilla Stone and the Defendant; victim testimony, including testimony from a representative of the New York State Department of Labor, which would show that applications to the New York Pandemic Unemployment Assistance Program generated interstate wires; motel video surveillance footage showing the Defendant with Co-Defendants prior to a gunpoint robbery of a rival drug dealer; photographs of the motel room; cooperator testimony about the Defendant's membership in Gorilla Stone and the rules of Gorilla Stone, including how members of the gang were expected to protect each other and how members committed fraud, distributed crack cocaine, and committed violence to further the gang's status; additional cooperator testimony that the Defendant would pay money and drugs to others to obtain their personal identifying information and use it to open bank accounts and receive unemployment and COVID-19-related payments under false pretenses; social media evidence which would establish Defendant's membership in the gang, that members of Gorilla

Guilty Plea                    USA v. Austin                    31

Stone in Westchester bought and resold crack cocaine, and the highly organized nature of the gang and the rules of the gang, including that members had to be armed and retaliate with acts of violence against rival gang members; and call-frequency records showing frequent communication between the Defendant and her co-conspirators, all of which would establish beyond a reasonable doubt that the Untouchable Gorilla Stone Nation is a violent street gang that has operated through New York State since at least 2004.

Members of the gang engaged in a variety of criminal acts including fraud, violence, and crack cocaine trafficking. The Defendant was a member of the Gorilla Stone gang, and in connection with her membership of the gang, she and/or another member of the conspiracy agreed to commit two or more racketeering acts, that is, at least in or about 2004 to December 2020, the Defendant participated in and was associated with the racketeering conspiracy known as the Untouchable Gorilla Stone Nation, in violation of Title 18 U.S.C. § 1962(d), in, among other places, Peekskill, New York, as charged in Count One of the S6 Superseding Indictment, and the Defendant knew and was aware that a member or society of the enterprise, which may include the Defendant herself, would commit two or more predicate racketeering acts in furtherance of the enterprise. The Defendant conspired with others to distribute at least 280 grams and more of mixtures and substances containing a

Guilty Plea                    USA v. Austin                    32

detectable amount of crack cocaine in, among other places, Peekskill, New York, as charged in Count Sixteen of the S6 Superseding Indictment, and the Defendant committed aggravated identity theft in or about August 2020 as charged in Count Nineteen of the S6 Superseding Indictment.

THE COURT:  Thank you for that, Mr. Felton.

Ms. Austin, did you hear what Mr. Felton just said?

THE DEFENDANT:  Yes.

THE COURT:  Is what he said substantially accurate?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Please tell me now in your own words what you did to make you believe that you are guilty of these charges.

THE DEFENDANT:  I take full responsibility for the narcotics, crack cocaine.  I take full responsibility for being a part of this organization.  I do not take full responsibility for a gunpoint robbery.  That's inaccurate.  And I take full responsibility for the identity theft.

THE COURT:  Anything else you want to tell me?

THE DEFENDANT:  Um...

(Counsel consults with Defendant)

MR. McCARTHY:  Your Honor, Ms. Austin is just a little emotional right at the moment.  She did prepare something before court began and if she could read it, that might help.

THE COURT:  Is what you want to read to me your words,

Guilty Plea                    USA v. Austin              33

Ms. Austin?  Not your lawyer's words, your words?

THE DEFENDANT:  (Nods in the affirmative).

THE COURT:  Sure, I'm happy to listen to you.  Take your time.

MR. McCARTHY:  We produced a document, your Honor.  Can I just review it with her for just a moment?

THE COURT:  Sure.

MR. McCARTHY:  Thank you.

(Counsel consults with Defendant)

THE COURT:  I mean, I'm also going to have some questions, so...but I'm happy to get from Ms. Austin --

MR. McCARTHY:  We were counting on the Court's questions.

THE COURT:  Okay.  You can count on it.

(Counsel consults with Defendant)

MR. McCARTHY:  She has prepared a heartfelt statement, your Honor.  It's probably more appropriate for her sentencing.  It's an apology to her family and to the Court.  I think we'd do better given her emotional level now if she responded to your questions.  They would probably be very much on point.

THE COURT:  Okay, we'll do it that way.

Ms. Austin, I'm asking you questions because I need to satisfy my own oath and conscience that you're actually guilty of what you're telling me you're guilty of, so that's why I'm asking you questions, okay?

A-94

Guilty Plea                        USA v. Austin                        34

So you're a member of the Untouchable Gorilla Stone Nation; am I right?

THE DEFENDANT:  Yes.

THE COURT:  And you've been a member of that organization since somewhere around 2004 up to and including the time you were arrested; am I right?

THE DEFENDANT:  In 2004 I was nine years old, so, no, I would say 2015, around there.

THE COURT:  Okay.  And from 2015 until now, as a member of the Gorilla Stone, you engaged in activities that crossed state lines; yes?

THE DEFENDANT:  Yes.

THE COURT:  And you engaged in activities in the Southern District of New York in Westchester County?

THE DEFENDANT:  Yes.

THE COURT:  And you participated in and conducted the affairs of Gorilla Stone directly, didn't you?

THE DEFENDANT:  I participated in it, yes, your Honor.

THE COURT:  You were a leader of the gang; am I right?

THE DEFENDANT:  Yes, that was my title, yes.

THE COURT:  Okay.  And you entered into a conspiracy with the other gang members, some of whom are your Co-Defendants, right?

THE DEFENDANT:  Yes.

THE COURT:  And you knew that you were entering into a

TABITHA R. DENTE, RPR, RMR, CRR
(914)-390-4027

Guilty Plea                     USA v. Austin                     35

conspiracy; yes?

THE DEFENDANT:  Yes.

THE COURT:  And you knew that the conspiracy -- the part of the conspiracy that was illegal included all kinds of acts of violence and drug sales, crack cocaine sales; yes?

THE DEFENDANT:  Yes.

THE COURT:  And you conspired with one of the individuals to possess and you possessed with intent to distribute 280 grams or more of crack cocaine.  Am I right about that amount?

THE DEFENDANT:  Yes.

THE COURT:  And 5 kilograms and more of cocaine?

THE DEFENDANT:  Yes.

THE COURT:  And one kilogram and more of heroin?

THE DEFENDANT:  No.

THE COURT:  Okay.  And how about 100 kilograms or more of marijuana?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  And you knew drug sales were illegal.

THE DEFENDANT:  Yes.

THE COURT:  And you knew the conspiracy was aimed -- one of its purposes was to sell illegal drugs, right?

THE DEFENDANT:  Yes.

THE COURT:  And you did all this voluntarily.

A-96

Guilty Plea                          USA v. Austin                          36

THE DEFENDANT:  Yes.

THE COURT:  Nobody forced you to do any of those acts.

THE DEFENDANT:  No.

THE COURT:  Now, tell me about the assault on June 12th, 2020.  What do you know about that assault?

THE DEFENDANT:  On June 11th is when it took place.

THE COURT:  June 11th, not June 12th.

THE DEFENDANT:  Yes.

THE COURT:  Okay.

THE DEFENDANT:  I was, I was robbed a week before and I retaliated, I went to go try to get my money back.

THE COURT:  Okay.  You and others.

THE DEFENDANT:  Yes.

THE COURT:  Was there a gun involved?

THE DEFENDANT:  No, there was no gun involved.

THE COURT:  Did you brandish a weapon?

THE DEFENDANT:  No, not at all.

THE COURT:  Was the individual that you tried to get your money back from assaulted by gang members?

THE DEFENDANT:  Yes.

THE COURT:  All right, what happened to that individual?

THE DEFENDANT:  He was hit in the head.

THE COURT:  Was he injured, seriously injured?

THE DEFENDANT:  I'm not sure.  I wasn't...yeah.

A-97

Guilty Plea                     USA v. Austin                    37

THE COURT:  Okay, but you participated in that --

THE DEFENDANT:  Yes.

THE COURT:  -- event?

THE DEFENDANT:  Yes.

THE COURT:  Did you get your money back?

THE DEFENDANT:  Some of it.

THE COURT:  Okay.  Was there any weapon used in connection with the assault?  Was the guy hit in the head with a bat or anything?

THE DEFENDANT:  A bottle.

THE COURT:  A bottle.

THE DEFENDANT:  Yes.

THE COURT:  And that was done as a member of the Gorilla Stone gang, right?  You were protecting your position and trying to get your money back and Gorilla Stone helped you do that, right?

THE DEFENDANT:  Um...it was more -- it was just to get my money back.  It wasn't a gang thing.

THE COURT:  Well, were gang members there with you?

THE DEFENDANT:  Yes.

THE COURT:  Okay.

Now, tell me about this conspiracy to sell drugs.  You were part of the gang, right?

THE DEFENDANT:  Yeah.

THE COURT:  The gang sells drugs?

TABITHA R. DENTE, RPR, RMR, CRR
(914)-390-4027

Guilty Plea                    USA v. Austin                          38

THE DEFENDANT:  (Nods in the affirmative).

THE COURT:  You agreed to be part of that conspiracy and you sold drugs.

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Crack?

THE DEFENDANT:  Yes.

THE COURT:  Cocaine.

THE DEFENDANT:  (Nods in the affirmative).

THE COURT:  Marijuana.

THE DEFENDANT:  (Nods in the affirmative).

THE COURT:  In the quantities that I identified for your previously; yes?

THE DEFENDANT:  (Nods in the affirmative).

THE COURT:  280 grams or more of crack, 5 kilograms or more of coke, and 100 kilograms or more of marijuana.

THE DEFENDANT:  Um...more for the 280 grams of crack I did...

THE COURT:  But you did sell cocaine and marijuana.

THE DEFENDANT:  Marijuana, yes.  Crack I just -- is the same -- well, a little different than the cocaine, but --

THE COURT:  It's a little different.

THE DEFENDANT:  Yeah.  No -- yeah, it's always crack, though, I never...cocaine.

THE COURT:  Okay, fair enough.

When you entered into the conspiracy with the Gorilla

TABITHA R. DENTE, RPR, RMR, CRR
(914)-390-4027

Guilty Plea                    USA v. Austin                    39

Stone members, you knew that was illegal, right?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  And the fact is that you sold quantities to individuals who turned out to be confidential informants, right?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Tell me about the unemployment situation.  You traded drugs, I guess, for personal identification information, social security numbers and otherwise?

THE DEFENDANT:  Yes.

THE COURT:  And what did you do with them?

THE DEFENDANT:  I filed for unemployment.

THE COURT:  On behalf of those individuals, knowing they were real people, but not you.

THE DEFENDANT:  Yes.

THE COURT:  Okay.  And did you get unemployment benefits?

THE DEFENDANT:  Yes.

THE COURT:  How did it work?  You would make the application online?

THE DEFENDANT:  Yes.

THE COURT:  And then they would send debit cards, as I get it, to particular addresses?

THE DEFENDANT:  Yes.

A-100

Guilty Plea                    USA v. Austin                    40

THE COURT:  And you would watch for the mail and take the mail out of the mailbox, take the debit card out of the mailbox?

THE DEFENDANT:  Yes.

THE COURT:  And then you would deposit that money into a Gorilla Stone bank account?

THE DEFENDANT:  No.

THE COURT:  All right, what did you do with the money?

THE DEFENDANT:  It was for my personal, personal use.

THE COURT:  I see.  Did any of the money go to the Gorilla Stone gang?

THE DEFENDANT:  No.

THE COURT:  All right.  Did they authorize you to keep the money or did you just...start a separate enterprise on your own?

THE DEFENDANT:  Did who authorize me?

THE COURT:  Huh?

THE DEFENDANT:  Who --

THE COURT:  Did the gang members, the gang members say you could do this and keep the money.

THE DEFENDANT:  No, yeah, it was completely separate.

THE COURT:  Oh.  Did the money end up in an account called the kitty?

THE DEFENDANT:  No.

THE COURT:  Okay.  When you possessed this

TABITHA R. DENTE, RPR, RMR, CRR
(914)-390-4027

A-101

Guilty Plea                      USA v. Austin                      41

information, you knew you were going to use it to commit a wire fraud, right?  You were making a fraudulent application on the internet for unemployment benefits.

THE DEFENDANT:  Yes.

THE COURT:  Okay.

At the time you were doing all of these things, did you know it was wrong?

THE DEFENDANT:  Yes, I knew it was wrong.

THE COURT:  Did you know it was against the law?

THE DEFENDANT:  Yes.

THE COURT:  Did anyone force you or threaten you or coerce you to do any of these things?

THE DEFENDANT:  No.

THE COURT:  Mr. Felton or Mr. McCarthy, are there any other questions you'd like me to ask Ms. Austin?

I think we have one issue with respect to the kilogram of heroin.  That seems to be in the plea agreement, but not in the recitation.

MR. FELTON:  Your Honor, the Government's understanding is that the Defendant is pleading guilty only to the crack cocaine object of the narcotics conspiracy, and the --

THE COURT:  Okay, fair enough.

MR. FELTON:  So the --

THE COURT:  We're good with that.

MR. FELTON:  The Government is satisfied with that

TABITHA R. DENTE, RPR, RMR, CRR
(914)-390-4027

A-102

Guilty Plea                    USA v. Austin                    42

portion of the recitation of the facts.  You know, the Government believes that Defendant has satisfied all the elements of the charges.

THE COURT:  Then we have don't have any more questions to ask.

MR. FELTON:  But with respect to some of the guidelines, factual stipulations, the plea agreement notes what the parties' agreement is to, the agreement that the parties have signed.

THE COURT:  And I assume those facts are correct because the plea agreement has been entered into.

MR. FELTON:  That's correct, your Honor, and...with what the Defendant said today, while everything may not line up perfectly with the factual stipulation, certainly all the elements of the charges have been met and the Government is satisfied that the Defendant has sufficiently pled guilty to Counts One, Sixteen, and Nineteen of the S6 Indictment.

THE COURT:  All right.

Mr. McCarthy, are there any other questions you'd like to ask?

MR. McCARTHY:  Your Honor, I don't.  I did want to thank the Government and the Court for clarifying that heroin issue.

Ms. Austin was adamant she had been involved in the sale of crack cocaine and that page 1 of the plea agreement, in

Guilty Plea                    USA v. Austin                    43

articulating all of the possible drugs that could be under Count Sixteen, heroin was mentioned, but what Ms. Austin and her family had pointed out to me, "Mr. McCarthy, she had nothing to do with heroin, it was exclusively the crack cocaine."

THE COURT:  And I accept that as so.

The point I do want to make and you need to review with Ms. Austin is the reality that the guidelines calculations presume certain facts and those are facts you've stipulated to and agreed to.  Whether or not Ms. Austin wants to allocute with respect to it today or not is of no consequence to me.  I'm satisfied that she believes she's guilty and I'm satisfied that she has committed the crimes that she's pleading guilty to, but I think you should go over with her, in fairness, the balance of the guidelines calculation.

Mr. Felton, you want to say something?

MR. FELTON:  Just two points, your Honor, and the Government agrees with everything the Court just said.

With respect to the narcotics conspiracy, the guidelines factual stipulations do only define the drug weight based on crack cocaine alone, but the Government is not taking into account any heroin, and notwithstanding the Defendant's admissions in Court that she was aware of trafficking of a certain amount of marijuana, that is not reflected in the agreement.  The agreement has only crack cocaine.

THE COURT:  We're on the same page.  I think we're all

TABITHA R. DENTE, RPR, RMR, CRR
(914)-390-4027

Guilty Plea                    USA v. Austin                    44

on the same page.  I'm just trying to be careful, that's all.

MR. McCARTHY:  Thank you, your Honor.

MR. FELTON:  And, your Honor, I just had one -- I think the Court did mention it when going through the maximum possible penalties, but I may have been flipping papers.  I just wanted it to be clear for the record that with respect to the mandatory minimum term of supervised release of Count Sixteen, that the Court has reviewed that with the Defendant.

THE COURT:  Sure.

The mandatory minimum term of Count Sixteen is life for supervised release.  I'm sorry, withdrawn.  The mandatory maximum term is life of supervised release and the mandatory minimum term for supervised release is 5 years for Count Sixteen.

MR. FELTON:  Thank you.  Nothing further from the Government.

THE COURT:  All right, Mr. Felton, do you think there's a sufficient factual predicate for a plea of guilty at this time?

MR. FELTON:  Yes, your Honor.

THE COURT:  Mr. McCarthy, do you agree?

MR. McCARTHY:  Yes, sir.

THE COURT:  Mr. McCarthy, do you know of any valid defense that would prevail at trial or any reason why your client should not be permitted to plead guilty at this time?

TABITHA R. DENTE, RPR, RMR, CRR
(914)-390-4027

Guilty Plea                    USA v. Austin                    45

MR. McCARTHY:  I know of no such defense, your Honor. I've visited with her about thirty-five times in the jail. She's quite clear this is the appropriate thing to do and is appreciative of the opportunity.

THE COURT:  All right.

Based on Ms. Austin's responses to my questions and my observations of her demeanor, I find that she understands her rights, is waiving them knowingly and voluntarily with an understanding of the consequences of her guilty plea, including the potential sentence that may be imposed.

I further find that her guilty plea is voluntarily and did not result from force, threats, or promises other than the promises in the plea agreement, that Ms. Austin has admitted she is guilty as charged in Counts One, Sixteen, and Nineteen of the Superseding Indictment, and that the plea is supported by an independent factual basis for each and every element of the crimes charged.

Accordingly, I accept the guilty plea and adjudge Ms. Austin guilty on the charges set forth in Counts One, Sixteen, and Nineteen of the Superseding Indictment.

I'm going to direct that the Probation Department conduct a pre-sentence investigation and prepare a pre-sentence report.

Ms. Austin, you're going to be interviewed by a probation officer as part of the pre-sentence investigation

Guilty Plea                    USA v. Austin                    46

process.  Mr. McCarthy will be with you during that interview. Please make sure that anything you say to that probation officer is truthful and accurate.  I say that because I want you to know the pre-sentence report is very important to me in deciding what sentence to impose on you, so it's important that you read the report carefully, discuss it with Mr. McCarthy before your sentencing date, and if there are any mistakes in the report, tell your lawyer about them so that he can bring them to my attention before I impose sentence.

Also, both you and your attorney will have the right to speak before I impose sentence.

I see we've picked a possible sentencing date, subject to Counsel's availability, of November 2, 2022, at eleven a.m.

(Counsel consults with Defendant)

MR. McCARTHY:  I'm sorry, I was speaking to Ms. Austin.  I didn't hear the date, your Honor.

THE COURT:  November 2, 2022, at eleven a.m.  It's our first available sentencing date.

(Brief pause)

MR. McCARTHY:  Wednesday, November 2nd, All Soul's Day, will be just fine, your Honor.

THE COURT:  Eleven a.m., okay.

Your sentencing memo, Mr. McCarthy, is due two weeks before that.  Government's response will be due one week before it.

A-107

Guilty Plea                    USA v. Austin                        47

I'm also asking Counsel now to format your sentencing submissions to the extent you want to make legal arguments to me or factual arguments under the 3553(a) factors in accordance with the factors.  It just makes it simpler, easier, if you do A1 and then you do A2 and then you do A3.  The read is much...much easier and quicker for me.  They should address each of the factors and do it seriatim.

If you have any guidelines or policy arguments you want to make, make them separately, okay?  I would appreciate both sides letting the others know that that is the format I intend to use going forward.  It will just make things simpler.

All right, Counsel, is there anything else we can do for each other this afternoon?

MR. FELTON:  No, your Honor.  Thank you.

MR. McCARTHY:  Your Honor, no, sir.  Thank you.

I did have one request of your staff, your Honor.

Ms. Austin's mother is present.  Because of the pandemic, she's been unable to see her daughter for about a year-and-a-half.  Is there any possibility they could have just a very brief courtroom visit?

THE COURT:  I'm not in charge of Ms. Austin.  The marshals are in charge of Ms. Austin and so you'll have to ask that, direct that request to them.  I don't interfere with the marshals' protocol, so if the marshals permit it, it's fine; if they don't permit, it's not fine.

Guilty Plea                         USA v. Austin                    48

MR. McCARTHY:  Thank you, Your Honor.

THE COURT:  All right.  Counsel, take care.  Ms. Austin, take care.  I'll see you in November.

MR. McCARTHY:  Thank you, your Honor.

THE DEPUTY CLERK:  All rise.  Court is in recess.

Certified to be a true and accurate transcript.

_____

TABITHA DENTE, SR. COURT REPORTER

TABITHA R. DENTE, RPR, RMR, CRR
(914)-390-4027

A-109



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 4, 2022

**BY EMAIL**
Stephen G. McCarthy, Jr., Esq.
101 Avenue of the Americas
Suite 942
New York, New York 10013
sgmccarthy@sligotribeca.com

      Re: *United States v. Naya Austin, a/k/a "Baby,"* S6 20 Cr. 626 (PMH)

Dear Mr. McCarthy:

On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Naya Austin, a/k/a "Baby" ("the defendant") to Counts One, Sixteen, and Nineteen of the above-referenced Indictment (the "Indictment").

Count One of the Indictment charges the defendant with conspiring with others, from at least in or about 2004 up to and including the present, to conduct and participate in the conduct of the affairs of a criminal enterprise through a pattern of racketeering activity, in violation of Title 18, United States Code, Section 1962(d). Count One carries a maximum sentence of life imprisonment; a maximum term of five years' supervised release; a maximum fine, pursuant to Title 18, United States Code, Section 3571 of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant as a result of the offense; and a mandatory $100 special assessment.

Count Sixteen of the Indictment charges the defendant with conspiring to distribute and possess with intent to distribute five kilograms and more of cocaine, 280 grams and more of cocaine base, one kilogram and more of heroin, and 100 kilograms and more of marijuana, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), and 846. This offense carries a maximum term of imprisonment of life; a mandatory minimum term of imprisonment of ten years; a maximum term of supervised release of life; a mandatory minimum term of supervised release of five years; a maximum fine, pursuant to Title 21, United States Code, Section 841(b)(1)(A), and Title 18, United States Code, Section 3571, of the greatest of $10,000,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant as a result of the offense; and a mandatory $100 special assessment.

2020.11.02



COURT'S
EXHIBIT NO. ___1___
IDENTIFICATION/EVIDENCE
DKT.# S6 20cr626
DATE: 4/6/22

Count Nineteen charges the defendant with aggravated identity theft, in violation of Title 18, United States Code, Section 1028A. This offense carries a mandatory term of imprisonment of two years that must be served consecutively to any other term of imprisonment imposed; a maximum term of supervised release of three years; a maximum fine, pursuant to Title 18, United States Code, Section 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a mandatory $100 special assessment.

The total maximum term of imprisonment on Counts One, Sixteen, and Nineteen is life, with a mandatory minimum term of 12 years' imprisonment, two of which must run consecutively to any other term of imprisonment imposed.

The defendant further agrees to make restitution in the amount of $50,000 in accordance with Title 18, United States Code, Sections 3663, 3663A, and 3664. The defendant further agrees that the obligation to make such restitution shall be made a condition of probation, *see* 18 USC §3563(b)(2), or of supervised release, *see* 18 USC §3583(d), as the case may be.

In consideration of the defendant's plea to the above offense, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for (i) conspiring with others, from at least in or about 2004 up to and including the present, to conduct and participate in the conduct of the affairs of a criminal enterprise through a pattern of racketeering activity and through the collection of unlawful debts, as charged in Count One of the Indictment, (ii) conspiring with others, from at least in or about 2004 up to and including the present, to distribute and possess with intent to distribute 280 grams and more of crack cocaine, as charged in Count Sixteen of the Indictment, and (iii) committing aggravated identity theft, in or about August 2020, as charged in Count Nineteen of the Indictment, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 *et seq.* In addition, at the time of sentencing, the Government will move to dismiss any open Counts against the defendant. The defendant agrees that with respect to any and all dismissed charges she is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

The defendant hereby admits the forfeiture allegations with respect to Counts One and Count Sixteen of the Indictment and agrees to forfeit, pursuant to Title 18, United States Code, Section 1963 and Title 21, United States Code, Section 853, respectively, a sum of money equal to $71,000, representing proceeds traceable to the commission of said offenses (the "Money Judgment"). It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon her in addition to forfeiture.

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

2020.11.02

A-111

### A. Offense Level

1.   The November 1, 2021 edition of the Guidelines Manual is applicable to the offense charged in Counts One, Sixteen, and Nineteen of the Indictment.

Count One: Conspiracy to Commit Racketeering

2.   The Guideline applicable to Count One is U.S.S.G. § 2E1.1.  Pursuant to U.S.S.G. § 2E1.1, the base offense level is the greater of 19 and the offense level applicable to the underlying racketeering activity, each after application of Chapter Three, Parts A, B, C, and D of the Guidelines.

3.   Pursuant to U.S.S.G. § 2E1.1, Application Note 1, because there is more than one underlying offense, each underlying offense must be treated as if contained in a separate count of conviction for purposes of U.S.S.G. § 2E1.1(a)(2).

4.   Pursuant to U.S.S.G. § 3D1.1(a), because there are multiple underlying offenses, a multiple-count analysis must be performed for these offenses.

5.   Pursuant to U.S.S.G. § 3D1.2, each underlying offense comprises its own separate Group.  Those offenses include the following:

   a.   Offense 1:  Conspiring to distribute, and possess with intent to distribute, crack cocaine, from in or around 2004 up to and including the present.

   b.   Offense 2:  Assault in Aid of Racketeering on or about June 12, 2020 (the "June 12 Assault").

   c.   Offense 3:  Conspiracy to commit wire fraud, from in or around 2004 up to and including the present.

Offense 1:

6.   The Offense Level for the conspiracy to distribute crack cocaine is as follows:

   a.   The applicable Sentencing Guidelines is U.S.S.G. § 2D1.1.

   b.   Pursuant to U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(4), because the offense involved a quantity of crack cocaine of at least 840 grams but less than 2.8 kilograms, the base offense level is 32.

   c.   Because a dangerous weapon was possessed, the offense level is increased by two levels, pursuant to U.S.S.G. § 2D1.1(b)(1).

   d.   In accordance with the above, the total applicable Guidelines level is 34.

Offense 2:

2020.11.02

A-112

7. The Offense Level for the June 12 Assault is as follows:

    a. The applicable Sentencing Guideline is U.S.S.G. § 2A2.2.

    b. Pursuant to U.S.S.G. § 2A2.2(a), the base offense level is 14.

    c. Because the assault involved more than minimal planning, the offense level is increased by two levels, pursuant to U.S.S.G. § 2A2.2(b)(1).

    d. Because a dangerous weapon (a firearm) was used during the assault by a co-conspirator, the offense level is increased by four levels, pursuant to U.S.S.G. § 2A2.2(b)(2)(B).

    e. Because the victim sustained injuries that are properly classified as between bodily injury and serious bodily injury, the offense level is increased by four levels, pursuant to U.S.S.G. § 2A2.2(b)(3)(D).

    f. In accordance with the above, the total applicable Guidelines level is 24.

Offense 3:

8. The Offense Level for the conspiracy to commit wire fraud is as follows:

    a. The applicable Sentencing Guideline is U.S.S.G. § 2B1.1.

    b. Pursuant to U.S.S.G. § 2B1.1(a), because the offense has a statutory maximum term of imprisonment of 20 years or more, the base offense level is 7.

    c. Because the offense involved a loss amount that was more than $150,000 but less than $250,000, the offense level is increased by ten levels, pursuant to U.S.S.G. § 2B1.1(b)(1)(F).

    d. Because the offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means, the offense level is increased by two levels, pursuant to U.S.S.G. § 2B1.1(b)(10)(C).

    e. Because the offense involved the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification, the offense level is level is increased by two levels, pursuant to U.S.S.G. § 2B1.1(b)(11)(C)(i).

    f. In accordance with the above, the total applicable Guidelines level is 21.

9. In calculating the combined offense level for the underlying offenses, pursuant to U.S.S.G. § 3D1.4, Offense 1 has the highest offense level, with an offense level of 34, and constitutes one Unit.

2020.11.02

A-113

10. The offense level of Offense 2 (*i.e.*, 24) is more than nine levels less serious than offense level 34, and therefore does not count as any additional unit. *See* U.S.S.G. § 3D1.4(c).

11. The offense level of Offense 3 (*i.e.*, 21) is more than nine levels less serious than offense level 34, and therefore does not count as any additional unit. *See* U.S.S.G. § 3D1.4(c).

12. In accordance with the above, the total number of Units is 1. Pursuant to U.S.S.G. § 3D1.4, because the resulting number of Units is 1, there is no increase to the offense level otherwise applicable, which is 34.

13. Because the defendant was an organizer or leader of a criminal activity that involved five or more participants, four levels are added to the offense level pursuant to U.S.S.G. § 3B1.1(a).

14. Accordingly, based on the above calculations, the offense level for Count One is 38.

Count Sixteen: Narcotics Conspiracy

15. Pursuant to U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(4), because the offense involved a quantity of crack cocaine of at least 840 grams but less than 2.8 kilograms, the base offense level is 32.

16. Because a dangerous weapon was possessed, the offense level is increased by two levels, pursuant to U.S.S.G. § 2D1.1(b)(1).

17. Accordingly, based on the above calculations, the offense level for Count Sixteen is 34.

Multiple Counts Analysis

18. Pursuant to U.S.S.G. § 3D1.2(b), Count One and Count Sixteen (the "Group") are grouped together because they involve two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

19. Pursuant to U.S.S.G. § 3D1.3(a), the offense level applicable to the Group is 38, which is the highest offense level of the counts in the Group.

20. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through her allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, the Government will move at sentencing for an additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of her intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

21. In accordance with the above, the applicable Guidelines offense level for Counts One and Sixteen is 35.

2020.11.02

A-114

Page 6

Count Nineteen: Aggravated Identity Theft

22. The Guidelines Section applicable to the offense charged in Count Nineteen is U.S.S.G. § 2B1.6, pursuant to which the Guidelines sentence for Count Nineteen is the two-year (24 month) mandatory minimum term of imprisonment required by 18 U.S.C. § 1028A, to be served consecutively to any term of imprisonment imposed for Counts One and Sixteen.

**B. Criminal History Category**

Based upon the information now available to this Office (including representations by the defense), the defendant has six criminal history points, calculated as follows:

1. On or about January 16, 2020, the defendant was convicted in Peekskill City Court of Criminal Contempt in the Second Degree, in violation of New York Penal Law § 215.50, and was sentenced to a conditional discharge. Pursuant to U.S.S.G. § 4A1.2(c)(1), no criminal history points are added.

2. On or about November 3, 2016, the defendant was convicted in Peekskill City Court of Petit Larceny, in violation of New York Penal Law § 155.25, and was sentenced to 90 days' imprisonment. Pursuant to U.S.S.G. § 4A1.1(b), two criminal history points are added.

3. On or about September 29, 2016, the defendant was convicted in Westchester County Court of Reckless Endangerment in the First Degree, in violation of New York Penal Law § 120.25, and was sentenced to one year imprisonment. Pursuant to U.S.S.G. § 4A1.1(b), two criminal history points are added.

4. Because the defendant committed the instant offense while under a criminal justice sentence, including conditional discharge, an additional two criminal history points are added pursuant to U.S.S.G. § 4A1.1(d).

In accordance with the above, the defendant is in Criminal History Category III.

**C. Sentencing Range**

Based upon the calculations set forth above, the defendant's Guidelines range is 234 to 286 months' imprisonment, with a mandatory minimum term of imprisonment of 144 months, 24 months of which must be served consecutively to any other sentence imposed (the "Stipulated Guidelines Range"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 35, the applicable fine range is $40,000 to $10,000,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.

2020.11.02

A-115

The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

Except as provided in any written Proffer Agreement that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through her allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that her entry of a guilty plea to the charged offense authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw her plea of guilty should the sentence imposed by the Court be different from the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 234 to 286 months' imprisonment, and (ii) that the Government will not appeal any sentence within or

2020.11.02

A-116

above the Stipulated Guidelines Range.  This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein.  Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation.  The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case.  The defendant further agrees not to appeal or bring a collateral challenge of any term of supervised release that is less than or equal to the statutory maximum.  The defendant also agrees not to appeal or bring a collateral challenge of any fine that is less than or equal to $10,000,000, and the Government agrees not to appeal any fine that is greater than or equal to $40,000.  The defendant also agrees not to appeal or bring a collateral challenge of any forfeiture amount equal to or less than $71,000, and the Government agrees not to appeal any forfeiture amount equal to or greater than $71,000.  The defendant also agrees not to appeal or bring a collateral challenge of any restitution amount equal to or less than $50,000, and the Government agrees not to appeal any restitution amount equal to or greater than $50,000.  The defendant further agrees not to appeal or bring a collateral challenge of any special assessment that is less than or equal to $300, and the Government agrees not to appeal or bring a collateral challenge of any special assessment that is greater than or equal to $300.  Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise.  Rather, it is expressly agreed that the defendant reserves those rights.

The defendant hereby acknowledges that she has accepted this Agreement and decided to plead guilty because she is in fact guilty.  By entering this plea of guilty, the defendant waives any and all right to withdraw her plea or to attack her conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognizes that, if she is not a citizen of the United States, her guilty plea and conviction make it very likely that her removal from the United States is presumptively mandatory and that, at a minimum, she is at risk of being removed or suffering other adverse immigration consequences. If the defendant is a naturalized citizen of the United States, she recognizes that pleading guilty may have consequences with respect to the defendant's immigration status. Under federal law, an individual may be subject to denaturalization and removal if her naturalization was procured by concealment of a material fact or by willful misrepresentation, or otherwise illegally procured. The defendant acknowledges that she has discussed the possible immigration consequences (including removal or denaturalization) of her guilty plea and conviction with defense counsel.  The defendant affirms that she wants to plead guilty regardless of any immigration or denaturalization consequences that may result from the guilty plea and conviction, even if those consequences include denaturalization and/or removal from the United States.  The defendant understands that denaturalization and other immigration

2020.11.02

consequences are typically the subject of a separate proceeding, and the defendant understands that no one, including her attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration or naturalization status. It is agreed that the defendant will have no right to withdraw her guilty plea based on any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the guilty plea and conviction. It is further agreed that the defendant will not challenge her conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from her guilty plea and conviction.

It is further agreed that should the convictions following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

2020.11.02

Apart from any written Proffer Agreement that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Respectfully Submitted,

DAMIAN WILLIAMS
United States Attorney

Shiva H. Logarajah
David R. Felton
Courtney Heavey
Assistant United States Attorneys
(914) 993-1918 / (212) 637-2299 / 2484

APPROVED:

Jason M. Swergold
Deputy Chief, White Plains Division

AGREED AND CONSENTED TO:

Naya Austin

3/15/2022
DATE

APPROVED:

Stephen G. McCarthy, Esq.
Attorney for Naya Austin

3/15/2022
DATE

2020.11.02

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
UNITED STATES OF AMERICA,

                                   20 CR 626-5 (PMH)

    -vs-

                                    SENTENCING

NAYA AUSTIN,

                       Defendant.
------------------------------------x

                         United States Courthouse
                         White Plains, New York

                         Monday, December 12, 2022
                         3:30 p.m.

Before:  THE HONORABLE PHILIP M. HALPERN,
                         District Judge

A P P E A R A N C E S:

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
SHIVA H. LOGARAJAH,
     Assistant United States Attorney

STEPHEN G. McCARTHY, JR.,
     Attorney for Defendant

                 TABITHA R. DENTE, RPR, RMR, CRR
                  - OFFICIAL COURT REPORTER -

Sent.                    USA v. Austin                    2

THE DEPUTY CLERK:  All rise.  United States of America v. Naya Austin.

Would the Government please note your appearance.

MR. LOGARAJAH:  Good afternoon, your Honor.  Shiva Logarajah for the Government.

THE COURT:  Good afternoon.

THE DEPUTY CLERK:  Defense counsel, please note your appearance.

MR. McCARTHY:  Thank you, sir.

Your Honor, good afternoon.  For Ms. Austin, Stephen McCarthy.

THE COURT:  Good afternoon.  Good afternoon, Ms. Austin.  Everybody please be seated.  Tabitha, good afternoon.

All right, this matter's on for sentencing today, the Defendant having pleaded guilty to Count One, Sixteen, and Nineteen of the S6 Superseding Indictment.  Count One, racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); Count Sixteen, conspiracy to possess and distribute narcotics, in violation of 21 U.S.C. § 841(b)(1)(A) and 846; Count Nineteen, aggravated identity theft, in violation of 18 U.S.C. § 1028A.

I've reviewed the following materials in preparation for sentencing:

The pre-sentence investigation report revised July 28, 2022, prepared by Probation Officer Jamarden Thomas; the plea

Sent.                    USA v. Austin                    3

agreement dated March 24, 2022; defense counsel's sentencing memorandum dated October 19, 2022, with materials attached, with a supplemental submission including a letter from Ms. Austin and fourteen character letters from family, friends, and colleagues; the Government's sentencing memorandum dated October 27, 2022.

Has anything else been submitted that I failed to mention?

MR. LOGARAJAH:  Not from the Government, your Honor.

THE COURT:  Mr. McCarthy, have you read the revised pre-sentence report and discussed it with Ms. Austin?

MR. McCARTHY:  Yes, sir, I have.  I've been to the facility at Valhalla and discussed it with her in person a number of times.

THE COURT:  Ms. Austin, have you read the revised pre-sentence report and discussed it with Mr. McCarthy?

THE DEFENDANT:  Yes, your Honor, I have.

THE COURT:  Mr. Logarajah, have you read the revised pre-sentence report?

MR. LOGARAJAH:  I have, your Honor.

THE COURT:  All right.  The offense-level computation, the sentencing range adduced by the pre-sentence report is as follows.  First, the offense level.

Count One, as I indicated, is conspiracy to commit racketeering; Count Sixteen, conspiracy to distribute and possess with intent to distribute narcotics; and Count Nineteen

TABITHA R. DENTE, RPR, RMR, CRR
- OFFICIAL COURT REPORTER -

Sent.                          USA v. Austin                          4

aggravated identity theft.

The November 1, 2021, guidelines manual incorporating all guidelines amendment used is 1B1.11.  Count One is a racketeering conspiracy comprised of three underlying racketeering acts; narcotics conspiracy, conspiracy to commit wire fraud, and assault native racketeering.  Pursuant to 2E1.1 and the comment note 1, because there's more than one underlying offense, each underlying offense must be treated as if it was contained in a separate count of conviction for purposes of 2E1.1(a)(2) to determine the offense level for each act.

Pursuant to 3D1.1(a), because there are multiple underlying offenses, a multiple-count analysis must be performed for each of these offenses and grouped into groups of closely-related counts.  Where certain racketeering acts relate to counts of conviction that represent the same crimes, these offenses have been grouped under 3D1.2(a).  Racketeering act one, drug conspiracy, has been grouped with Count Sixteen for guideline-calculation purposes because the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of the substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.  That's 3D1.2(d).  So pursuant to 2B1.6(a), since the Defendant was convicted of violating 1028A in Count Nineteen, the guideline sentence is the minimum term of

Sent.                    USA v. Austin                    5

imprisonment required by statutes.  Chapter 3 and 4 shall not apply to Count Nineteen and therefore, according to 18 U.S.C. 1028A, the mandatory consecutive term of imprisonment is two years.

So the first group under racketeering, the guideline for violating 18 U.S.C. § 1962 is 2E1.1, and that requires the greater of 19 or the offense level applicable to the underlying racketeering activity.  Pursuant to 2E1.1(a)(2), the offense level applicable to the underlying racketeering act, drug conspiracy, is found in 2D1.1.  As the narcotics conspiracy involved at least 840 grams, but less than 2.8 kilograms of crack cocaine, pursuant to 2D1.1(c)(4), the base offense level is 32, and that's under 2D1.1(a)(5) as well.

Pursuant to 2D1.1(b)(1), because the Defendant possessed a dangerous weapon, a firearm, in connection with the commission of the offense, two levels are added.  The Defendant had a significant leadership role as the godmother in the Gorilla Stone's money gang cave.  She was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.  Therefore, four levels are added. The adjusted offense level for group one, then, is 38.

The same analysis applies with respect to group 2, the June 12 assault; it's 19 or the applicable level of the underlying activity, racketeering activity.  Pursuant to 2E1.1(a)(2), the offense level applicable to the underlying

racketeering act, assault native racketeering, is found in 2A2.2(a). Pursuant to 2.2A, the base offense level is 14. Because the offense involved more than minimal planning, the offense level is increased by two pursuant to 2A2.2(b)(1). Because a dangerous weapon, a firearm, was used during the assault by a co-conspirator, the offense level is increased by four, and because the victim sustained injuries classified as between bodily and serious bodily injury, the offense level is also increased by four pursuant to 2A2.2(b)(3)(D). Therefore, the adjusted offense level for group two is 24.

Finally, with respect to the third group, conspiracy to commit wire fraud, same analysis, the underlying activity involved wire fraud, so 2B1.1 is referenced when determining this offense level. Pursuant to 2B1.1(a), because the offense level has a statutory maximum term of imprisonment of 20 years or more, the base offense level is 7. Because the offense involved a loss amount that was more than $150,000, but less than $250,000, the offense level is increased by 10. Pursuant to 2B1.1(b)(1)(F), because the offense level involved sophisticated means and the Defendant intentionally engaged in or caused the conduct constituting sophisticated means, the offense level is increased by two pursuant to 2B1.1(b)(10)(C). The adjusted offense level for group three is 19.

Units are assigned pursuant to 3D1.4(a), (b), and (c), one unit is assigned to the group with the highest offense and

Sent.                    USA v. Austin                    7

one unit is assigned for each group that is equally serious from one of four levels, less serious, one half from five to eight, and any groups that are nine or more or less serious are disregarded.  In that regard, group one is given one unit, group two and three, no units, and therefore under 3D1.4, the adjusted offense level is 38.  Acceptance of responsibility under 3E1.1(a) and (b) reduces the level from 38 to 35, so the total offense level, then, is 38.

Criminal history stems from three separate arrests and convictions.

The first is an attempted criminal sale of a controlled substance in the third degree.  The Defendant was sentenced on October 21, 2013, and then re-sentenced, bench warrant, re-sentenced again to one year in jail, so under 4A1.1(b) and 4A1.2(e)(2), because imprisonment was greater than 60 days within ten years of the commencement of this offense, two points are added to the criminal history.

The next is reckless endangerment in the first degree, and on September 29, 2016, the Defendant was sentenced to one year imprisonment and an order of protection was issued.  Again, under 4A1.1(b) and 4A1.2(e)(2), two points are added to the criminal history.

And finally, the third conviction, petit larceny, on November 3, 2016, the Defendant was sentenced to 90 days imprisonment, and under 4A1.1(b) and 4A1.2(e)(2), another two

TABITHA R. DENTE, RPR, RMR, CRR
- OFFICIAL COURT REPORTER -

Sent.                    USA v. Austin                    8

points were added.

The criminal convictions result in a total criminal history score of 6.  According to chapter 5, part A, criminal history 6 establishes a criminal history category of 3. Therefore, under the PSR, the sentencing range is 210 to 262 months of imprisonment with a mandatory minimum term of 12 years of imprisonment, 10 on Count Sixteen, and two on Count Nineteen, the two on Count Nineteen to run consecutively to any other term of imprisonment imposed.  Supervised release and probation range from one to five years and a fine range from $40,000 to $10 million.

Does the Government object to any of the factual statements contained in the PSR?

MR. LOGARAJAH:  No, your Honor.

THE COURT:  Does the Defendant object to any of the factual statements contained in the PSR?

MR. McCARTHY:  No, sir.

THE COURT:  There being no dispute as to facts, the Court adopts the factual statements in the PSR as the Court's own findings of fact for purposes of this sentencing.

Does the Government object to the guidelines calculation or to anything else in the PSR?

MR. LOGARAJAH:  We do not, your Honor.

THE COURT:  Does the Defendant object to the guidelines calculation or anything else in the PSR?

Sent.                      USA v. Austin                      9

MR. McCARTHY:  No, your Honor.

THE COURT:  Based on the parties' agreement as set forth in their plea agreement, as well as my review of the pre-sentence report and my own evaluation of the sentencing guidelines, I adopt the guidelines calculation in the PSR and conclude that the final offense level is 35 at criminal history category 3, which yields a sentencing range of 210 to 262 months of imprisonment, with a mandatory minimum term of 10 years on Count Sixteen, to be followed by a mandatory minimum term of two years on Count Nineteen to run consecutive to all other counts. No motion for any guidelines-based departure from the applicable range has been made nor am I aware of any basis for departure.

Does the Government wish to be heard prior to me imposing sentence?

MR. LOGARAJAH:  Yes, your Honor, and I will be brief. I know your Honor has carefully reviewed the parties' submissions, as well as the PSR, and at this point is very familiar with this case in general.

Your Honor, I have to respectfully disagree with the PSR's recommendation of just a sentence of the mandatory minimum in this case, which is 12 years, and I think there are two key reasons why the Government objects to that.  The first is the seriousness of this offense.

Your Honor has heard us time and time again get up here and talk about drugs, guns, violence, fraud, everything

TABITHA R. DENTE, RPR, RMR, CRR
- OFFICIAL COURT REPORTER -

Sent.                          USA v. Austin                          10

that Gorilla Stone was involved in and every reason why the Government brought this case.  Ms. Austin had her hands in every one of those buckets.  Let's start with guns, your Honor.

This Defendant used guns.  There's a violent gunpoint robbery which the Defendant admitted to as part of her plea agreement, she used a gun during a violent road rage incident that's part of the PSR here, she bought guns on behalf of the Gorilla Stone gang, she sold guns where people looked to her for a supply of guns as this part of the gang, and she was also caught with guns.  On the day of her arrest, there were two guns and approximately 220 grams of crack cocaine in her house.  That is incredibly serious conduct, incredibly serious, again, in light of the epidemic and the wave of gun violence, both at the time of the arrest in this case and continuing in our community today.

I referenced some of the violence, your Honor, that this Defendant was involved in.  She simply didn't possess -- this wasn't a -- sort of a simple possession of guns or violent instruments case.  She actually used the guns that she possessed.  And out of everybody in this case, your Honor, she was the defendant that was caught with the most amount of drugs.  As we laid out in our sentencing submission, approximately 411 grams of crack cocaine is directly attributed to Ms. Austin.

And finally, your Honor, this Defendant was an energetic participant, I would say, in this gang's fraud

TABITHA R. DENTE, RPR, RMR, CRR
- OFFICIAL COURT REPORTER -

Sent.                              USA v. Austin                              11

activities.

We've set forth in our sentencing submission some of the text messages underlying the Pandemic Unemployment Assistance fraud that this Defendant undertook, and I must say it was at the height of the COVID pandemic when people were actually really in need. And this Defendant was callous as she...took advantage of some of the addicts that she was selling to, took advantage of those addicts again in getting their PII to use as part of the Pandemic Unemployment Assistance Program and defrauding that program, so, your Honor, this Defendant had her hands across the spectrum of illegal activities that Gorilla Stone was involved in.

But I think, your Honor, that the -- if I had to pick one of the two reasons that I'm about to outline for you in terms of why this Defendant deserves a guideline sentence, it's her leadership role, and I think that goes directly to the deterrent value and deterrent effect of the sentence here today.

Not only was this Defendant the godmother of the Gorilla Stone Reign sect of the Gorilla Stone gang, she was one of the foremost figures in Westchester County for Gorilla Stone, so, again, she was somebody that people north of the Bronx looked to in the Gorilla Stone gang as a leader of Gorilla Stone in general, not only of the Gorilla Reign sect, but the Gorilla Stone generally. And I think she was very well known in the Peekskill community, the Peekskill community being a very small

TABITHA R. DENTE, RPR, RMR, CRR
- OFFICIAL COURT REPORTER -

Sent.                    USA v. Austin                    12

community as somebody who was knee deep in these elicit

activities.

And I think this sentence will send a strong message

and I think a guidelines sentence here is necessary to send that

message, that there's no pot of gold at the end of the rainbow,

if you rise through the ranks of one of these violent criminal

gangs, there's only a lengthy prison sentence waiting for you,

and I think that's a strong message that needs to be sent here

for somebody who's a leader and who was knee deep in all of the

gang's elicit activities.  And for those reasons, and unless the

Court has any further questions, the Government submits that a

guidelines sentence here is more than warranted.

THE COURT:  Thank you, Mr. Logarajah.

Mr. McCarthy, do you wish to be heard before I impose

sentence?

MR. McCARTHY:  Yes, sir, just briefly.

There's nothing I can tell your Honor that's going to

add to your understanding of this case.  You're the most well

informed person in the room.  You've handled the whole case.

THE COURT:  I'm the one that's sentenced the most

individuals in this gang.

MR. McCARTHY:  I'll, I'll leave it at that.

You had the Department of Probation prepare a

pre-sentence report.  You've looked at probably thousands of

these.  I've looked at a hundred, couple of hundred.  It's got

Sent.                    USA v. Austin                    13

49 pages, probably took a hundred hours to generate.  I'm aware of the guideline range, I think the calculation is excellent, yet the Court has seen and I have seen also, Ms. Austin has seen it, the recommendation of the Department of Probation in the pre-sentence report.  They're respectfully asking the Court, and I know, of course, you've read it, you've probably read it a number of times, on page 43, "we believe the calculated guidelines range might be greater than necessary to satisfy the sentencing objectives and promoting respect for the law, deterrence, and just punishment.  We believe a custodial sentence is warranted, a variance is also appropriate, and we recommend a sentence of 144 months imprisonment," twelve years in prison.

You have before you an absolutely unequivocally ruined life.  Absolutely ruined.  She started on this trajectory when she was 13.  The -- I was present for the pre-sentence interview at Valhalla.  It went on for three hours.  Ms. Austin's father left home, her parents became divorced when she was a young teenager, she was witness to physical abuse in that relationship, there was no financial assistance, her mother engaged in a new relationship, with physical abuse as well.

THE COURT:  Which was abusive.

MR. McCARTHY:  Absolutely.

THE COURT:  Yeah, I've read it several times, I've read the letters several times, I've read everything related to

TABITHA R. DENTE, RPR, RMR, CRR
- OFFICIAL COURT REPORTER -

Sent.                          USA v. Austin                          14

Ms. Austin numerous times, and so, you know, I understand that the twelve-year minimum sentence is what Probation has recommended.

MR. McCARTHY: I appreciate that, and I'm not going to waste your time. What I'll tell you is this, Judge.

At my age, I am a parent of a 12-year-old. When that little boy comes home either stoned or drunk or with the police on his tail, I'm gonna grind his face into a brick wall until my wife pulls him off of me and they call the police.

Judge, you see all these people here today...

THE COURT: I do.

MR. McCARTHY: There's two dozen people here.

THE COURT: Tell me who's here by the way, Mr. McCarthy. Generally. I mean, there's...

MR. McCARTHY: We have the father, we have the mother, we have a sister, we have an aunt, we have a cousin. We -- I've met most of these people in person, but my point to you is this, your Honor, a secondary point. They're going to be here for her when she gets out. On the far end of this after decades in prison, they're going to be here for her. But my question to them is, where were you when she was 13, 14, 15, 16, 18.

She got arrested when she was 18 years old. The Court knows and I know as a parent and every parent in the room knows, an 18-year-old is not a fully-formed adult. That brain is still developing, that brain is still growing, and add the mix of

TABITHA R. DENTE, RPR, RMR, CRR
- OFFICIAL COURT REPORTER -

Sent.                          USA v. Austin                          15

alcohol to intoxication and marijuana to intoxication and you do not have a fully-formed decision-maker. When that little girl came home charged with a felony, why didn't somebody say, "this isn't gonna happen any more, I'm gonna stop this." The only thing I'll add is this, your Honor.

There's an aunt here, aunt from Florida. Aunt Florence? She didn't make it? There's an aunt from Florida. She has a son. She moved to Florida with her son, a little older than Ms. Austin. Miss Austin was down in Florida for a period of time. Too strict, didn't like it, came back to Peekskill. The strict aunt in Florida, her kid, a little older than Ms. Austin, is the general manager of a Toyota dealership in Tampa. That child, with strict, firm parenting, is a general manager with a spectacular job, he's not even thirty. Somebody should have taken this child when she was 13, 14, 15, 16, 18, and said what are we doing. They didn't. We're here and it's left to you and to the courts.

I will say this, your Honor. I just noticed this when I was going over the pre-sentence report. If you look at the picture of Ms. Austin when she was arrested, she's unrecognizable from now. I'm not the smartest attorney in the room, but I have been to see her at the jail thirty times. Her progress in the two years since she's been arrested has been significant, so I would respectfully ask the Court if you would consider weighing in and, and give some -- and I'm sure you've

Sent.                          USA v. Austin                          16

given it a lot of concern, a lot of attention -- if you would

consider sentencing her in line with what's recommended by the

Department of Probation.

           Thank you, sir.

           THE COURT:  Thank you, Mr. McCarthy.

           Ms. Austin, is there anything you'd like to say to me

or any information you'd like to present before I impose

sentence?

           THE DEFENDANT:  Yes, your Honor.

           THE COURT:  All right, pull that microphone a little

closer.  And I see you're looking at something.  Is that

something...

           THE DEFENDANT:  Yeah.

           THE COURT:  It's your words.

           THE DEFENDANT:  Yes.

           THE COURT:  Not your lawyer's words.

           THE DEFENDANT:  Yes.

           THE COURT:  Okay.

           All right, you may proceed.

           THE DEFENDANT:  I apologize to my community, to my

family, and anyone that I've hurt by my actions.  I spent my

entire life looking for love and family...that have been right

in front of me the whole time.  I spent years willing to die for

strangers, not realizing I have people in the courtroom for

support.

Sent.                    USA v. Austin                    17

I will continue to embrace my incarceration, using each day to grow mentally and emotionally.  I truly believe this incarceration saved my life.  If I had the choice to go home today, I would ironically choose not to because as much as I've grown, I have a lot more growing to do.

Your Honor, I ask that you acknowledge my potential and understand that I'm not the same person I was two years ago. I ask that you send me to a prison with the most programs and college courses so upon my release, I can restore my life and commitment to my family.

Thank you.

THE COURT:  Thank you, Ms. Austin.

Let me first say that in deciding the appropriate sentence in this case, I've considered all the statutory factors set forth in § 3553(a) whether I hereafter specifically identify each factor or not.

The 3553(a) factors are used to decide whether a variance from the guidelines range is appropriate.  Having done so, I believe that a sentence of 210 months of imprisonment on Count One and Sixteen of the indictment to run concurrently and 24 months of imprisonment on Count Nineteen of the indictment to run consecutively to the sentence imposed on Counts One and Sixteen, followed by five years of supervised release on Count Sixteen, three years of supervised release on Count One, and one year of supervised release on Count Nineteen, such terms of

A-136

Sent. USA v. Austin 18

supervised release to run concurrently, and restitution in the amount of $50,000 and forfeiture in the amount of $71,000 is sufficient, but not greater than is necessary to comply with the purposes of sentencing set forth in the statute.

My reasoning is as follows. First and foremost, the nature and circumstances of these offenses.

Ms. Austin is a self-admitted high-level leader of the Gorilla Stone gang. She had a leadership role as the godmother of the Gorilla Stone's Reign cave, indeed, the highest-ranking female member in that cave. She was the face of Gorilla Stone north of the Bronx and cemented illegal activities, elicit illegal activities, in Peekskill. She was deeply enmeshed in the gang's violence, narcotics activity, illegal firearms possession and use. She took her role as a leader seriously and helped promote and spread the gang's message.

As a member of the Gorilla Stone, not only was Ms. Austin dealing in narcotics, she was dealing on behalf of the gang to help enrich the enterprise. She was supplied by Co-Defendants Walker and Erskine, two senior leaders of Gorilla Stone Reign, and she used others below her in the Peekskill area to deal directly with the confidential informant. She was a hub for the flow of narcotics for the gang's narcotics conspiracy, operating an extensive crack cocaine distribution network throughout Westchester County and New York City. She was personally involved in a June 22, 2020, gun-point drug robbery

Sent.                    USA v. Austin                    19

of a rival Crips gang trafficking member at a motel, and what's more, she ensured that she and other members of the gang were armed with firearms, two were recovered from her residence upon arrest, and routinely enforced the gang's rules, including taking threats to the enterprise seriously.

Also, Ms. Austin was intimately involved in the COVID-19 fraud scheme, defrauding the Pandemic Unemployment Assistance Program out of tens of thousands of dollars meant to assist those who were truly in need. She got personal identifying information from addicts and supplied that information to Co-Defendant Outlaw. Ms. Austin would then take the debit cards sent to the addresses of those addicts and others at Outlaw's direction.

She ensured that the individuals who reported to her followed the gang's rules and retaliated against rival gang members. In addition to the June 2020 gunpoint robbery and beating, she was intercepted discussing an incident in which she admitted to shooting at someone at a party over a misunderstanding over parking. When Co-Defendant Hugh was arrested, Ms. Austin texted photos of the state's search warrant executed at Hugh's home to help assesses whether there was any spillover for the gang and called Christopher Erskine, the godfather of the Gorilla Stone Reign cave, to decide whether the gang's kitty would be used to bail Hugh. She bragged about her level of authority in the gang and instructed other members on

Sent.                          USA v. Austin                          20

proper preparation for large outings so the gang could discuss its business. Simply put, Ms. Austin was deeply enmeshed in violence, both getting her hands dirty and managing from her role as godmother the gang's response to violent incidents. This all demonstrates to me premeditation, intent, and criminal planning.

She was involved in direct acts of violence with at least one victim and, of course, there are countless victims who were defrauded out of their unemployment benefits, the government program intended to provide relief for people experiencing unexpected difficulties during the COVID outbreak, not to fund the gang's illegal activities, so I consider the nature and circumstance of this offense to be incredibly serious.

Now, as Mr. McCarthy rightly points out, there are some circumstances here that are worth considering.

Age 18 is one thing. Age 28 is something else. Somewhere in between 18 and 28, you're old enough to know what you're doing, you're old enough to know right from wrong, and the one thing that is crystal clear to me is a lack of youthful guidance. The difficult childhood that Ms. Austin suffered is -- it's remarkable that she's even here today. Her father left when she was a child after she watched repeated acts of domestic violence, no financial support. Ms. Austin's mother engaged in a long-term relationship with a physically abusive

TABITHA R. DENTE, RPR, RMR, CRR
- OFFICIAL COURT REPORTER -

Sent.                    USA v. Austin                    21

boyfriend.  Ms. Austin ran away and then was placed by authorities in multiple non-secured detention facilities between the ages of 14 and 17 before choosing to move in with her dad in Atlanta.

When she was 15, she was sexually assaulted by an older male neighbor.  She was assaulted on two occasions, never told anybody about it.  These adverse childhood experiences impacted on her development into adulthood.  Besides the physical assault when she was 15, when she was 16, she attempted suicide.  She's had childhood trauma, a history of symptoms including depression and anxiety disorders.  Then she was shot in 2015.  She was diagnosed with PTSD, taking Remeron and Zoloft daily.

The alcohol and drug abuse, smoking marijuana when she was 15, fifteen marijuana cigarettes per day, until her arrest for the instant offense, mixed with cocaine.  She abused Xanax, Percocet on weekends, even experimented with Molly.  She began consuming alcoholic beverages when she was 16, probably to self-medicate, and she herself acknowledges she has a problem in regard to alcohol and drugs and is amenable to treatment, which I credit her for.

I take into account the lack of youthful guidance, the childhood trauma, mental and emotional conditions, and drug and alcohol dependency in fashioning my sentence today.  They are, indeed, mitigating circumstance.

Sent.                    USA v. Austin                    22

Ms. Austin graduated with her high school diploma, earning a regent's diploma, also completed a phlebotomy course and was employed as a phlebotomist at the New York Blood Center and Sequential Health.  The problem, of course, is that between periods of employment, she financially supported herself with unlawful proceeds from gang activity.

One thing I'm also clear about is today, Ms. Austin has strong family and community support.  Her mother said she's her greatest treasure.  Her mother, her father, her brother, grandmother, aunt, cousin, godmother, friends, co-workers, employers, they all see this person who clearly has tremendous potential.  Fourteen character letters written on her behalf. I've read each one several times.  There's enormous support here.  And I understand Ms. Sanchez with whom Ms. Austin had a romantic relationship or has a romantic relationship has provided unwavering emotional support throughout this.  Your family and community ties also are something that I'm taking into account.

I also have to take into account your criminal history.  That you joined this incredibly violent gang and then rose in the ranks of that gang, becoming intimately involved in the full range of criminal activities is...unbelievable in some sense, but this is not your first interaction.  Your previous convictions, attempted criminal sale of a controlled substance, petit larceny, criminal contempt, reckless endangerment, you got

Sent.                    USA v. Austin                    23

sentences, you got a year in jail, you got conditional discharges.  That didn't seem to work.  While in custody, I understand there's between January of 2021 and November of 2021 eight times you were sanctioned in jail, disorderly conduct, threatening to physically harm staff, beating up another inmate, refusing and disobeying orders.  All of that aggravates the situation you find yourself in.

I also have to take into account the reality that COVID-19 has impacted on prison conditions.  Prison is not going to a hotel, prison is harsh conditions, but lockdowns 23 hours a day, no programming, no physical contact, no ability to socialize within the facility, all of those things have to be taken into account.

I've considered the need for this sentence imposed to reflect the seriousness of this offense, to promote respect for the law, and to provide just punishment.  Your conduct here is extremely serious.  It involves direct and active repeated participation in a violent gang that has terrorized local communities, and you are its highest-ranking female member.  The seriousness of the instant offenses, assault, distribution of tremendous amounts of narcotics, defrauding COVID-19 unemployment benefits programs, guns, violence, can't be overstated.  The sentence I'm imposing needs to reflect the seriousness of these crime.

It also needs to promote respect for the law.  Gorilla

Sent.                    USA v. Austin                    24

Stone gang has developed and operated according to its own code of conduct without regard to the law we all abide by. The core principles of the Gorilla Stone Nation are in direct contravention of numerous laws and its members all considered themselves above the law. As an important leader of the Gorilla Stone gang, Ms. Austin herself demonstrated a complete disregard for the law, day after day, for years.

I also want to deter. I want to deter you and I want to deter anyone who comes behind you from becoming active and contributing members of these violent gangs. If you appear in my courtroom, you'll get a serious sentence of imprisonment. You also need to recognize that when you're in jail in a scenario like this, showing disregard for the rules there also encourages me to recognize that you need to continue to be deterred. Also, given the conduct, we need to protect the public from further conduct by this individual.

Now, I've considered the kinds of sentences available. Congress says, Congress says, that a term of life imprisonment here is the maximum term. Life imprisonment on two of the counts. Count Nineteen, Congress has said no matter what else you've done, that is two years. I've looked at supervised release. Of course, you're not eligible for probation. Fines, restitution, forfeiture, denial of benefits.

I've considered the kinds of sentences and the sentencing range established for the applicable category of

TABITHA R. DENTE, RPR, RMR, CRR
- OFFICIAL COURT REPORTER -

Sent.                    USA v. Austin                    25

offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission. I've considered any pertinent policy statement issued by the Sentencing Commission and determined there's no such policy statement.  I've also considered the need to avoid unwarranted sentencing disparities amongst defendants with similar records who have been found guilty of similar misconduct.  I've considered the need to provide restitution and the Court is ordering restitution.

The bottom line is that given the nature and circumstance of the offense and the history and characteristics of this individual, the sentence I intend to impose is sufficient, but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence from criminal conduct, to protect the public from further crimes of this individual, to provide the individual with much-needed educational and vocational training and other correctional treatment in the most effective manner, and to avoid unwarranted sentence disparities among similarly-situated defendants.

Counsel, do either of you know of any reason why the sentence I've announced should not be imposed as stated?

Mr. Logarajah.

MR. LOGARAJAH:  No, your Honor.

Sent.                           USA v. Austin                          26

THE COURT:  Mr. McCarthy.

MR. McCARTHY:  No, your Honor.

THE COURT:  Please stand, Ms. Austin.

It is the judgment of this Court that you be committed to the custody of the United States Bureau of Prisons for a term of 210 months on Count One and Sixteen of the indictment, each to run concurrently with the other, and 24 months on Count Nineteen of the indictment to run consecutively to the sentences imposed on Count One and Sixteen, followed by five years of supervised release on Count Sixteen, three years on Count One, and one year on Count Nineteen, such terms of supervised release to run concurrently.

The standard conditions of supervised release 1 through 12 shall apply and the following mandatory conditions shall apply:

You must not commit another federal, state, or local crime.  You must not unlawfully possess a controlled substance.  You must refrain from any unlawful use of a controlled substance.  You must submit to one drug test within fifteen days of release from imprisonment and at least two periodic drug tests thereafter as determined by the Court.  You must cooperate in the collection of DNA as directed by the probation officer. You must make restitution in accordance with 18 U.S.C. §§ 2248, 2259, 2264, 2327, 3663, 3663A, and 3664.  You must comply with the standard conditions that have been adopted by this Court as

TABITHA R. DENTE, RPR, RMR, CRR
- OFFICIAL COURT REPORTER -

Sent.                    USA v. Austin                    27

well as the special conditions I'm about to announce.

Number one, you must participate in an outpatient mental health treatment program approved by the United States Probation Office.  You must continue to take any prescribed medications unless otherwise instructed by the health care provider.  You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments.  The Court authorizes the release of available psychological and psychiatric evaluations and reports, including the pre-sentence investigation report, to the health care provider.

You shall submit your person and any property, residence, vehicle, papers, computer, other electronic communication, data storage devices, cloud storage or media, and effects to a search by a United States probation officer and if needed, with the assistance of any law enforcement.  The search is to be conducted when there is a reasonable suspicion concerning violation of a condition of supervision or unlawful conduct by the person being supervised.  Failure to submit to such a search may be grounds for revocation of release.  You shall warn any other occupants that the premises may be subject to search as pursuant to this condition.  Any search shall be conducted at a reasonable time and in a reasonable manner.

You will participate in an outpatient treatment program approved by the United States Probation Office which

A-146

Sent.                          USA v. Austin                          28

program may include testing to determine whether you have

reverted to using drugs or alcohol.  You must contribute to the

cost of services rendered based on your ability to pay and the

availability of third-party payments.  The Court authorizes the

release of available drug treatment evaluations and reports,

including the pre-sentence investigation report, to the

substance use disorder treatment provider.

You must not associate or interact in any way,

including through social media websites, with any gang members

or associates, particularly members and associates of any gang

and in particular, the Untouchable Gorilla Stone Nation or

frequent neighbors or turf known to be controlled by the

Untouchable Gorilla Stone Nation or its subsets without the

permission of the probation office.

You must provide the probation officer with access to

requested financial information.  You must not incur new credit

charges or open additional lines of credit without the approval

of the probation officer unless you are in compliance with the

installment payment schedule.  During your period of

supervision, it is recommended that you be supervised by the

district of your residence.

I'm imposing these mandatory and special conditions to

your term of supervised release for several reasons.

First, it will allow Probation to monitor your

reintegration into society and hopefully give you the

Sent.                    USA v. Austin                    29

opportunity to receive guidance in a law-abiding life.  It will ensure your compliance with special conditions of drug treatment and participation in an outpatient mental health treatment program which are in place to help you with your drug abuse and your mental health needs as we've discussed.  The search condition is in place because of your history of possessing drugs and firearms and for the protection of the community. Likewise, you shall not associate in any way with any gang members or associates or frequent those neighborhoods without the permission of the probation office and that is in place to protect you, to help you, to make it possible for you to reintegrate into society for you and your family without gang involvement.

I'm imposing the mandatory special assessment of $100 per count for a total of $300, which is due immediately.  I'm not imposing a fine because I don't believe you have the ability to pay a fine and make restitution.  I am imposing restitution in the amount of $50,000.  I have the order; I'll look at it in a moment and I'll sign it.

The Defendant has admitted the forfeiture allegations with respect to Counts One through Sixteen of the indictment and agreed to forfeit property constituting or derived from the proceeds of the offenses, namely a sum of $71,000 in U.S. currency.  I have that as well; I will look at it and sign it in a moment.  And both the restitution order and consent

Sent.                    USA v. Austin                    30

preliminary order of forfeiture will become a part of the sentence.

The foregoing constitutes the sentence of this Court.

You may now be seated, Ms. Austin.

Ms. Austin, I see you signed the consent preliminary order of forfeiture. Did you discuss it with your attorney, Mr. McCarthy, before you signed it today?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did you understand it?

THE DEFENDANT: Yes.

THE COURT: Okay. I've signed the original of this.

Mr. Cangelosi, you can take this one.

And the proposed order of restitution, did you review this as well with your attorney Mr. McCarthy?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. And you understand you're making restitution in the amount of $50,000.

THE DEFENDANT: Yes.

THE COURT: All right, I've signed that.

I believe this needs to be sealed, Mr. Logarajah?

MR. LOGARAJAH: Your Honor, there's a sealed schedule of victims. I just believe the schedule needs to be sealed.

THE COURT: All right. We'll take care of that.

All right, now, I need to inform you, Ms. Austin, you have the right to appeal your sentence, subject to any

Sent.                    USA v. Austin                    31

limitations on that right contained in your plea agreement with the Government.  A notice of appeal must be filed within 14 days after the entry of judgment.  Therefore, if you do wish to appeal, you must advise your attorney to prepare and file a notice of appeal immediately, or if you request, the clerk will file a notice of appeal on your behalf.  If you're unable to pay the costs of an appeal, you may ask for permission to appeal without payment of costs.

Are there any open counts or indictments we need to deal with, Mr. Logarajah?

MR. LOGARAJAH:  Your Honor, the Government would move at this time to dismiss the underlying indictment with respect to Ms. Austin, that's 20 cr 626, as well as the third superseding indictment in this case, that's S3 20 cr 626, as to this Defendant, as well as the open counts against this Defendant on S6 20 cr 626.

THE COURT:  All right, that application is granted.

Mr. McCarthy, are there any recommendations that you'd like me to make to the Bureau of Prisons?

MR. McCARTHY:  Not at this time, your Honor.

THE COURT:  All right.

Is there anything else I can do for you, Mr. Logarajah, today?

MR. LOGARAJAH:  No, your Honor.  Thank you so much for your time.

Sent.                    USA v. Austin                    32

THE COURT:  Mr. McCarthy.

MR. McCARTHY:  No, sir.  Thank you.

THE COURT:  All right.

Take good care, Ms. Austin.  Take good care of yourself.

THE DEFENDANT:  Thank you.

THE DEPUTY CLERK:  All rise.  Court is in recess.

Certified to be a true and accurate transcript.

_____

TABITHA DENTE, RPR, RMR, CRR

OFFICIAL COURT REPORTER

TABITHA R. DENTE, RPR, RMR, CRR
- OFFICIAL COURT REPORTER -

A-151

⊃ 245B (Rev. 09/19)   Judgment in a Criminal Case       (form modified within District on Sept. 30, 2019)
                      Sheet 1

# UNITED STATES DISTRICT COURT

Southern District of New York

| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|---|
| v. | ) | |
| Naya Austin | ) | Case Number:  S6 20CR00626-005 (PMH) |
| | ) | USM Number:  19704-509 |
| | ) | Stephen G. McCarthy Jr. |
| | ) | Defendant's Attorney |

## 'HE DEFENDANT:

∫ pleaded guilty to count(s)   __1,16, and 19 of the S6 Superseding Indictment__

] pleaded nolo contendere to count(s)   _____
which was accepted by the court.

] was found guilty on count(s)   _____
after a plea of not guilty.

ηe defendant is adjudicated guilty of these offenses:

| itle & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| ℈ U.S.C. § 1962(d) | Conspiracy to Commit Racketeering | 11/8/2021 | 1 |
| ∫ U.S.C. § 846, | Conspiracy to Distribute and Possess with Intent to | 11/8/2021 | 16 |
| ∫ U.S.C. § 841(b)(1)(A) | Distribute Narcotics | | |

The defendant is sentenced as provided in pages 2 through ___9___ of this judgment. The sentence is imposed pursuant to
e Sentencing Reform Act of 1984.

] The defendant has been found not guilty on count(s)   _____

∫ Count(s)   __Underlying Indictment 20cr626__   ☐ is   ☑ are dismissed on the motion of the United States.
℈3 20cr626 and open counts in S6 20cr626
       It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence,
·mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution,
e defendant must notify the court and United States attorney of material changes in economic circumstances.

12/12/2022
Date of Imposition of Judgment

Signature of Judge

Hon. Philip M. Halpern, U.S.D.J.
Name and Title of Judge

12/13/2022
Date

A-152

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 1A

Judgment—Page __2__ of __9__

DEFENDANT:  Naya Austin
CASE NUMBER:  S6 20CR00626-005 (PMH)

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §1028A | Aggravated Identity Theft | 8/31/2020 | 19 |

A-153

O 245B  (Rev. 09/19)  Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page __3__ of __9__

DEFENDANT:   Naya Austin
CASE NUMBER:   S6 20CR00626-005 (PMH)

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

234 months

210 months on counts 1 and 16 to run concurrently, and 24 months on count 19 to run consecutively to the term of imprisonment imposed on counts 1 and 16.

☐  The court makes the following recommendations to the Bureau of Prisons:

☑  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

   ☐  at _____  ☐  a.m.  ☐  p.m.  on  _____ .

   ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐  before 2 p.m. on  _____ .

   ☐  as notified by the United States Marshal.

   ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

have executed this judgment as follows:

Defendant delivered on _____ to _____

t _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

A-154

Ɔ 245B (Rev. 09/19)   Judgment in a Criminal Case
             Sheet 3 — Supervised Release

Judgment—Page ___4___ of ___9___

ᴅEFENDANT:   Naya Austin
ᴄASE NUMBER:   S6 20CR00626-005 (PMH)

## SUPERVISED RELEASE

ϑpon release from imprisonment, you will be on supervised release for a term of:

5 years on count 16; 3 years on count 1; and 1 year on count 19, all such terms of supervised release to run concurrently.

## MANDATORY CONDITIONS

You must not commit another federal, state or local crime.
You must not unlawfully possess a controlled substance.
You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*

☑ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*

☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*

☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*

☐ You must participate in an approved program for domestic violence. *(check if applicable)*

ʏou must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached ᴨge.

A-155

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
                    Sheet 3A — Supervised Release

Judgment—Page   5   of   9  

DEFENDANT:  Naya Austin
CASE NUMBER:  S6 20CR00626-005 (PMH)

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature   _____   Date _____

A-156

O 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3B — Supervised Release

Judgment—Page __6__ of __9__

DEFENDANT:  Naya Austin
CASE NUMBER:  S6 20CR00626-005 (PMH)

## ADDITIONAL SUPERVISED RELEASE TERMS

You must participate in an outpatient mental health treatment program approved by the United States Probation Office. You must continue to take any prescribed medications unless otherwise instructed by the health care provider. You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments. The Court authorizes the release of available psychological and psychiatric evaluations and reports, including the presentence investigation report, to the health care provider.

You shall submit your person, and any property, residence, vehicle, papers, effects, computer, other electronic communication or data storage devices, cloud storage or media, to a search by any United States Probation Officer, with the assistance of any law enforcement if needed. The search is to be conducted upon reasonable suspicion concerning a violation of a condition of supervision or unlawful conduct by you. Failure to submit to a search may be grounds for revocation of release. You shall warn any other occupants that the premises may be subject to searches pursuant to this condition. Any search shall be conducted at a reasonable time and in a reasonable manner.

You will participate in an outpatient treatment program approved by the United States Probation Office, which program may include testing to determine whether you have reverted to using drugs or alcohol. You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments. The Court authorizes the release of available drug treatment evaluations and reports, including the presentence investigation report, to the substance use disorder treatment provider.

The defendant shall not associate or interact in any way, including through social media websites, with any gang members or associates, particularly members and associates of any gang, and particularly, the Untouchable Gorilla Stone Nation ("Gorilla Stone"), or frequent neighborhoods (or "turf") known to be controlled by the Untouchable Gorilla Stone Nation ("Gorilla Stone"), or any of its subsets, without the permission of the Probation office.

You must provide the probation officer with access to any requested financial information.

You must not incur new credit charges or open additional lines of credit without the approval of the probation officer unless you are in compliance with the installment payment schedule.

It is recommended that you be supervised by the district of residence.

A-157

J 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page ___7___ of ___9___

DEFENDANT: Naya Austin
CASE NUMBER: S6 20CR00626-005 (PMH)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $ 300.00 | $ 50,000.00 | $ | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Sealed | $50,000.00 | $50,000.00 | |
| **TOTALS** | $ 50,000.00 | $ 50,000.00 | |

☑ Restitution amount ordered pursuant to plea agreement $ 50,000.00

☑ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

    ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

A-158

Sheet 6 — Schedule of Payments

Judgment — Page __8__ of __9__

DEFENDANT:  Naya Austin
CASE NUMBER:  S6 20CR00626-005 (PMH)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☑  Lump sum payment of $ __300.00__ due immediately, balance due

      ☐  not later than _____ , or
      ☐  in accordance with  ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

B  ☐  Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☑  Joint and Several

| Case Number Defendant and Co-Defendant Names *(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| DWIGHT REID  20cr626-1 | | | |

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☑  The defendant shall forfeit the defendant's interest in the following property to the United States:
A sum of money equal to $71,000.00 in U.S currency pursuant to the Consent Preliminary Order of Forfeiture/ Money Judgment.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

A-159

Sheet 6A — Schedule of Payments

DEFENDANT: Naya Austin
CASE NUMBER:  S6 20CR00626-005 (PMH)

Judgment—Page ___9___ of ___9___

## ADDITIONAL DEFENDANTS AND CO-DEFENDANTS HELD JOINT AND SEVERAL

| Case Number<br>Defendant and Co-Defendant Names<br>(including defendant number) | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate |
|---|---|---|---|
| CHRISTOPHER ERSKINE 20cr626-2 | | | |
| WALTER LUSTER  20cr626-3 | | | |
| DESHAWN THOMAS 20cr626-4 | | | |
| BRANDON NIEVES  20cr626-6 | | $50,000.00 | |
| AHMED WALKER   20cr626-7 | | | |
| CASWELL SENIOR   20cr626-8 | | | |
| BRANDON SOTO   20cr626-9 | | | |
| DEZON WASHINGTON 20cr626-10 | | $27,500.00 | |
| STEPHEN HUGH  20cr626-12 | | $28,000.00 | |
| JORDAN INGRAM  20cr626-13 | | $30,300.00 | |
| SHANAY OUTLAW  20cr626-14 | | $50,000.00 | |
| ISAIAH SANTOS  20cr626-15 | | | |
| ROBERTA SLIGH  20cr626-16 | | $28,000.00 | |
| BRINAE THORNTON  20cr626-17 | | | |
| JAMAL TRENT  20cr626-18 | | $30,000.00 | |
| DONOVAN GILLARD  20cr626-20 | | $50,000.00 | |

A-160

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Dec 27 2022

**NOTICE OF APPEAL**

United States District Court
<u>Southern</u> District of <u>New York</u>

<u>United States of America</u>

                v.        Docket No. <u>53 20 CR 626 (PMH)</u>

<u>Naya Austin</u>

                              (District Court Judge)

Notice is hereby given that <u>Naya Austin</u> appeals to the United States Court of Appeals for the Second Circuit from the judgment ✔

other: _____ entered in this action on <u>12/12/22</u>.
          (specify)                                    (date)

This appeal concerns:

Conviction only __    Sentence only ✔    Convictions & Sentence __    Other __

Defendant found guilty by:   plea ✔    trial __    N/A __

Offense occurred after November 1, 1987?   Yes ✔    No __    N/A __

Date of Sentence   <u>12/12/22</u>       N/A ____

Bail/Jail Disposition: Committed ✔     Not committed __    N/A __

Applicant is represented by counsel?   Yes ✔    No __     If yes, provide the following information:

Defendant's Counsel:    <u>Stephen G. McCarthy, Jr., Esq.</u>

Counsel's Address:       <u>101 Avenue of the Americas, Suite 942</u>
                            <u>New York, New York 10013</u>

Counsel's Phone:        <u>(212)925-5901</u>

Assistant US Attorney: <u>Shiva H. Logarajah</u>

AUSA's Address:         <u>One St. Andrew's Plaza</u>
                            <u>New York, New York 10007</u>

AUSA's Phone:           <u>(914)993-1900</u>

                                        Signature

RECEIVED
DEC 2 7 2022
U.S.D.C.
W.P.

McCarthy
101 6th Ave Ste. 942
New York, NY 10013

BOSTON MA 020

24 DEC 2022 PM 7 L

FOREVER / USA

RECEIVED
DEC 27 2022
U.S.D.C.
W.P.

Clerk of Court
United States District Court
Southern District of New York
Charles L. Brieant Jr. Federal Building
and United States Courthouse
300 Quarropas Street
White Plains NY 10601-4150

10601-415099

A-162

NOTICE OF APPEAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Dec 27 2022

DECEMBER 18, 2022

Clerk of the SOUTHERN DISTRICT COURT,

Today on DECEMBER 18, 2022 I wish to APPEAL my Sentence imposed on DECEMBER 12, 2022. This is my Notice of APPEAL. CASE NUMBER: OUR 7-20 CR 625-5 (PMH). I previously had private counsel. I can not afford an appeal attorney and ask that the court appoint one for me.

UNITED STATES OF AMERICA V.

Naija Austin

CASE NO. 7-20 CR 625-5 (PMH)

Docket No. 0208 7:56 20 CR 00626-005 (PMH)

Naija Austin #228-104
10 woods Rd.
Valhalla NY, 10595

Sincerely, Naija Austin

Respectfully Submitted: DECEMBER 18, 2022
Submitted into Mailbox today: DECEMBER 18, 2022

x Naya Austin

RECEIVED
DEC 27 2022
U.S.D.C.
W.P.

Case 22-2688, Document 95, 11/09/2023, 3589043, Page166 of 166

Case 7:20-cr-00626-PMH   Document 536   Filed 12/27/22   Page 4 of 4

A-163



Naya Austin #228104
10 Woods Rd.
Valhalla NY, 10595

WESTCHESTER NY  105

22 DEC 2022  PM 2  FOREVER US

*HAPPY*
HOLIDAYS

Barn Swallow

RECEIVED

DEC 2 7 2022

U.S.D.C.
W.P.

USA Southern District Court, New York
300 Quarropas Street
White Plains, New York  10601

10601-414000